No. 24-13315

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

MARC IRWIN SHARFMAN, M.D., P.A.,

*Plaintiff-Appellant*,

v.

PRECISION IMAGING OF ST. AUGUSTINE, HALO DX,

*Defendants-Appellees*.

---

Appeal from the United States District Court
for the Middle District of Florida
No. 6:22-cv-00642

---

## APPELLANT'S OPENING BRIEF

---

Glenn L. Hara
Anderson + Wanca
3701 Algonquin Road, Suite 500
Rolling Meadows, Illinois 60008
Telephone: 847-368-1500

---

*Attorneys for Plaintiff-Appellant, Marc Irwin Sharfman, M.D., P.A.*

**CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT**

Pursuant to 11th Cir. R. 26.1-1(a), Plaintiff-Appellant Marc Irwin Sharfman M.D., P.A., certifies that to the best of its counsel's knowledge, the following is the list of persons or entities that may have an interest in the outcome of this appeal:

- Anderson + Wanca – Counsel for Plaintiff-Appellant

- Berger, Wendy W. – United States District Court Judge

- Brennan, Manna & Diamond – Counsel for Defendants-Appellees

- Halo Dx, Inc. - Appellee

- Hara, Glenn – Counsel for Plaintiff-Appellant

- Irick, Daniel C. – United States Magistrate Judge

- Jones, Darren C. – Counsel for Defendants-Appellees

- Kelly, Ryan – Counsel for Plaintiff-Appellant

- La Bouef , Joshua R. – Counsel for Defendants-Appellees

- Marc Irwin Sharfman, M.D., P.A. - Appellant

- Precision Imaging of St. Augustine LLC – Appellee

- Solberg, Wallace C.  – Counsel for Plaintiff-Appellant

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Plaintiff-Appellant Marc Irwin Sharfman M.D., P.A., Inc. states that it has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

Respectfully submitted,

*s/ Glenn L. Hara*
Glenn L. Hara
ANDERSON+ WANCA
3701 Algonquin Rd., Suite 500
Rolling Meadows, IL 60008
Telephone:  847-368-1500

## <u>Statement Regarding Oral Argument</u>

Appellant requests that the Court hear oral argument in this appeal. Appellant submits that oral argument should be allowed because the dispositive legal questions presented in this appeal are novel and complex, and thus the decisional process would be significantly aided by presentation of oral argument and the opportunity for counsel to respond to the Court's questions.

# TABLE OF CONTENTS

**Page(s)**

CERTIFICATE OF INTERESTED PERSONS ....................................................i

STATEMENT REGARDING ORAL ARGUMENT ........................................iii

TABLE OF CONTENTS....................................................................................iv

TABLE OF AUTHORITIES ............................................................................. v

STATEMENT OF SUBJECT-MATTER
AND APPELLATE JURISDICTION .................................................................1

STATEMENT OF ISSUES ...............................................................................1

STATEMENT OF THE CASE...........................................................................2

SUMMARY OF ARGUMENT .........................................................................4

ARGUMENT .....................................................................................................6

     I.     Standard of Review ......................................................................6

     II.    The district court erred in holding that sending an unsolicited
              fax advertisement is a mere "procedural violation"
              of the TCPA, if the recipient views the fax
              using an online fax service..........................................................6

     III.   Online fax service recipients suffer concrete injury,
              regardless of whether they are individuals
              or business entities....................................................................... 12

CONCLUSION............................................................................................... 16

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**CASES**                                                    **Pages(s)**

*Aranda v. Caribbean Cruise Line, Inc.*,
    202 F. Supp. 3d 850 (N.D. Ill. 2016) ....................................................... 10

*Chapman v. Wagener*,
    2014 WL 540250 (N.D. Ill. Feb. 11, 2014) .................................................7

*Daisy, Inc. v. Mobile Mini, Inc.*,
    489 F. Supp. 3d 1287 (M.D. Fla. 2020)...................................... 11, 14, 16

*Diaz v. One Techs., LLC*,
    2022 WL 72283 (C.D. Cal. Jan. 6, 2022)..................................................11

*Douglas Phillip Brust, D.C., P.C. v. Opensided MRI of St. Louis LLC*,
    343 F.R.D. 581 (E.D. Mo. 2023)............................................................. 11

*Drazen v. Pinto*,
    74 F.4th 1336 (11th Cir. 2023) ............................................. 2, 5–6, 11–15

*FCC v. AT&T, Inc.*,
    562 U.S. 397 (2011)................................................................................ 14

*Gadelhak v. AT&T Servs.*,
    950 F.3d 458 (7th Cir. 2020) ............................................................ 13, 15

*Golan v. FreeEats.com, Inc.*,
    930 F.3d 950 (8th Cir. 2019) .............................................................. 9, 15

*Gorss Motels v. Lands' End, Inc.*,
    997 F.3d 470 (2d Cir. 2021) .............................................................. 11, 15

# TABLE OF AUTHORITIES

**CASES**                                                        **Pages(s)**

*Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*,
  48 F.4th 1236 (11th Cir. 2022) ............................................................ 12

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
  522 F.3d 6 (1st Cir. 2008)................................................................6

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
  644 F.3d 604 (8th Cir. 2011) ......................................................6

*Leyse v. Bank of Am. Nat'l Ass'n*,
  804 F.3d 316 (3d Cir. 2015) ......................................................9

*Lyngaas v. Curaden AG*,
  992 F.3d 412 (6th Cir. 2021) ......................................................2

*Melito v. Experian Marketing Solutions, Inc.*,
  923 F.3d 85 (2d Cir. 2019)................................................................9

*Mims v. Arrow Fin. Servs., LLC*,
  565 U.S. 368 (2012)............................................................ 1, 9

*Muransky v. Godiva Chocolatier, Inc.*,
  979 F.3d 917 (11th Cir. 2020) .................................................. 6, 9, 10, 15

*Palm Beach Golf-Boca, Inc. v. Sarris*,
  781 F.3d 1245 (11th Cir. 2015) ...............................................9

*Prado-Steiman ex rel Prado v. Bush*,
  221 F.3d 1266 (11th Cir. 2000) ...............................................6

# TABLE OF AUTHORITIES

**CASES**                                                      **Pages(s)**

*Puffer v. Allstate Ins. Co.*,
    675 F.3d 709 (7th Cir. 2012) ...................................................6

*Robert W. Mauthe, M.D., P.C. v. MCMC, LLC*,
    387 F. Supp. 3d 551 (E.D. Pa. 2019) ........................................ 9

*Salcedo v. Hanna*,
    936 F.3d 1162 (11th Cir. 2019) ............................................. 13

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)........................................ 1, 4, 6–8, 12–14

*Toste v. Beach Club at Fontainebleau Park Condo. Ass'n, Inc.*,
    2022 WL 4091738 (11th Cir. Sept. 7, 2022) ........................... 10

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ................................................. 6, 12–14

*Urgent One Med. Care, PC v. Co-Options, Inc.*,
    2022 WL 16755154 (E.D.N.Y. June 1, 2022) ................... 11, 15

*Young v. Nationwide Mut. Ins. Co.*,
    693 F.3d 532 (6th Cir. 2012) ....................................................6

**Statutes**

5 U.S.C. § 552(b)(7)(C) .......................................................................16

28 U.S.C. § 1292(e) ...............................................................................1

28 U.S.C. § 1331 ....................................................................................1

47 U.S.C. § 153(39) ...............................................................................7

47 U.S.C. § 227(b)(1)(C) ...........................................................2, 7–8, 11

vii

# TABLE OF AUTHORITIES

**STATUTES**                                                                 **Pages(s)**

47 U.S.C. § 227(b)(3)............................................................ 1, 14–15

**Rules & Regulations**

Fed. R. Civ. P. 23(a).............................................................2-4, 6

Fed. R. Civ. P. 23(a)(2)..........................................................3

Fed. R. Civ. P. 23(a)(3)..........................................................4

Fed. R. Civ. P. 23(b)(3)..........................................................6

Fed. R. Civ. P. 23(f) ............................................................ 1, 4

**Other Authorities**

Pub. L. 102-243, § 2 (1991) ......................................................7

## Statement of Subject-Matter and Appellate Jurisdiction

The district court had federal-question jurisdiction pursuant to 28 U.S.C. § 1331 in this action brought under the TCPA, 47 U.S.C. § 227(b)(3). *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 379–80 (2012) (holding federal and state courts share concurrent jurisdiction over TCPA claims).

This Court has appellate jurisdiction under 28 U.S.C. § 1292(e) because Fed. R. Civ. P. 23(f) "provide[s] for an appeal of an interlocutory decision to the courts of appeals that is not otherwise provided for" by statute. The district court issued its order denying class certification on August 2, 2024 (Doc. 119),[1] and Plaintiff timely filed a Rule 23(f) petition within 14 days. On October 21, 2024, this Court granted Plaintiff's petition (Doc. 124), giving this Court jurisdiction to review the district court's denial of class certification under 28 U.S.C. § 1292(e).

## Statement of Issues

1.     Whether the district court erred as a matter of law in finding that a violation of the TCPA fax provisions is merely "procedural," as opposed to causing the "direct" harm that the TCPA was meant to prevent—being sent an unsolicited fax advertisement, thereby causing concrete injury.

2.     Whether the district court erred as a matter of law in holding that business entities (including corporations) cannot satisfy the *Spokeo* test discussed at length in *Drazen v. Pinto*, 74 F.4th 1336 (11th Cir. 2023) (en banc), for Article III

---

[1] This Brief uses the reference format of "Doc. ___" to refer to the document number on the district court's docket, along with page number of the document.

standing on the basis that business entities cannot state a claim at common law for a privacy violation.

## Statement of the Case

This is a putative class action against Defendants, Precision Imaging St. Augustine LLC and Halo DX, Inc. (collectively, "Precision"), under the Telephone Consumer Protection Act of 1991 ("TCPA" or "Act"), 47 U.S.C. § 227(b)(1)(C). Appellant Sharfman alleges Precision violated the TCPA when it successfully sent 14,303 unsolicited fax advertisements (the "Faxes") to 4,922 unique fax numbers in broadcasts conducted on February 9, 2022, February 15, 2022, and February 17, 2022 (the "Faxes"), advertising the commercial availability and quality of their imaging services. (Doc. 109 at 2). Sharfman received all three Faxes. (Doc. 87, Third Am. Compl. ¶¶ 17, 20, 23).

Following the close of discovery, Sharfman moved for class certification pursuant to Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure as to an all-recipients[2] class (Class A), and, in the alternative, an all-recipients class that excluded 970 recipients for whom Precision claimed it had prior express invitation or permission to send fax advertisements (Class B). (Doc. 69 at 2-3). The

---

[2] By "all recipients," Sharfman means all persons or entities to whom the Fax was successfully transmitted over a telephone line to a ten-digit telephone number, regardless of whether the end-user used a traditional "stand-alone" fax machine, an "online fax service" (which necessarily uses a fax server), or an in-house fax server. *See Lyngaas v. Curaden AG*, 992 F.3d 412, 426–27 (6th Cir. 2021) (affirming certification of all-recipients class and holding that users of "online fax services" need not be excluded from the class).

district court referred Plaintiff's motion for class certification to the magistrate judge for a report and recommendation. (Doc. 109 at 1). The magistrate judge found that Sharfman "alleged sufficient facts to move past the threshold issue of standing," that both proposed classes were ascertainable, that Rule 23(a) numerosity and Rule 23(a)(2) commonality were satisfied, and that Plaintiff's counsel was adequate under Rule 23(g). (*Id.* at 8–12, 16–17).

However, the Report erroneously recommended that Sharfman failed to establish typicality, adequacy, predominance, and superiority as to both putative classes based on its mistaken findings that: (i) users of "online fax services" lack Article III standing to sue under the TCPA, (ii) the TCPA does not regulate faxes received through online fax services, (iii) individual issues regarding prior express permission exist, and (iv) Sharfman is inadequate because some putative class members welcomed the faxes and gave their express permission to receive them. (*Id.* at 12–16, 18–24). Sharfman timely filed objections to the magistrate judge's report and recommendation. (Doc. 113).

The district court adopted the magistrate judge's recommendation in part, denying class certification solely on the basis that online fax service recipients lack Article III standing. (Doc. 119 at 3). The district court erroneously found that the violation of the TCPA fax provisions is "procedural," that "mere receipt of a fax through an online fax service, even if a violation of the TCPA—does not, on its own—cause an injury in fact," and that Sharfman did not satisfy the "close

3

relationship" test for Article III standing set forth in *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016), because "business entities" do not have a common-law right to privacy. (*Id.* at 3-4). Based on the foregoing, the district court held Sharfman could not carry its burden as to Rule 23(a)(3) typicality and Rule 23(b)(3) predominance, and therefore, "[c]ertification of both putative classes is improper, and the Court need not address Plaintiff's additional objections as to the remaining Rule 23(a) and Rule 23(b) factors." (*Id.* at 4).

Sharfman timely filed a petition for interlocutory review of the denial of class certification under Rule 23(f). This Court granted the petition, stating, "We conclude that the Article III standing issue identified in the Petition for Permission to Appeal under Fed. R. Civ. P. 23(f) warrants interlocutory review." (Doc. 124 at 2). As argued below, the Court should now reject the district court's erroneous conclusion that users of online fax services lack Article III to sue and remand to the district court to reconsider whether the elements of Rule 23 are satisfied.

### Summary of Argument

The district court's denial of class certification in this matter was an abuse of discretion because it was based on erroneous legal conclusions. As discussed below, the sending of unsolicited fax advertisements in violation of the TCPA does not cause a mere "procedural violation," as the district court held, but instead causes a "direct injury" and the very harm the TCPA was meant to prevent—being sent an unsolicited fax advertisement.

Moreover, the district court disregarded the judgment of Congress in passing the TCPA, and in the process misapplied the *Spokeo* "close relationship" test. In enacting the TCPA, Congress identified an intangible harm—being sent an unsolicited fax advertisement—and provided a private right of action for "persons and entities" to seek redress for violation of that intangible harm.

Once Congress does that, the question under this Court's authorities becomes whether the intangible harm has a "close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Drazen v. Pinto*, 74 F.4th 1336, 1343 (11th Cir. 2023) (en banc). The harm is (among other harms) nuisance and intrusion upon seclusion. (*See* Doc. 87, Third Am. Compl. ¶ 7 ("An unsolicited junk fax intrudes upon the recipient's interest in seclusion, violates their right to privacy, and is a nuisance. An unsolicited fax advertisement causes direct injury and the very harm the TCPA was meant to prevent—being sent an unsolicited fax advertisement.")). This Court held in *Drazen* that intrusion upon seclusion satisfies the "close relationship" test, giving recipients of unwanted text messages Article III standing. 74 F.4th at 1343-46. The Court should reach the same conclusion here with respect to recipients of unsolicited fax ads, regardless of whether received on a "stand-alone" fax machine or via an "online fax service."

**Argument**

## I.     Standard of Review.

An order granting or denying class certification is reviewed for abuse of discretion. *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1275 (11th Cir. 2000). A district court abuses its discretion if it applies "an incorrect legal standard." *Id.* at 1275, n.9; *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 536 (6th Cir. 2012) (abuse to "appl[y] the wrong legal standard" or "misappl[y] the correct legal standard"); *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 716 (7th Cir. 2012) ("legal determinations" reviewed de novo); *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 616 (8th Cir. 2011) (court "abuses its discretion if it commits an error of law"). This standard "has teeth" because a court abuses its discretion if it "adopts an incorrect legal rule." *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 17 (1st Cir. 2008).

## II.    The district court erred in holding that sending an unsolicited fax advertisement is a mere "procedural violation" of the TCPA, if the recipient views the fax using an online fax service.

The district court's denial of class certification (whether phrased as a lack of Rule 23(a) typicality or Rule 23(b)(3) predominance) hinges on its conclusion that online fax service recipients lack Article III standing because they suffer a mere "procedural" violation. (Doc. 119 at 1–5). In so holding, the district court misapplied controlling authority, namely, *Spokeo*, 578 U.S. at 341; *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021); *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 926 (11th Cir. 2020) (en banc); and *Drazen*, 74 F.4th at 1343-46.

6

In *Spokeo*, 578 U.S. at 341, the Supreme Court held that Article III standing requires concrete injury even in the context of a statutory violation. The Supreme Court held that while a concrete injury must actually exist, "concrete" is not necessarily synonymous with tangible, and intangible injuries can also be concrete. *Id.* at 340. In determining whether intangible statutory injuries are concrete, "both history and the judgment of Congress play important roles." *Id*.

The judgment of Congress is set forth in the text of the TCPA, which prohibits, with some exceptions not relevant here, the use of "any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C). The TCPA creates a private right of action for any person *or entity* that receives an advertisement in violation of the Act or the "regulations prescribed under" the Act, and provides for statutory damages in the amount of $500 for each violation ($1,500 if the defendant is found to have acted willfully or knowingly) as well as injunctive relief against future violations. *Id.* § 227(b)(3)(A)–(B) (emphasis added). *See also Chapman v. Wagener*, 2014 WL 540250, at *5 (N.D. Ill. Feb. 11, 2014) (noting the chapter in which the TCPA is listed, Chapter 5, Wire or Radio Communications, defines the term "person" to include, *inter alia*, corporations) (citing 47 U.S.C. § 153(39) (Definitions)).

In enacting the TCPA, Congress found that: "the use of the telephone to market goods and services to the home and other businesses is now pervasive," Pub. L. 102-243, § 2, ¶ 1 (1991); over 30,000 businesses actively telemarketing goods

and services to businesses and residential customers, *id.* ¶ 2; "the evidence presented to Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call," *id*. ¶ 13; and that "Businesses also have complained to the Congress and the Federal Communications Commission that automated or prerecorded telephone calls are a nuisance, are an invasion of privacy, and interfere with interstate commerce," *id*. ¶ 14 (emphasis added). As stated, faxes are sent to ten-digit telephone numbers over regular telephone lines, and the fax prohibitions are found under "Restrictions on use of automated telephone equipment." 47 U.S.C. § 227(b)(1)(C).

The *Spokeo* Court stated that because Congress "is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important," and further, Congress may "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate at law." *Spokeo*, 578 U.S. at 341. In enacting the TCPA, Congress elevated the invasion of privacy, the invasion of interest in seclusion, and the nuisance that results from being sent an unsolicited fax advertisement "to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate at law." *Id.* (citation omitted). All that is left to satisfy Article III is satisfaction of the *Spokeo* "close relationship" test.

The Supreme Court recognized that Congress found in its passage of the TCPA that unregulated telemarketing was "intrusive," a "nuisance," and "rightly

regarded as an invasion of privacy." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012); *see also Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 959 (8th Cir. 2019) (the "harm to be remedied by the TCPA was the unwanted intrusion and nuisance of unsolicited telemarketing phone calls and fax advertisements"); *Melito v. Experian Marketing Solutions, Inc.*, 923 F.3d 85, 94 (2d Cir. 2019) ("the receipt of unwanted advertisements *is itself* the harm") (emphasis in original). Although the TCPA is meant to address the unauthorized use of fax machines, toner, and paper, "it also aims to mitigate 'the nuisance and invasion of privacy' that unsolicited telecommunications cause." *Robert W. Mauthe, M.D., P.C. v. MCMC, LLC*, 387 F. Supp. 3d 551, 561–62 (E.D. Pa. 2019) (citing *Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 326 (3d Cir. 2015)); *Palm Beach Golf-Boca, Inc. v. Sarris*, 781 F.3d 1245, 1252 (11th Cir. 2015) (the occupation of plaintiff's fax machine is "*among*" the injuries to be prevented by the TCPA) (emphasis added).

First, the district court's holding that the violation of the TCPA fax provisions is a violation of a "procedural right," and that "the mere receipt of a fax through an online fax service, even if a violation of the TCPA, does not—on its own—cause an injury in fact" (Doc. 119 at 3) is legally erroneous. In *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 926 (11th Cir. 2020) (en banc), this Court explained this difference in considering a "procedural violation" of FACTA, namely, a merchant's failure to truncate credit card numbers on a receipt. In enacting FACTA,

Congress was trying to prevent identity theft, which does not occur the moment a receipt is printed with too many digits. *Id.* at 930. The *Muransky* Court explained:

> We consider two things when we evaluate whether concrete harm flows from an alleged statutory violation—and thus whether the plaintiff has standing. First, we ask if the violation itself caused harm, whether tangible or intangible, to the plaintiff. *If so, that's enough.* If not, we ask whether the violation posed a material risk of harm to the plaintiff. If the answer to both questions is no, the plaintiff has failed to meet his burden of establishing standing.

*Id.* at 928 (emphasis added).

Here, online fax service class members were sent unsolicited fax ads. That is not a "procedural violation," but is instead a "direct injury" and the very harm the TCPA was designed to prevent, and that harm occurs when the fax ad is successfully sent. *See Toste v. Beach Club at Fontainebleau Park Condo. Ass'n, Inc.*, No. 21-14348, 2022 WL 4091738, at *4 (11th Cir. Sept. 7, 2022) (holding "very nearly any level of direct injury is sufficient to show a concrete harm"). The TCPA "does not require the adoption of procedures to decrease congressionally identified risks," and "there is no gap—there are not some kinds of violations of section 227 that do not result in the harm Congress intended to curb, namely, the receipt of unsolicited telemarketing calls that by their nature invade the privacy and disturb the solitude of their recipients." *Aranda v. Caribbean Cruise Line, Inc*., 202 F. Supp. 3d 850, 857 (N.D. Ill. 2016).

In other words, for purposes of Article III standing, "there is no *qualitative* difference in harm between reading then answering an unwanted text and reviewing

then deleting a junk fax sent by e-mail." *Daisy, Inc. v. Mobile Mini, Inc.*, 489 F. Supp. 3d 1287, 1292 (M.D. Fla. 2020) (emphasis in original). This Court held that an unwanted text is a "concrete" injury in *Drazen*, 74 F.4th at 1345. Thus, "the receipt of unwanted faxes via online fax services is sufficient to confer Article III standing to bring a claim under the TCPA." *Douglas Phillip Brust, D.C., P.C. v. Opensided MRI of St. Louis LLC*, 343 F.R.D. 581, 591 (E.D. Mo. 2023) (certifying all-fax-recipients class). The "nuisance and privacy invasion" that businesses suffer from receiving unsolicited fax ads is among the harms addressed by the statute, giving rise to Article III injury. *Urgent One Med. Care, PC v. Co-Options, Inc.*, No. 21-CV-4180 (JS)(SIL), 2022 WL 16755154, at *5 (E.D.N.Y. June 1, 2022), *adopted by* 2022 WL 4596754 (E.D.N.Y. Sept. 30, 2022) (quoting *Gorss Motels v. Lands' End, Inc.*, 997 F.3d 470, 476 (2d Cir. 2021)).[3]

In sum, a plaintiff who is sent an unsolicited advertisement by facsimile in violation of the TCPA, 47 U.S.C. § 227(b)(1)(C), sustains an Article III injury in fact, just as a TCPA plaintiff who receives a single unwanted text message has standing under *Drazen*, 74 F.4th at 1345, regardless of whether the plaintiff views the fax on a piece of paper that automatically prints from a "stand-alone" fax machine or views it on a computer screen using an "online fax service." Although

---

[3] Similarly, courts have found Article III standing in cases brought under state laws creating a cause of action for sending spam email advertisements. *See, e.g.*, *Diaz v. One Techs., LLC*, No. CV 21-8571-GW-AGRX, 2022 WL 72283, at *4 (C.D. Cal. Jan. 6, 2022).

perhaps one could argue the harm to online fax service users may be "smaller in degree" than the common-law comparator, it is not "completely missing" or "entirely absent." *Drazen*, 74 F.4th at 1345 (quoting *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1243, 1245 (11th Cir. 2022) (en banc)). The Court should reject the district court's "procedural violation" rationale and reverse.

### III.   Online fax service recipients suffer concrete injury, regardless of whether they are individuals or business entities.

The district court misapplied the *Spokeo* "close relationship" test and in the process mistakenly required business entities to state a claim for intrusion upon seclusion. Once Congress has identified an intangible harm, *i.e.*, the judgment of Congress, as it did in enacting the TCPA, the question becomes whether that "harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Drazen*, 74 F.4th at 1343 (citing *Hunstein*, 48 F.4th at 1243 (quoting *Spokeo*, 578 U.S. at 341)). The Supreme Court has acknowledged the harm associated with the common-law tort of intrusion upon seclusion as an example of a harm "traditionally recognized as providing a basis for lawsuits in American courts." *Id.* (citing *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021)).

In *Drazen*, the plaintiffs argued class members who received one unwanted text message suffered a privacy invasion that shared a "close relationship" with the harm associated with intrusion upon seclusion. 74 F.4th at 1343. The defendant,

relying on *Salcedo v. Hanna*, 936 F.3d 1162, 1171 (11th Cir. 2019), argued that the harm from receiving one unwanted text message lacks a close relationship to the harm underlying intrusion upon seclusion because an element of that common-law tort requires that the privacy invasion "be highly offensive to a reasonable person," and that a single unwanted illegal text was not. *Id*.

This Court rejected the defendant's argument, stating that because the concreteness inquiry centers on whether the harms share "a close relationship," and that the courts "do not require carbon copies; the new harm need only be 'similar to' the old harm." *Id.* (citing *TransUnion*, 141 S. Ct. at 2209) ("In looking to whether a plaintiff's asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for lawsuit in American courts, we do not require an exact duplicate"). The Court noted that now-Justice Barrett held that in applying the "close relationship" test, the question should be whether the harms share "a 'close relationship' in kind, not degree." *Id.* (citing *Gadelhak v. AT&T Servs*., 950 F.3d 458, 462 (7th Cir. 2020) (quoting *Spokeo*, 578 U.S. at 341) (*cited with approval in TransUnion*, 141 U.S. at 2204)).

This Court stated: "we think that asking whether the harms are similar in kind but not degree makes sense," in that "Congress may 'elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law,'" and that such power "implies that the level of harm required at common law 'does not stake out the limits of [its] power to identify harms deserving a remedy.'"

*Id. Drazen* held that while a single unwanted text message may not "be highly offensive to the ordinary reasonable man," an unwanted text message is nonetheless offensive to some degree to a reasonable person, and therefore, receipt of an unwanted text message "shares a close relationship with the harm underlying the tort of intrusion upon seclusion," and thus causes a concrete injury. *Id.* at 1345.[4]

Here, the district court held that "the common law tort of intrusion upon seclusion cannot extend to the business entity members of the putative class" because "business entities do not enjoy a right to privacy," and that "without a cognizable right to privacy, business entities cannot suffer the kind of harm contemplated in *Drazen* as a matter of law." (Doc. 119 at 4) (citing *FCC v. AT&T, Inc.*, 562 U.S. 397, 406-07 (2011), and *Daisy*, 489 F. Supp. 3d at 1294).

The district court's analysis is fundamentally flawed, and its reliance on *FCC v. AT&T* and *Daisy* is inapposite. Congress identified an intangible harm—being sent an unsolicited fax advertisement—and enacted the TCPA to allow "persons and entities" to seek redress for that intangible harm. *See* 47 U.S.C.§ 227(b)(3). The history test under *Spokeo* does not require an exact "duplicate," *Drazen*, 74 F.4th at 1343 (citing *TransUnion*, 141 S. Ct. at 2209), and does not demand that plaintiff

---

[4] *Drazen* further undermines the district court's reliance on *Daisy*, 489 F. Supp. 3d at 1292, for the proposition that receipt of an online fax in violation of the TCPA "does not on its own cause an injury in fact." (Doc. 119 at 3). The conclusion in *Daisy* that users of online fax services lack Article III standing is built entirely upon the holding in *Salcedo* that a single unwanted text message did not constitute an Article III injury. *Id.* That holding was overruled en banc in *Drazen*.

prove it could recover on a common law cause of action, *Golan*, 930 F.3d at 958-59. "In other words, while the common law offers guidance, it does not stake out the limits of Congress's power to identify harms deserving a remedy. Congress's power is greater than that: it may elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate at law." *Gadelhak*, 950 F.3d at 462-63.

Under the TCPA, "persons" and "entities" have a statutorily created right to seek redress for being sent an unsolicited fax advertisement. 47 U.S.C. § 227(b)(3). Sharfman has alleged that Precision's successful transmission of the Faxes has violated Sharfman's and the proposed Class's interest in seclusion and violated their rights under the TCPA. Congress has that power. All that is left is whether Precision's violation of the TCPA's fax prohibition has a close relationship with the common law tort of intrusion upon seclusion. *Drazen* answered that question in the affirmative as to single texts, and that analysis applies to unsolicited faxes as well. The "nuisance and privacy invasion" that online fax service users suffer from receiving unsolicited fax ads is a "real" Article III injury. *Urgent One*, 2022 WL 16755154, at *5 (quoting *Gorss Motels*, 997 F.3d at 476).

As this Court said in *Muransky*, 979 F.3d at 931, "Litigants and courts alike can be drawn into overthinking what was really a simple instruction: see if a new harm is similar to an old harm." That is the case here. Online fax service recipients have suffered concrete injury under the TCPA, and that injury has a close

relationship to intrusion upon seclusion. In short, all recipients of the Faxes, including online fax service recipients, have Article III standing.

Finally, the district court's citation to *AT&T*, 562 U.S. at 406-07, for the proposition that at common law, a right of privacy pertains only to individuals and not corporations or partnerships is misplaced in that the referenced statements are dicta. (Doc. 119 at 4). The Supreme Court expressly stated it was *not* asked "to pass on the scope of a corporation's 'privacy' interests as a matter of constitutional or common law." *AT&T*, 562 U.S. at 407. Instead, it was asked to determine whether the term "personal privacy" as used in the Freedom of Information Act Exemption 7(C), *see* 5 U.S.C. § 552(b)(7)(C), referred to the "personal privacy" of corporations, and held that it did not. *Id.* at 409-10. The court in *Daisy*, 489 F. Supp. 3d at 1294, simply restated the dicta from *AT&T*. As stated, Congress has already spoken, and persons (which includes corporations) and entities are expressly identified in the unambiguous language of the TCPA as having a private right of action under the TCPA, and the "close relationship" test is satisfied.

## Conclusion

For the foregoing reasons, the Court should reverse the district court's denial of class certification on Article III standing grounds and remand with instructions for the district court to complete the Rule 23 analysis.

December 20, 2024                          Respectfully submitted,

                                          */s/ Glenn L. Hara*
                                          Glenn L. Hara
                                          **ANDERSON + WANCA**
                                          3701 Algonquin Road, Suite 500
                                          Rolling Meadows, IL 60008
                                          Telephone: 847-368-1500
                                          Fax: 847-368-1501
                                          ghara@andersonwanca.com

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

*Check the appropriate box in section 1, and check the box in section 2.*

**1.    Type-Volume**

☑    This document complies with the word limit of FRAP         29(a)(5) because, excluding the parts of the document exempted by FRAP 32(f) and _____, this document contains
[insert applicable Rule citation, if any]
4,240                 words.

**or**

☐    This brief complies with the line limit of FRAP     [insert Rule citation]     because, excluding the parts of the brief exempted by FRAP 32(f) and _____, this brief uses a monospaced
[insert applicable Rule citation, if any]
typeface and  contains      [state the number of]         lines of text.

**2.    Typeface and Type-Style**

☑    This document complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6).


(s) Glenn L. Hara
_____

Attorney for    Marc Irwin Sharfman, M.D., P.A.
_____

Dated:   12/20/2024
_____