No.  24-13315

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

---

MARC IRWIN SHARFMAN, M.D., P.A.,

*Plaintiff-Appellant*,

v.

PRECISION IMAGING OF ST. AUGUSTINE, HALO DX,

*Defendants-Appellees*.

---

Appeal from the United States District Court
for the Middle District of Florida
No. 6:22-cv-00642

---

**APPELLANT'S APPENDIX
VOLUME I OF I**

---

Glenn L. Hara
Anderson + Wanca
3701 Algonquin Road, Suite 500
Rolling Meadows, Illinois 60008
Telephone: 847-368-1500

---

*Attorneys for Plaintiff-Appellant, Marc Irwin Sharfman, M.D., P.A.*

## Index of Appendix

**<u>Volume I</u>**                                                                                 **Docket/Tab #**

District Court Docket Sheet ................................................................................. A

Third Amended Complaint ................................................................................. 87

Magistrate Judge's R&R on Class Cert ............................................................. 109

District Court's Order on Class Cert................................................................... 119

Notice of Interlocutory Appeal .......................................................................... 124

ADMCLOSED,INTAPP,MAGAPP,MEDIATION,SL DOC,STAYED

# U.S. District Court
## Middle District of Florida (Orlando)
## CIVIL DOCKET FOR CASE #: 6:22-cv-00642-WWB-DCI

Marc Irwin Sharfman M.D. P.A. v. Precision Imaging St. Augustine LLC et al
Assigned to: Judge Wendy W. Berger
Referred to: Magistrate Judge Daniel C. Irick
Case in other court: Eighteenth Judicial Circuit Court,
2022CA000423
11th Circuit, 24-13315
Cause: 47:227 Restrictions of Use of Telephone Equipment

Date Filed: 03/31/2022
Date Terminated: 12/02/2024
Jury Demand: None
Nature of Suit: 485 Telephone Consumer Protection Act (TCPA)
Jurisdiction: Federal Question

**Plaintiff**

**Marc Irwin Sharfman M.D. P.A.**
*a Florida corporation, individually and as the representative of a class of similarly-situated persons*

represented by **Ryan M. Kelly**
Anderson & Wanca
3701 Algonquin Rd Ste 500
Rolling Meadows, IL 60008
847-368-1500
Fax: 847-368-1501
Email: rkelly@andersonwanca.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ross Michael Good**
The Good Law Group
800 E Northwest Hwy
Suite 814
Palatine, IL 60074
847-600-9576
Email: ross@thegoodlawgroup.com
*TERMINATED: 12/11/2022*
*ATTORNEY TO BE NOTICED*

**Wallace C. Solberg**
Anderson & Wanca
3701 Algonquin Rd Ste 500
Rolling Meadows, IL 60008
847/368-1500
Fax: 847/368-1501
Email: wsolberg@andersonwanca.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Precision Imaging St. Augustine LLC**
*a Florida limited liability company*

represented by **Joshua R. La Bouef**
Brennan Manna Diamond
5210 Belfort Road Suite 400
32256
Jacksonville, FL 32202
904-366-1500
Email: jrlabouef@bmdpl.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christian James Lake**
Brennan Manna Diamond
5210 Belfort Road
Suite 400
Jacksonville, FL 32256
904-366-1500
Email: cjlake@bmdpl.com
*ATTORNEY TO BE NOTICED*

**Darren Curtis Jones**
Brennan Manna Diamond
5210 Belfort Road
Suite 400
Jacksonville, FL 32256
904-366-1500
Email: dcjones@bmdpl.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Halo DX, Inc.**
*a Delaware corporation*

represented by **Joshua R. La Bouef**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christian James Lake**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Darren Curtis Jones**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Halo Diagnostics Bulgaria, Inc.**
*a Colorado corporation*
*TERMINATED: 04/27/2022*

represented by **Joshua R. La Bouef**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Darren Curtis Jones**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mediator**

**Vincent A D'Assaro**
*TERMINATED: 09/19/2023*

represented by **Vincent M. D'Assaro**
Morgan & Morgan, PA
20 N Orange Ave, Suite 1600
Orlando, FL 32801
407/420-1414
Fax: 407/425-8171
Email: vdassaro@forthepeople.com
*TERMINATED: 09/19/2023*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/31/2022 | 1 | COMPLAINT and NOTICE OF REMOVAL from Eighteenth Judicial Circuit Court in and for Seminole County Florida, case number 2022CA000423 filed in State Court on 02/24/2022. Filing fee $ 402, receipt number AFLMDC-19409761 filed by Halo Diagnostics Bulgaria, Inc., Halo DX, Inc., Precision Imaging St. Augustine LLC. (Attachments: # 1 State Court COMPLAINT Exhibit A-Complaint, # 2 State Court Other Documents Exhibit B-Summons on Halo Diagnostics Bulgaria Inc., # 3 State Court Other Documents Exhibit C-Summons for Precision Imaging St. Augustine, # 4 State Court Other Documents Exhibit D-Verified Return of Service for Precision Imaging, # 5 State Court Other Documents Exhibit E-Summons for Halo DX Inc., # 6 State Court Other Documents Exhibit F-Verified Return of Service for Halo DX Inc., # 7 State Court Other Documents Exhibit G-Notice of Filing Notice of Removal, # 8 Civil Cover Sheet, # 9 State Court Docket Sheet)(La Bouef, Joshua) (Entered: 03/31/2022) |
| 04/01/2022 | 2 | NEW CASE ASSIGNED to Judge Wendy W. Berger and Magistrate Judge Daniel C. Irick. New case number: 6:22-cv-0642-WWB-DCI. (SJB) (Entered: 04/01/2022) |
| 04/01/2022 | 3 | Corrected NOTICE of Removal by Halo DX, Inc., Halo Diagnostics Bulgaria, Inc., Precision Imaging St. Augustine LLC (La Bouef, Joshua) Modified on 4/1/2022 (KNC). (Entered: 04/01/2022) |
| 04/01/2022 | 4 | NOTICE of Appearance by Ryan M. Kelly on behalf of Marc Irwin Sharfman M.D. P.A. (Kelly, Ryan) (Entered: 04/01/2022) |
| 04/01/2022 | 5 | Unopposed MOTION for Extension of Time to File Response/Reply *to Class Action Complaint* by Halo DX, Inc., Halo Diagnostics Bulgaria, Inc., Precision Imaging St. Augustine LLC. (La Bouef, Joshua) Motions referred to Magistrate Judge Daniel C. Irick. (Entered: 04/01/2022) |
| 04/01/2022 | 6 | CERTIFICATE of interested persons and corporate disclosure statement by Marc Irwin Sharfman M.D. P.A.. (Kelly, Ryan) (Entered: 04/01/2022) |
| 04/02/2022 | 7 | **ENDORSED ORDER granting 5 Unopposed Motion for Extension of Time. Defendants Precision Imaging St. Augustine LLC, Halo DX, Inc., and Halo Diagnostics Bulgaria, Inc. must respond to the Complaint by 4/11/2022. Signed by Magistrate Judge Daniel C. Irick on 4/2/2022. (Irick, Daniel)** (Entered: 04/02/2022) |
| 04/04/2022 | | Reset deadlines: for All Defendants. Responses to Complaint due by 4/11/2022. (KNC) (Entered: 04/04/2022) |
| 04/04/2022 | 8 | **NOTICE TO COUNSEL AND PARTIES: The Middle District of Florida's revised Local Rules become effective February 1, 2021 and can be found on the Court's public website https://www.flmd.uscourts.gov/local-rules. For a just and efficient resolution of this case, the parties are DIRECTED to read and comply with the Middle District of Florida's Local Rules. See Local Rule 1.01(a). Failure to comply** |

| | | |
|---|---|---|
| | | with ANY Local Rules or Court Orders may result in the imposition of sanctions including, but not limited to, the dismissal of this action or entry of default without further notice. Signed by Judge Wendy W. Berger on 4/4/2022. (RMF)ctp (Entered: 04/04/2022) |
| 04/04/2022 | 9 | NOTICE of Local Rule 3.02(a)(2), which requires the parties in every civil proceeding, except those described in subsection (d), to file a case management report (CMR) using the uniform form at www.flmd.uscourts.gov. The CMR must be filed (1) within forty days after any defendant appears in an action originating in this court, (2) within forty days after the docketing of an action removed or transferred to this court, or (3) within seventy days after service on the United States attorney in an action against the United States, its agencies or employees. Judges may have a special CMR form for certain types of cases. These forms can be found at www.flmd.uscourts.gov under the Forms tab for each judge. (Signed by Deputy Clerk). (RMF)ctp (Entered: 04/04/2022) |
| 04/04/2022 | 10 | CERTIFICATE of Interested Persons and Corporate Disclosure Statement by Halo DX, Inc., Halo Diagnostics Bulgaria, Inc., Precision Imaging St. Augustine LLC. (La Bouef, Joshua) Modified on 4/5/2022 (matched text to pleading) (KNC). (Entered: 04/04/2022) |
| 04/11/2022 | 11 | MOTION to Dismiss for Failure to State a Claim, or in the Alternative, MOTION for More Definite Statement by Halo DX, Inc., Halo Diagnostics Bulgaria, Inc., Precision Imaging St. Augustine LLC. (La Bouef, Joshua) Modified on 4/12/2022 (matched text to pleading) (KNC). (Entered: 04/11/2022) |
| 04/27/2022 | 12 | First AMENDED CLASS ACTION COMPLAINT against Halo DX, Inc., Precision Imaging St. Augustine LLC filed by Marc Irwin Sharfman M.D. P.A. (Attachments: # 1 Exhibit A - C copy of faxes)(Kelly, Ryan) Modified on 4/27/2022 (matched text to pleading) (KNC). (Entered: 04/27/2022) |
| 04/27/2022 | 13 | CASE MANAGEMENT REPORT. (Kelly, Ryan) (Entered: 04/27/2022) |
| 04/28/2022 | 14 | **ENDORSED ORDER denying as moot 11 Defendant's Motion to Dismiss Plaintiff's Class Action Complaint or in the Alternative Motion for a More Definite Statement. The Court further notes that the parties' filings fail to comply with this Court's January 13, 2021 Standing Order. The parties are cautioned that future failures to comply with all applicable rules and orders of this Court may result in the striking or denial of filings without notice or leave to refile. Signed by Judge Wendy W. Berger on 4/28/2022. (KS)** (Entered: 04/28/2022) |
| 05/03/2022 | 15 | **CASE MANAGEMENT AND SCHEDULING ORDER: Amended Pleadings due by 6/10/2022 Joinder of Parties due by 6/10/2022 Discovery due by 9/23/2023 Dispositive motions due by 10/31/2023 Pretrial statement due by 3/4/2024 All other motions due by 2/1/2024 Plaintiff disclosure of expert report due by 1/9/2023 Defendant disclosure of expert report due by 2/9/2023 Trial Status Conference set for 3/4/2024 at 10:00 AM in Orlando Courtroom 3 B before Judge Wendy W. Berger Bench Trial set for trial term commencing 4/1/2024 at 09:00 AM before Judge Wendy W. Berger. Conduct mediation hearing by 10/13/2023. Lead counsel to coordinate dates. Signed by Judge Wendy W. Berger on 5/3/2022. (RMF)** (Entered: 05/03/2022) |
| 05/03/2022 | | Reset scheduling order deadlines: Pretrial Conference set for 3/12/2024 at 10:00 AM before Judge Wendy W. Berger (KNC) (Entered: 05/04/2022) |
| 05/04/2022 | 16 | CASE REFERRED to Mediation. Mediator: Tim McDermott (KNC) (Entered: 05/04/2022) |
| 05/05/2022 | 17 | **STANDING ORDER ON DISCOVERY MOTIONS. Signed by Magistrate Judge Daniel C. Irick on 2/1/2021. (RN)** (Entered: 05/05/2022) |

| 05/11/2022 | 18 | ANSWER and affirmative defenses to 12 Amended Complaint by Halo DX, Inc., Precision Imaging St. Augustine LLC.(La Bouef, Joshua) (Entered: 05/11/2022) |
|---|---|---|
| 08/26/2022 | 19 | Joint MOTION for Approval of Confidentiality Agreement by Precision Imaging St. Augustine LLC. (Attachments: # 1 Exhibit A)(La Bouef, Joshua) Motions referred to Magistrate Judge Daniel C. Irick. Modified on 8/29/2022 to edit docket text (KNC). (Entered: 08/26/2022) |
| 08/29/2022 | 20 | **ENDORSED ORDER denying without prejudice 19 Joint Motion for Approval of Confidentiality Agreement. However, the parties are free to enter into stipulated confidentiality agreements. See Local Rule 3.05. Signed by Magistrate Judge Daniel C. Irick on 8/29/2022. (Irick, Daniel)** (Entered: 08/29/2022) |
| 09/28/2022 | 21 | Unopposed MOTION for Miscellaneous Relief, specifically Unopposed Motion for Entry of Authorization Order Under the Cable Act by Marc Irwin Sharfman M.D. P.A. (Attachments: # 1 Supplement Memorandum in Support, # 2 Exhibit A - InfuCare Order) (Kelly, Ryan) Modified on 10/3/2022 to edit docket text (KNC). (Entered: 09/28/2022) |
| 10/17/2022 | 22 | **ORDER granting in part and denying in part 21 Unopposed Motion for Entry of Authorization Order Under the Cable Act. Signed by Magistrate Judge Daniel C. Irick on 10/17/2022. (TNP)** (Entered: 10/17/2022) |
| 10/17/2022 | 23 | NOTICE of Appearance by Ross Michael Good on behalf of Marc Irwin Sharfman M.D. P.A. (Good, Ross) (Entered: 10/17/2022) |
| 12/07/2022 | 24 | MOTION to Compel discovery as to all fax advertisements sent during the class period by Marc Irwin Sharfman M.D. P.A. (Attachments: # 1 Exhibit 1 - Answers Interrogatories, # 2 Exhibit 2 - Answers Request to Produce)(Kelly, Ryan) Motions referred to Magistrate Judge Daniel C. Irick. Modified on 12/8/2022 to edit docket text (KNC). (Entered: 12/07/2022) |
| 12/08/2022 | 25 | Unopposed MOTION for Ross M. Good to Withdraw as Attorney by Marc Irwin Sharfman M.D. P.A. (Kelly, Ryan) Motions referred to Magistrate Judge Daniel C. Irick. Modified on 12/8/2022 to edit docket text (KNC). (Entered: 12/08/2022) |
| 12/11/2022 | 26 | **ENDORSED ORDER granting 25 Motion to Withdraw as Attorney. Ross Michael Good is terminated as counsel in this case. Signed by Magistrate Judge Daniel C. Irick on 12/11/2022. (Irick, Daniel)** (Entered: 12/11/2022) |
| 12/15/2022 | 27 | **ENDORSED ORDER denying without prejudice for failure to comply with Local Rule 3.01(g) 24 Motion to Compel. Signed by Magistrate Judge Daniel C. Irick on 12/15/2022. (Irick, Daniel)** (Entered: 12/15/2022) |
| 12/21/2022 | 28 | MOTION to Compel discovery as to all fax advertisements sent during the class period by Marc Irwin Sharfman M.D. P.A. (Attachments: # 1 Exhibit 1 - Defs answer to Interrogs, # 2 Exhibit 2 - Defs Response RTP)(Kelly, Ryan) Motions referred to Magistrate Judge Daniel C. Irick. Modified on 12/22/2022 to edit docket text (KNC). (Entered: 12/21/2022) |
| 12/27/2022 | 29 | RESPONSE in Opposition re 28 MOTION to Compel discovery as to all fax advertisements sent during the class period filed by Halo DX, Inc., Precision Imaging St. Augustine LLC. (Attachments: # 1 Exhibit Declaration of Josh Hammond, # 2 Exhibit Declaration of Jeff Gerard)(Jones, Darren) (Entered: 12/27/2022) |
| 01/18/2023 | 30 | **ORDER denying without prejudice 28 Short-Form Motion to Compel. On or before January 31, 2023, Plaintiff shall file a renewed motion to compel fully briefing the issue. No later than 14 days from the date Plaintiff files its renewed motion to** |

| | | **Compel, Defendants shall file a fully-briefed response. Signed by Magistrate Judge Daniel C. Irick on 1/18/2023. (TNP)** (Entered: 01/18/2023) |
|---|---|---|
| 01/31/2023 | 31 | MOTION to Compel production of all fax advertisements sent during the class period along with related documents, including but not limited to the fax transmission logs from each boradcast by Marc Irwin Sharfman M.D. P.A. (Attachments: # 1 Exhibit 1 - Def. Objections, Answers Interrrogs, # 2 Exhibit 2 - Def. Objections, Responses RTP)(Kelly, Ryan) Motions referred to Magistrate Judge Daniel C. Irick. Modified on 2/1/2023 to edit docket text (KNC). (Entered: 01/31/2023) |
| 02/14/2023 | 32 | First MOTION for Summary Judgment *And Incorporated Memorandum of Law* by All Defendants. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(La Bouef, Joshua) Modified on 2/14/2023 to edit docket text (KNC). (Entered: 02/14/2023) |
| 02/14/2023 | 33 | RESPONSE in Opposition re 31 MOTION to Compel production of all fax advertisements sent during the class period along with related documents, including but not limited to the fax transmission logs from each boradcast filed by Halo DX, Inc., Precision Imaging St. Augustine LLC. (Attachments: # 1 Exhibit Declaration of Josh Hammond, # 2 Exhibit Declaration of Jeff Gerard)(Jones, Darren) (Entered: 02/14/2023) |
| 03/06/2023 | 34 | Unopposed MOTION for Miscellaneous Relief, specifically to Modify Case Management and Scheduling Order by Marc Irwin Sharfman M.D. P.A. (Kelly, Ryan) Modified on 3/7/2023 to edit docket text (KNC). (Entered: 03/06/2023) |
| 03/08/2023 | 35 | **ORDER: Plaintiff's Unopposed Motion to Modify Case Management and Scheduling Order 34 is GRANTED, and the deadline for moving for class certification is extended to September 23, 2023. Signed by Judge Wendy W. Berger on 3/8/2023. (RMF)** (Entered: 03/08/2023) |
| 03/10/2023 | 36 | Unopposed MOTION for Extension of Time for Plaintiff to serve its rebuttal expert report by Marc Irwin Sharfman M.D. P.A. (Kelly, Ryan) Modified on 3/10/2023 to edit docket text (KNC). (Entered: 03/10/2023) |
| 03/12/2023 | 37 | **ENDORSED ORDER denying without prejudice 36 Unopposed Motion for Extension of Time. The Motion requests two different deadlines (compare para. 6 with the wherefore clause), so the Court is unsure as to what relief is requested. Signed by Magistrate Judge Daniel C. Irick on 3/12/2023. (Irick, Daniel)** (Entered: 03/12/2023) |
| 03/13/2023 | 38 | Unopposed MOTION to Extend the deadline for plaintiff to serve its expert rebuttal report to June 23, 2023 by Marc Irwin Sharfman M.D. P.A. (Kelly, Ryan) Modified on 3/13/2023 to edit docket text (KNC). (Entered: 03/13/2023) |
| 03/13/2023 | 39 | **ENDORSED ORDER granting 38 Unopposed Motion for Extension of Time. The deadline for Plaintiff to serve its rebuttal expert report is extended to June 23, 2023. Signed by Magistrate Judge Daniel C. Irick on 3/13/2023. (Irick, Daniel)** (Entered: 03/13/2023) |
| 03/16/2023 | 40 | RESPONSE in Opposition re 32 First MOTION for Summary Judgment *And Incorporated Memorandum of Law* filed by Marc Irwin Sharfman M.D. P.A. (Attachments: # 1 Exhibit 1 - Declaration of Marc Irwin Sharfman, M.D.)(Kelly, Ryan) Modified on 3/17/2023 to edit docket text (KNC). (Entered: 03/16/2023) |
| 03/22/2023 | 41 | Unopposed MOTION for Wallace C. Solberg to appear pro hac vice, Special Admission fee paid, Receipt No. AFLMDC-20637579 for $150 by Marc Irwin Sharfman M.D. P.A. (Kelly, Ryan) Motions referred to Magistrate Judge Daniel C. Irick. Modified on 3/22/2023 to edit docket text (KNC). (Entered: 03/22/2023) |

| 03/23/2023 | 42 | **ENDORSED ORDER denying without prejudice** 41 **Motion to Appear Pro Hac Vice. The Motion fails to state whether counsel has appeared in any state cases in Florida in the past 36 months. See Local Rule 2.01(c)(4). Signed by Magistrate Judge Daniel C. Irick on 3/23/2023. (Irick, Daniel)** (Entered: 03/23/2023) |
|---|---|---|
| 03/28/2023 | 43 | Unopposed MOTION for Wallace C. Solberg to appear pro hac vice by Marc Irwin Sharfman M.D. P.A. (Kelly, Ryan) Motions referred to Magistrate Judge Daniel C. Irick. Modified on 3/29/2023 to edit docket text (KNC). (Entered: 03/28/2023) |
| 03/28/2023 | 44 | **ENDORSED ORDER granting** 43 **Motion to Appear Pro Hac Vice. Wallace C. Solberg is granted special admission to practice in the Middle District for purposes of this action pursuant to Local Rule 2.01(c), provided counsel shall register for and use the electronic filing system as adopted by the Court. Signed by Magistrate Judge Daniel C. Irick on 3/28/2023. (Irick, Daniel)** Modified on 3/29/2023 to correct attorney's name, with permission from Chambers (KNC). (Entered: 03/28/2023) |
| 03/30/2023 | 45 | REPLY to Response to Motion re 32 First MOTION for Summary Judgment *And Incorporated Memorandum of Law* filed by Halo DX, Inc., Precision Imaging St. Augustine LLC. (Jones, Darren) (Entered: 03/30/2023) |
| 04/10/2023 | 46 | NOTICE of supplemental authority re 40 Response in Opposition to Motion, by Marc Irwin Sharfman M.D. P.A. (Kelly, Ryan) Modified on 4/10/2023 to edit docket text (KNC). (Entered: 04/10/2023) |
| 04/10/2023 | 47 | **ORDER granting in part and denying in part** 31 **Motion to Compel; on or before April 21, 2023, Defendants shall produce all fax advertisements and related fax transmission logs sent within the class period that are responsive to Plaintiff's discovery requests; and the Motion is DENIED in all other respects. Signed by Magistrate Judge Daniel C. Irick on 4/10/2023. (JEB)** (Entered: 04/10/2023) |
| 04/14/2023 | 48 | MOTION to Stay re 47 Order on Motion to Compel, by Halo DX, Inc., Precision Imaging St. Augustine LLC. (Jones, Darren) (Entered: 04/14/2023) |
| 04/20/2023 | 49 | **ENDORSED ORDER granting** 48 **Motion for Stay of Magistrate Judge's April 10, 2023 Order Granting in Part and Denying in Part Plaintiff's Motion to Compel, which has been referred to the undersigned for consideration. The undersigned makes no finding as to the merits of Defendants' forthcoming appeal, but Defendants' may object under Fed.R.Civ.P. 72, and their obligation to comply with the** 47 **Order is STAYED pending the resolution of that objection. Signed by Magistrate Judge Daniel C. Irick on 4/20/2023. (Irick, Daniel)** (Entered: 04/20/2023) |
| 04/24/2023 | 50 | APPEAL of Magistrate Judge ruling to District Court by Halo DX, Inc., Precision Imaging St. Augustine LLC re 47 Order on Motion to Compel, (Jones, Darren) (Entered: 04/24/2023) |
| 05/08/2023 | 51 | RESPONSE re 47 Order on Motion to Compel, 50 Appeal of magistrate judge ruling to district court filed by Marc Irwin Sharfman M.D. P.A.. (Attachments: # 1 Exhibit 1 - Josh Harmmond Dep., # 2 Exhibit 2 - Halo locations)(Kelly, Ryan) (Entered: 05/08/2023) |
| 07/26/2023 | 52 | Unopposed MOTION to Modify Case Management and Scheduling Order by Marc Irwin Sharfman M.D. P.A. (Kelly, Ryan) Modified on 7/27/2023 as to event type and docket text (ARL). (Entered: 07/26/2023) |
| 08/04/2023 | 53 | **ORDER: Defendants' Objections to Order Granting in Part and Denying in Part Plaintiff's Motion to Compel** 50 **is OVERRULED. The Motion to Compel Order** 47 **is AFFIRMED. The First Amended Class Action Complaint** 12 **is DISMISSED without prejudice. Plaintiff may file an amended complaint on or before August 9, 2023, to correct the deficiencies noted herein. Failure to timely file an amended** |

| | | |
|---|---|---|
| | | pleading in compliance with this Order may result in dismissal without further notice. Plaintiff's Unopposed Motion to Modify Case Management and Scheduling Order 52 is DENIED as moot. Signed by Judge Wendy W. Berger on 8/4/2023. (RMF) (Entered: 08/04/2023) |
| 08/07/2023 | 54 | Unopposed MOTION to Modify 15 Case Management Scheduling Order by Marc Irwin Sharfman M.D. P.A.. (Kelly, Ryan) Motions referred to Magistrate Judge Daniel C. Irick. (Entered: 08/07/2023) |
| 08/09/2023 | 55 | SECOND AMENDED CLASS ACTION COMPLAINT against Halo DX, Inc., Precision Imaging St. Augustine LLC filed by Marc Irwin Sharfman M.D. P.A. (Attachments: # 1 Exhibit A-C - copies of faxes, # 2 Exhibit D - 3-10-22 partnership announcement)(Kelly, Ryan) Modified text on 8/11/2023 (KME). (Entered: 08/09/2023) |
| 08/09/2023 | 56 | **ORDER: Plaintiff's Unopposed Motion to Modify Case Management and Scheduling Order 54 is GRANTED. It is further ORDERED that the Case Management and Scheduling Order 15 is amended (see PDF for new dates). Signed by Judge Wendy W. Berger on 8/9/2023. (RMF)** (Entered: 08/09/2023) |
| 08/09/2023 | | Set/reset scheduling order deadlines: Discovery due by 12/22/2023 Dispositive motions due by 1/26/2024 Pretrial statement due by 6/7/2024 All other motions due by 5/3/2024 Trial Status Conference set for 6/11/2024 at 10:00 AM in Orlando Courtroom 3 B before Judge Wendy W. Berger Jury Trial set for the July 2024 trial term commencing on 7/1/2024 at 09:00 AM in Orlando Courtroom 3 B before Judge Wendy W. Berger. (RMF) (Entered: 08/09/2023) |
| 08/09/2023 | 57 | **ENDORSED ORDER denying as moot 32 Defendants' Motion for Summary Judgment. Further, the parties are cautioned that pursuant to this Court's Case Management and Scheduling Order and the Local Rules, each party is limited to filing one motion for summary judgment that does not exceed twenty-five pages. Signed by Judge Wendy W. Berger on 8/9/2023. (KSR)** (Entered: 08/09/2023) |
| 08/23/2023 | 58 | MOTION to Dismiss for Failure to State a Claim *and Incorporated Memorandum of Law* by Halo DX, Inc., Precision Imaging St. Augustine LLC. (Jones, Darren) (Entered: 08/23/2023) |
| 08/24/2023 | 59 | NOTICE TO COUNSEL Christian James Lake; Darren Curtis Jones of Local Rule 2.01(b)(2)(B), which requires members of the Middle District bar to maintain with the clerk a current telephone number, mailing address, and email address. Update your contact information for the Middle District through PACER. (Signed by Deputy Clerk). (JK) (Entered: 08/24/2023) |
| 09/01/2023 | 60 | NOTICE of mediation conference/hearing to be held on September 15, 2023 at 9:00 a.m. before Vincent D'Assaro. (Kelly, Ryan) (Entered: 09/01/2023) |
| 09/13/2023 | 61 | RESPONSE in Opposition re 58 MOTION to Dismiss for Failure to State a Claim *and Incorporated Memorandum of Law* filed by Marc Irwin Sharfman M.D. P.A. (Kelly, Ryan) (Entered: 09/13/2023) |
| 09/19/2023 | 62 | MEDIATION report Hearing held on 9/15/2023. Hearing outcome: Impasse. (Lauten, Frederick) Modified text on 9/20/2023 (MCB). (Entered: 09/19/2023) |
| 12/07/2023 | 63 | Unopposed MOTION for Extension of Time to File Motion for Class Certification by Marc Irwin Sharfman M.D. P.A.. (Kelly, Ryan) Motions referred to Magistrate Judge Daniel C. Irick. (Entered: 12/07/2023) |
| 12/08/2023 | 64 | **ENDORSED ORDER granting 63 Unopposed Motion for Extension of Time. Plaintiff's deadline to file a motion for class certification is extended to 1/5/2024. No other deadline in this case is extended, nor may this extension be cited as cause to** |

| | | extend any other deadline. Signed by Magistrate Judge Daniel C. Irick on 12/8/2023. (Irick, Daniel) (Entered: 12/08/2023) |
|---|---|---|
| 12/22/2023 | 65 | Joint MOTION for Extension of Time to Complete Discovery , Joint MOTION for Extension of Time to File Discovery Deadline and Rule 23 Motion by Marc Irwin Sharfman M.D. P.A.. (Kelly, Ryan) Motions referred to Magistrate Judge Daniel C. Irick. (Entered: 12/22/2023) |
| 12/26/2023 | 66 | **ENDORSED ORDER denying 65 Joint Motion for Extension of Time. The Motion fails to identify, let alone meet, the good cause standard (and the related showing of diligence) applicable to the extension of CMSO deadlines. See Fed.R.Civ.P. 16(b)(4); Doc. 15 at 5. Further, filing a request for an extension does not toll the deadline, which has now expired as to the discovery deadline; the expiration of the deadline is often the consequence of seeking an extension on the date of the deadline. Signed by Magistrate Judge Daniel C. Irick on 12/26/2023. (Irick, Daniel)** (Entered: 12/26/2023) |
| 01/02/2024 | 67 | Unopposed MOTION to File Excess Pages by Marc Irwin Sharfman M.D. P.A.. (Kelly, Ryan) (Entered: 01/02/2024) |
| 01/04/2024 | 68 | **ENDORSED ORDER granting 67 Unopposed Motion for Leave to File Excess Pages. Signed by Magistrate Judge Daniel C. Irick on 1/4/2024. (Irick, Daniel)** (Entered: 01/04/2024) |
| 01/05/2024 | 69 | MOTION to Certify Class by Marc Irwin Sharfman M.D. P.A.. (Attachments: # 1 Appendix Appendix of Exhibits with Exhibits 1 - 11)(Kelly, Ryan) Motions referred to Magistrate Judge Daniel C. Irick. (Entered: 01/05/2024) |
| 01/10/2024 | 70 | Unopposed MOTION to File Excess Pages re 69 MOTION to Certify Class by Precision Imaging St. Augustine LLC. (Jones, Darren) Modified on 1/11/2024 as to docket text (ARL). (Entered: 01/10/2024) |
| 01/11/2024 | 71 | **ENDORSED ORDER granting 70 Unopposed Motion for Leave to File Excess Pages. Signed by Magistrate Judge Daniel C. Irick on 1/11/2024. (Irick, Daniel)** (Entered: 01/11/2024) |
| 01/26/2024 | 72 | RESPONSE in Opposition re 69 MOTION to Certify Class filed by Precision Imaging St. Augustine LLC. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4)(La Bouef, Joshua) Modified on 1/29/2024 as to duplicate text (ARL). (Entered: 01/26/2024) |
| 01/26/2024 | 73 | First MOTION to Strike Plaintiff's Expert Witness or Alternatively Motion to Exclude Impermissible Expert Testimony by Precision Imaging St. Augustine LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(La Bouef, Joshua) Modified on 1/29/2024 as to duplicate text (ARL). (Entered: 01/26/2024) |
| 01/26/2024 | 74 | First MOTION for Summary Judgment and Incorporated Memorandum of Law by Precision Imaging St. Augustine LLC. (La Bouef, Joshua) (Entered: 01/26/2024) |
| 01/26/2024 | 75 | AMENDED RESPONSE in Opposition re 69 MOTION to Certify Class filed by Precision Imaging St. Augustine LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(La Bouef, Joshua) Modified on 1/29/2024 to edit docket text (ELM). Modified on 1/29/2024 duplicate text(ARL). (Entered: 01/26/2024) |
| 02/01/2024 | 76 | Unopposed MOTION for Miscellaneous Relief, specifically Leave to File Reply in Support of Its Moion for Class Certification by Marc Irwin Sharfman M.D. P.A.. (Kelly, Ryan) (Entered: 02/01/2024) |
| 02/02/2024 | 77 | **ENDORSED ORDER granting 76 Unopposed Motion for Leave to File a Reply in Support of Motion for Class Certification. Signed by Magistrate Judge Daniel C.** |

| 02/07/2024 | 78 | MOTION to Strike / *Bar Untimely Discovery* by Marc Irwin Sharfman M.D. P.A.. (Attachments: # 1 Appendix of Exhibits, Exhibits 1 - 10)(Solberg, Wallace) (Entered: 02/07/2024) |
|---|---|---|
| 02/07/2024 | 79 | REPLY to Response to Motion re 69 MOTION to Certify Class filed by Marc Irwin Sharfman M.D. P.A. (Solberg, Wallace) Modified text on 2/8/2024 (MCB). (Entered: 02/07/2024) |
| 02/09/2024 | 80 | Opposed MOTION for Leave to File Sur-Reply by Precision Imaging St. Augustine LLC. (La Bouef, Joshua) Motions referred to Magistrate Judge Daniel C. Irick. Modified text on 2/12/2024 (BD). (Entered: 02/09/2024) |
| 02/09/2024 | 81 | **ENDORSED ORDER granting 80 Motion for Leave to File Sur-Reply. Defendants may file a seven-page sur-reply by 2/16/2024. Signed by Magistrate Judge Daniel C. Irick on 2/9/2024. (Irick, Daniel)** (Entered: 02/09/2024) |
| 02/16/2024 | 82 | SUR-REPLY to Response to Motion re 69 MOTION to Certify Class filed by Precision Imaging St. Augustine LLC. (La Bouef, Joshua) (Entered: 02/16/2024) |
| 02/16/2024 | 83 | RESPONSE in Opposition re 73 First MOTION to Strike Plaintiff's Expert Witness or, Alternatively, Motion to Exclude Impermissible Expert Testimony filed by Marc Irwin Sharfman M.D. P.A. (Attachments: # 1 Exhibit 1 - Sponsler Dep Presswood v Opensided, # 2 Exhibit 2 - Sponsler Dep Sharfman v InfuCare, # 3 Exhibit 3 - Sponsler Dep Scoma v Mastercard)(Solberg, Wallace) (Entered: 02/16/2024) |
| 02/20/2024 | 84 | **ORDER: Defendants' Motion to Dismiss 58 is GRANTED and the Second Amended Complaint 55 is DISMISSED without prejudice. Plaintiff may file an amended pleading to remedy the deficiencies noted herein on or before February 23, 2024. Plaintiff is cautioned, however, that the Court will not grant further leave to amend the pleading in this case. Signed by Judge Wendy W. Berger on 2/20/2024. (RMF)** (Entered: 02/20/2024) |
| 02/21/2024 | 85 | MOTION for Leave to File Documents Under Seal by Precision Imaging St. Augustine LLC. (La Bouef, Joshua) Motions referred to Magistrate Judge Daniel C. Irick. Modified text on 2/22/2024 (BD). (Entered: 02/21/2024) |
| 02/21/2024 | 86 | RESPONSE in Opposition to 78 MOTION to Bar Untimely Discovery filed by Precision Imaging St. Augustine LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F)(La Bouef, Joshua) Modified text on 2/22/2024 (BD). (Entered: 02/21/2024) |
| 02/23/2024 | 87 | THIRD AMENDED CLASS ACTION COMPLAINT against Halo DX, Inc., Precision Imaging St. Augustine LLC filed by Marc Irwin Sharfman M.D. P.A.. (Attachments: # 1 Exhibit A-C - copy of faxes, # 2 Exhibit D - partnership announcement)(Kelly, Ryan) Modified text on 2/26/2024 (BD). (Entered: 02/23/2024) |
| 02/23/2024 | 88 | Unopposed MOTION for Leave to File a Reply in Support of its 78 Motion to Bar Untimely Discovery by Marc Irwin Sharfman M.D. P.A.. (Kelly, Ryan) Modified text on 2/26/2024 (BD). (Entered: 02/23/2024) |
| 02/26/2024 | 89 | **ENDORSED ORDER granting 88 Unopposed Motion for Leave to File Reply in Support of 78 Motion to Bar Untimely Discovery. Signed by Magistrate Judge Daniel C. Irick on 2/26/2024. (Irick, Daniel)** (Entered: 02/26/2024) |
| 03/01/2024 | 90 | REPLY to Response to Motion re 78 MOTION to Strike / *Bar Untimely Discovery* filed by Marc Irwin Sharfman M.D. P.A. (Attachments: # 1 Exhibit 1- copy emails, # 2 Exhibit |

| | | 2- Def. Answers Interrogs)(Solberg, Wallace) Modified on 3/4/2024 to edit docket text (AJS). (Entered: 03/01/2024) |
|---|---|---|
| 03/05/2024 | 91 | **ORDER denying 85 Motion for Leave to File Documents Under Seal. Signed by Magistrate Judge Daniel C. Irick on 3/5/2024. (TNP)** (Entered: 03/05/2024) |
| 03/07/2024 | 92 | ANSWER and affirmative defenses to 87 Amended Complaint by Precision Imaging St. Augustine LLC.(La Bouef, Joshua) (Entered: 03/07/2024) |
| 03/21/2024 | 93 | MOTION for Leave to File Other Document: Materials Under Partial Seal by Precision Imaging St. Augustine LLC. (La Bouef, Joshua) Motions referred to Magistrate Judge Daniel C. Irick. (Entered: 03/21/2024) |
| 03/27/2024 | 94 | **ENDORSED ORDER granting 93 Defendant's Renewed Motion for Leave to File Materials Under Partial Seal. Defendant may file under seal an unredacted copy of the "Spreadsheet" and the "Practice Tracker" described in the Motion. Those documents shall remain under seal until ninety days after the case is closed and all appeals exhausted. Signed by Magistrate Judge Daniel C. Irick on 3/27/2024. (Irick, Daniel)** (Entered: 03/27/2024) |
| 04/03/2024 | 95 | SEALED DOCUMENT by Precision Imaging St. Augustine LLC (La Bouef, Joshua). (Entered: 04/03/2024) |
| 04/03/2024 | 96 | SEALED DOCUMENT by Precision Imaging St. Augustine LLC (La Bouef, Joshua). (Entered: 04/03/2024) |
| 04/03/2024 | 97 | Joint MOTION to Vacate 56 Order on Motion to Amend / Correct / Modify / Supplement *or in the Alternative, Extend Deadlines* by Marc Irwin Sharfman M.D. P.A.. (Kelly, Ryan) (Entered: 04/03/2024) |
| 04/24/2024 | 98 | NOTICE of hearing on motion re 78 MOTION to Strike / Bar Untimely Discovery. Motion Hearing set for 5/1/2024 at 11:00 AM in Orlando Courtroom 5 C before Magistrate Judge Daniel C. Irick. The parties shall file a joint notice three days before the hearing certifying ongoing conferral and stating which issues, if any, have been resolved. (TNP) (Entered: 04/24/2024) |
| 04/25/2024 | 99 | Unopposed MOTION for Miscellaneous Relief, specifically Reschedule May 1, 2024 Hearing by Marc Irwin Sharfman M.D. P.A. (Solberg, Wallace) Modified text on 4/26/2024 (MCB). (Entered: 04/25/2024) |
| 04/26/2024 | 100 | **ENDORSED ORDER granting 99 Plaintiff's Motion to Reschedule May 1, 2024 Hearing. The hearing will be set by separate notice. At the hearing, the parties shall present all evidence supporting their position concerning the timeliness of the disclosure of the discovery at issue in the 78 Motion. Signed by Magistrate Judge Daniel C. Irick on 4/26/2024. (Irick, Daniel)** (Entered: 04/26/2024) |
| 04/26/2024 | 101 | NOTICE OF RESCHEDULING HEARING: The Motion Hearing previously scheduled for 5/1/2024 is rescheduled. New scheduling date and time: Motion Hearing set for 5/15/2024 at 10:30 AM in Orlando Courtroom 5 C before Magistrate Judge Daniel C. Irick. The parties shall file a joint notice three days before the hearing certifying ongoing conferral and stating which issues, if any, have been resolved. (TNP) (Entered: 04/26/2024) |
| 05/05/2024 | 102 | **ORDER: The Motion for Extension 97 is GRANTED in part as set forth herein and DENIED in all other respects. Defendants' Motion for Summary Judgment 74 is DENIED as moot. The Case Management and Scheduling Order 15, as amended by the August 9, 2023 Order 56, is amended. See PDF for details. Signed by Judge Wendy W. Berger on 5/5/2024. (RMF)** (Entered: 05/05/2024) |

| | | |
|---|---|---|
| 05/05/2024 | | reset scheduling order deadlines: Dispositive motions due by 8/5/2024 Pretrial statement due by 12/2/2024 All other motions due by 11/4/2024 Trial Status Conference set for 12/10/2024 at 10:00 AM in Orlando Courtroom 3 B before Judge Wendy W. Berger Jury Trial set for the January 2025 trial term commencing on 1/6/2025 at 09:00 AM before Judge Wendy W. Berger. (RMF) (Entered: 05/05/2024) |
| 05/05/2024 | | reset scheduling order deadlines: Bench Trial set for the January 2025 trial term commencing on 1/6/2025 at 09:00 AM in Orlando Courtroom 3 B before Judge Wendy W. Berger. (RMF) (Entered: 05/05/2024) |
| 05/06/2024 | 103 | OPPOSED MOTION to Amend Case Management and Scheduling Order to Allow Limited Discovery Period by Precision Imaging St. Augustine LLC. (La Bouef, Joshua) Motions referred to Magistrate Judge Daniel C. Irick. Modified on 5/7/2024 to edit docket text (JDR). (Entered: 05/06/2024) |
| 05/09/2024 | 104 | NOTICE by Marc Irwin Sharfman M.D. P.A. re 101 Notice of Hearing - Reschedule - *Joint Notice/Status Regarding Ongoing Conferral of Issues* (Solberg, Wallace) (Entered: 05/09/2024) |
| 05/14/2024 | 105 | RESPONSE in Opposition re 103 MOTION to Amend *Case Management and Scheduling Order to Allow Limited Discovery Period* filed by Marc Irwin Sharfman M.D. P.A.. (Solberg, Wallace) (Entered: 05/14/2024) |
| 05/15/2024 | 106 | Minute Entry. In Person Proceedings held before Magistrate Judge Daniel C. Irick: MOTION HEARING held on 5/15/2024 re 78 MOTION to Strike */ Bar Untimely Discovery* filed by Marc Irwin Sharfman M.D. P.A. (Digital) (TNP) (Entered: 05/15/2024) |
| 05/20/2024 | 108 | **ORDER denying 78 Motion to Bar Untimely Discovery; denying 103 Opposed Motion to Amend Case Management and Scheduling Order to Allow Limited Discovery Period. Signed by Magistrate Judge Daniel C. Irick on 5/20/2024. (ECJ)** (Entered: 05/20/2024) |
| 05/23/2024 | 109 | **REPORT AND RECOMMENDATIONS re 69 Motion for Class Certification filed by Marc Irwin Sharfman M.D. P.A. It is respectfully RECOMMENDED that Plaintiff's Motion for Class Certification (Doc. 69) be DENIED. Signed by Magistrate Judge Daniel C. Irick on 5/23/2024. (TNP)** (Entered: 05/23/2024) |
| 05/30/2024 | 110 | Unopposed MOTION to File Excess Pages by Marc Irwin Sharfman M.D. P.A. (Solberg, Wallace) (Entered: 05/30/2024) |
| 05/31/2024 | 111 | **ENDORSED ORDER denying 110 Motion to File Excess Pages. Signed by Judge Wendy W. Berger on 5/31/2024. (CHM)** (Entered: 05/31/2024) |
| 06/03/2024 | 112 | OBJECTION re 108 Order on Motion to Strike, Order on Motion to Amend / Correct / Modify / Supplement . (Attachments: # 1 Exhibit 1 - 5.15.24 Hearig Transcript)(Solberg, Wallace) (Entered: 06/03/2024) |
| 06/06/2024 | 113 | OBJECTION re 109 REPORT AND RECOMMENDATIONS re 69 MOTION to Certify Class filed by Marc Irwin Sharfman M.D. P.A. (Attachments: # 1 Exhibit 1 - Nextel's Comments)(Solberg, Wallace) (Entered: 06/06/2024) |
| 06/17/2024 | 114 | RESPONSE re 112 Objection *to Order Denying Motion to Bar Untimely Discovery* filed by Halo DX, Inc., Precision Imaging St. Augustine LLC. (Jones, Darren) (Entered: 06/17/2024) |
| 06/20/2024 | 115 | RESPONSE to objections to 109 Report and Recommendations filed by Halo DX, Inc., Precision Imaging St. Augustine LLC. (Jones, Darren) (Entered: 06/20/2024) |

| 06/21/2024 | 116 | NOTICE TO COUNSEL Wallace C. Solberg and Ryan M. Kelly of Local Rule 2.02(a), which states, "The first paper filed on behalf of a party must designate only one lead counsel who - unless the party changes the designation - remains lead counsel throughout the action." Counsel must file a **Notice of Lead Counsel Designation** identifying lead counsel. (Signed by Deputy Clerk). (GL) (Entered: 06/21/2024) |
|---|---|---|
| 07/01/2024 | 117 | NOTICE of Lead Counsel Designation by Ryan M. Kelly on behalf of Marc Irwin Sharfman M.D. P.A. Lead Counsel: Ryan M. Kelly. (Kelly, Ryan) (Entered: 07/01/2024) |
| 07/29/2024 | 118 | TRANSCRIPT of Motion Hearing held on May 15, 2024, before Judge Daniel C. Irick. Court Reporter/Transcriber: Amie R. First, RDR, CRR, CRC, CPE. Email address: AmieFirst.CourtReporter@gmail.com. Telephone number: 407-494-3882.<br><br>NOTICE TO THE PARTIES - The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such notice is filed, the transcript may be made remotely available to the public without redaction after ninety (90) calendar days. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 8/19/2024. Redacted Transcript Deadline set for 8/29/2024. Release of Transcript Restriction set for 10/28/2024. (ARF) (Entered: 07/29/2024) |
| 08/02/2024 | 119 | **ORDER denying <u>69</u> Motion for Class Certification; adopting <u>109</u> Report and Recommendations. Signed by Judge Wendy W. Berger on 8/2/2024. (MDJ)** (Entered: 08/02/2024) |
| 08/06/2024 | 120 | **ORDER: it is ORDERED and ADJUDGED that Defendants' Motion to Strike Expert Witness or Alternatively, Motion to Exclude Impermissible Expert Testimony <u>73</u> is DENIED as moot. Signed by Judge Wendy W. Berger on 8/6/2024. (RMF)** (Entered: 08/06/2024) |
| 08/14/2024 | 121 | MOTION to Dismiss for Lack of Jurisdiction by Precision Imaging St. Augustine LLC. (Attachments: # <u>1</u> Exhibit Exhibit A, # <u>2</u> Exhibit Exhibit B)(La Bouef, Joshua) (Entered: 08/14/2024) |
| 09/04/2024 | 122 | RESPONSE in Opposition re <u>121</u> MOTION to Dismiss for Lack of Jurisdiction filed by Marc Irwin Sharfman M.D. P.A. (Attachments: # <u>1</u> Exhibit A - Pl. PLA, # <u>2</u> Exhibit B - Def. Answer to PLA)(Kelly, Ryan) Modified text on 9/5/2024 (MCB). (Entered: 09/04/2024) |
| 10/04/2024 | 123 | **ORDER: it is ORDERED and ADJUDGED that Plaintiff's Objections to Magistrate Judge's Order Denying Plaintiff's Motion to Bar Untimely Discovery <u>112</u> is OVERRULED as moot. Signed by Judge Wendy W. Berger on 10/4/2024. (RMF)** (Entered: 10/04/2024) |
| 10/21/2024 | 124 | NOTICE OF INTERLOCUTORY APPEAL as to <u>119</u> Order on Motion to Certify Class, Order on Report and Recommendations by Marc Irwin Sharfman M.D. P.A.. Filing fee not paid. (Petition for Permission to Appeal filed with USCA. USCA granted permission to appeal on 10/21/24) (Attachments: # <u>1</u> USCA letter, # <u>2</u> Petition for Permission to Appeal)(RN) (Entered: 10/24/2024) |
| 10/24/2024 | 125 | TRANSMITTAL of initial appeal package to USCA consisting of copies of notice of appeal, docket sheet, order/judgment being appealed, and motion, if applicable to USCA re <u>124</u> Notice of Interlocutory Appeal,. (ABM) (Entered: 10/24/2024) |
| 10/29/2024 | | USCA appeal fees received $605.00, receipt number ORL 113248 re <u>124</u> Notice of Interlocutory Appeal, filed by Marc Irwin Sharfman M.D. P.A. (JG) (Entered: |

| | | |
|---|---|---|
| 11/04/2024 | 126 | Unopposed MOTION to Stay *Pending Eleventh Circuit Ruling* by Marc Irwin Sharfman M.D. P.A.. (Attachments: # 1 Exhibit A -11th Circuit order granting petition for interlocutory appeal)(Kelly, Ryan) (Entered: 11/04/2024) |
| 11/26/2024 | 127 | NOTICE OF RESCHEDULING HEARING: The Trial Status Conference hearing previously scheduled for 12/10/2024 is rescheduled as a Telephone Trial Status Conference set for 12/3/2024 at 09:00 AM in Orlando Courtroom 3 B before Judge Wendy W. Berger. The parties shall call 1-855-244-8681 ten minutes before the hearing is scheduled to begin. Access Code: 23028923440. (RMF) (Entered: 11/26/2024) |
| 12/02/2024 | 128 | JOINT FINAL PRETRIAL statement by Marc Irwin Sharfman M.D. P.A.. (Kelly, Ryan) Modified on 12/2/2024 to edit docket text (JDR). (Entered: 12/02/2024) |
| 12/02/2024 | 129 | **ORDER: Plaintiff's Unopposed Motion to Stay Pending Eleventh Circuit Ruling 126 is GRANTED. This case is STAYED pending the resolution of the pending interlocutory appeal. The parties shall notify this Court within fourteen days of the resolution of proceedings before the Eleventh Circuit. The Clerk is directed to administratively close this case. Signed by Judge Wendy W. Berger on 12/2/2024. (RMF)** (Entered: 12/02/2024) |
| 12/02/2024 | 130 | NOTICE canceling Trial Status Conference hearing scheduled for 12/3/2024. (RMF) (Entered: 12/02/2024) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 12/12/2024 11:25:14 | | | |
| **PACER Login:** | AndersonWanca | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 6:22-cv-00642-WWB-DCI |
| **Billable Pages:** | 13 | **Cost:** | 1.30 |

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| MARC IRWIN SHARFMAN, M.D., P.A., a Florida corporation, individually and as the representative of a class of similarly-situated persons, <br><br> Plaintiff, <br><br> v. <br><br> PRECISION IMAGING ST. AUGUSTINE LLC, a Florida limited liability company, and HALO DX, INC., a Delaware corporation, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Case No: 6:22-cv-00642-WWB-DCI

**CLASS ACTION**

**THIRD AMENDED CLASS ACTION COMPLAINT**

Plaintiff, Marc Irwin Sharfman, M.D., P.A. ("Plaintiff"), brings this action on behalf of itself and all others similarly situated, through its attorneys, and alleges the following against Defendants Precision Imaging St. Augustine LLC ("Precision"), and Halo DX, Inc. ("Halo"), (collectively, "Defendants"):

**PRELIMINARY STATEMENT**

1.      This case seeks redress for Defendants' sending of unsolicited fax advertisements to Plaintiff and the proposed classes on February 9, 2022, February 15, 2022, and February 17, 2022, in violation of the Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005, 47 USC § 227, *et seq.* (hereafter the "TCPA" or the "Act").

2.      The TCPA makes it unlawful for any person to "use any telephone facsimile machine, computer or other device to send, to a telephone facsimile machine,

an unsolicited advertisement . . ." 47 U.S.C. § 227(b)(1)(C).

3. The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).

4. The regulations implementing the TCPA define "sender" as the "person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." 47 C.F.R. § 64.1200(f)(11).

5. The TCPA creates a private right of action for any person or entity that is sent an advertisement in violation of the Act "or the regulations prescribed under" the Act and provides for "an action to recover for actual monetary loss from such violation, or to receive $500 in damages for each such violation, whichever is greater." *Id.* § 227(b)(3)(A)–(B).

6. As described in greater detail below, Plaintiff's Third Amended Complaint ("TAC") alleges that Defendants Precision and Halo together sent Plaintiff and the proposed classes unsolicited fax advertisements on or about February 9, 2022, February 15, 2022, and February 17, 2022 (collectively, the Faxes"), in violation of the TCPA. Copies of these Faxes are attached hereto as Exhibits A, B, and C respectively.

7. Unsolicited fax advertisements damage those persons or entities to whom they are sent. Unsolicited fax advertisements occupy fax lines, prevent fax machines from receiving or transmitting authorized faxes, and cause undue wear and tear on telephone facsimile machines. A junk fax recipient loses the use of their fax machine, paper, and ink toner. An unsolicited fax advertisement wastes the recipient's valuable

2

time that would have been spent on something else and requires additional labor to attempt to discern the source and purpose of the unsolicited fax. An unsolicited junk fax intrudes upon the recipient's interest in seclusion, violates their right to privacy, and is a nuisance. An unsolicited fax advertisement causes direct injury and the very harm the TCPA was meant to prevent—being sent an unsolicited fax advertisement.

8.     Plaintiff alleges that this action is based upon a common nucleus of operative facts because the facsimile transmissions at issue were done in the same or similar manner. This action is based on the same legal theory, namely, liability under the TCPA. This action seeks an award of statutory damages in the minimum amount of $500 for each violation of the TCPA, and to have such damages trebled, as provided by § 227(b)(3) of the Act, in the event willfulness in violating the TCPA is shown.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

10.     This Court has personal jurisdiction over Defendants Precision and Halo because they transact business within this judicial district, have made contacts within this judicial district, and/or have committed tortious acts within this judicial district.

## PARTIES

11.     Plaintiff is a medical professional association with its principal place of business in Longwood, Florida.

12.     Defendant Precision is a Florida-based medical services provider that offers imaging and radiology services through its four locations in Northeast Florida.

13.     Halo is a Delaware corporation whose affiliates offer a variety of imaging, radiology, urology, and diagnostic services through their respective locations in

California, Florida, and Texas.

14.     In or around December 2021, Precision entered into a joint venture with Halo wherein Halo made a capital investment in Precision's parent company (THE MEDICAL IMAGING PARTNERSHIP-JAX1, LLC), in exchange for a non-controlling stake (the "Joint Venture"). Halo owns a 40% stake in Precision and its affiliates, and shares in the profits from Precision's imaging, radiology, urology, and diagnostic services.

15.     As part of the Joint Venture, Halo dedicated resources to Precision, including marketing and technology staff, to help Precision modernize its practices. A cursory search of the Internet reveals that Precision is part of Halo, and the services provided by Precision and Halo overlap. (*See* www.halodx.com/locations, last visited August 7, 2023). In addition, an announcement was made by "Halo Precision Diagnostics," dated March 10, 2022, attached hereto as Exhibit D, and styled as "Precision Image Centers, Halo Diagnostics Partner to Meet Patient Demand for Personalized Healthcare in Northeast Florida." The announcement describes the relationship between Halo Diagnostics and Precision Imaging Centers as a "Pioneering Partnership." (*Id.*)

**<u>FACTUAL ALLEGATIONS</u>**

16.     In February 2022, Halo, on behalf of itself and on behalf of Precision, directed third party fax broadcaster jBlast to send a total of four (4) fax advertisements (collectively, the "Faxes") advertising the commercial availability and quality of Precision's and Halo's diagnostic services.

17.     On February 9, 2022, Precision and Halo sent an unsolicited fax advertisement to Plaintiff and the classes (the "February 9 Fax"). (Exhibit A). The

February 9 Fax was "addressed" to Plaintiff's and the classes' ten-digit telephone numbers. The February 9 Fax was sent twice by Halo and Precision.

18.     The February 9 Fax advertises the commercial availability and quality of Precision's and Halo's Coronary Computed Tomography Angiography services, offering "special cash pay pricing" for the month of February and "favorable reimbursement by Medicare and Commercial payers with appropriate indications." (Exhibit A). The February 9 Fax states among other things:

PRECISION
IMAGING CENTERS
POWERED BY HALO DIAGNOSTICS

**Heart Scans for Patients with Chest Pains Could Save Thousands of Lives**

February is American Heart Month, and we are celebrating with reduced pricing for Coronary Computed Tomography Angiography (CCTA) studies.

\*     \*     \*

**Pricing and Reimbursement**

- Special cash pay pricing at $495 for the month of February
- Favorable reimbursement by Medicare and Commercial payers
  With appropriate indications
- Cpt Code: 75574

(Exhibit A).

19.     The bottom of the February 9 Fax provides the central scheduling telephone number (904) 289-4370 and lists four locations. (Exhibit A).

20.     Precision and Halo sent another unsolicited fax advertisement to Plaintiff and the proposed classes on February 15, 2022 (the "February 15 Fax"). (Exhibit B). The February 15 Fax was "addressed" to Plaintiff's and the classes' ten-digit telephone numbers. The February 15 Fax advertises the commercial availability and quality of Precision's and Halo's mammogram screenings services through its "Mammos and

5

Mimosas" event, wherein Precision provided walk-in appointments for mammogram screenings. (Exhibit B).

21.    The February 15 Fax states in part:

PRECISION
IMAGING CENTERS
POWERED BY HALO DIAGNOSTICS

JOIN US FOR MAMMOS AND MIMOSAS
THIS WEEKEND!

**Cheers to Good Health!**
 Get Screened, Save Lives

A day of pampering and prevention at
Precision Imaging Centers!

(Exhibit B).

22.    The February 15 Fax provides dates and times for "Beach Saturdays" and "Gate Sundays," and provides telephone number (904) 289-4370 to call for details and lists four Precision Imaging locations.  (Exhibit B).

23.    Precision and Halo sent a third unsolicited fax advertisement to Plaintiff and the proposed classes on February 17, 2022 (the "February 17 Fax"). (Exhibit C). The February 17 Fax was "addressed" to Plaintiff's and the proposed classes' ten-digit telephone numbers. The February 17 Fax advertises the commercial availability and quality of Precision's and Halo's Imaging Center services, including announcing two new "team members" and the availability of Saturday MRIs. (Exhibit C).

24.    The February 17 Fax provides:

PRECISION
IMAGING CENTERS
POWERED BY HALO DIAGNOSTICS

**GREAT NEWS!**
PRECISION IMAGING CENTERS
is pleased to announce new team members for our Beach Blvd location

6

BEACH BLVD
NOW OPEN ON SATURDAYS
FOR MRI EXAMS
8AM-4PM

(Exhibit C).

25.    The February 17 Fax contains a telephone number — (904) 289-4370) — to call to schedule an appointment and it lists four locations. (Exhibit C).

26.    The Faxes constitute advertisements under the TCPA and its implementing regulations.

27.    Precision and Halo are the "senders" of the Faxes because they are the entities on whose behalf the unsolicited Faxes were sent and because Precision's and Halo's services "are advertised or promoted" in the Faxes. 47 C.F.R. § 64.1200(f)(11).

28.    Precision and Halo receive revenues generated from the sale of the services advertised in the Faxes, and Halo and Precision profit and benefit from the sale of said services advertised in the Faxes.

29.    The Faxes were sent by and on behalf of Precision and Halo through a telephone facsimile machine, computer, or other device to the telephone facsimile machines of Plaintiff and the class members.

30.    Neither Plaintiff nor the class members gave prior express invitation or permission to Precision or Halo to send the Faxes (nor any other fax advertisements at any time prior to the date the Faxes were transmitted).

31.    None of the Faxes include a notice to the recipient as to how the recipient may request Precision and/or Halo to stop sending fax advertisements to them. Defendants' failure to include such a notice precludes them from sustaining the EBR affirmative defense as a matter of law. *See* 47 U.S.C. § 227(b)(1)(C)(i)–(iii).

32.    The Faxes harmed Plaintiff and the class. The Faxes occupied fax lines, prevented fax machines from receiving authorized faxes, prevented their use for authorized outgoing faxes, and caused undue wear and tear on telephone facsimile machines. The Faxes caused Plaintiff and the class to lose the use of their fax machines, lose paper, and lose ink toner. The Faxes wasted Plaintiff's and the class's valuable time that would have been spent on something else and required additional labor to attempt to discern the source and purpose of the Faxes. The Faxes intruded upon the Plaintiff's and the class's interest in seclusion, violated their right to privacy, were a nuisance, and interfered with business. Defendants' Faxes caused direct injury and the very harm the TCPA was meant to prevent—being sent an unsolicited fax advertisement.

## CLASS ACTION ALLEGATIONS

33.    In accordance with Fed. R. Civ. P. 23(a) and (b)(3), Plaintiff brings this class action pursuant to the TCPA, on behalf of the following class of persons:

### Class A

All persons or entities who were successfully sent a Fax by Defendants (1) on or about February 9, 2022, offering reduced pricing for heart scans, (2) on or about February 15, 2022, that states "Join Us for Mammos and Mimosas this Weekend," or (iii) on or about February 17, 2022, that announces new members of Precision Imaging Centers, and which advises of Saturday hours.

34.    In the event the Court finds there are individual issues as to 970 recipients for whom Defendants claim prior express invitation or permission was obtained to send promotional/informational communications during "in person visits," *see* Doc. 69 at 6-7, Plaintiff seeks to certify the following alternative class:

8

**Class B**

All persons or entities who were successfully sent a Fax (1) on or about February 9, 2022, offering reduced pricing for heart scans, (2) on or about February 15, 2022, that states "Join Us for Mammos and Mimosas this Weekend," or (iii) on or about February 17, 2022, that announces new members of Precision Imaging Centers, and which advises of Saturday hours. Excluded from Class B are the 970 "referral sources" listed in Exhibit A to Precision's Supplemental Interrogatory Responses whom Defendants claim provided permission to send "promotional and information communications" during "in person visits" by Precision.

Excluded from both proposed Classes are Defendants' employees and agents. Plaintiff also seeks an Order from the Court appointing Plaintiff as class representative and appointing the law firm of Anderson + Wanca as class counsel.

35. <u>Class Size (Fed. R. Civ. P. 23(a)(1))</u>: Defendants, through retained fax broadcaster jBlast, successfully sent 14,303 unsolicited fax ads (the Faxes) to 4,922 unique fax numbers. Accordingly, the number of persons and entities of the two classes Class A—4,922, and alternative Class B 4,922-970, is numerous and joinder of all members is impracticable.

36. <u>Commonality (Fed. R. Civ. P. 23(a)(2))</u>: Common questions of law and fact apply to the claims of all class members, and include, but are not limited to, the following: (1) whether the Faxes were sent from a telephone facsimile machine, computer, or other device to a "telephone facsimile machine," as that term is defined in the TCPA and interpreted in final Federal Communication Commission ("FCC") orders; (2) whether the Faxes are "advertisements," (3) whether the Defendants are the "senders" of the Faxes; (4) whether online fax service ("OFS") subscribers/users to whom the Faxes were successfully sent suffered concrete injury, (5) whether the TCPA regulates unsolicited fax ads sent to OFS subscribers/users, and (6) whether Defendants can meet their burden to demonstrate they had "prior express invitation or

9

permission to send fax advertisements to the proposed Class members.

37.     <u>Typicality (Fed. R. Civ. P. 23(a)(3))</u>:   Plaintiff's claims are typical of the claims of all class members. Plaintiff received the same unsolicited fax advertisements as the proposed class members, namely, the Faxes. The Faxes were sent by or on behalf of Precision and Halo, and the Faxes advertise the commercial availability or quality of Precision's and Halo's imaging, radiology, urology, and diagnostic services. Plaintiff is making the same claims and seeking the same relief for itself, and all class members, based upon the same federal statute. Precision and Halo have acted in the same or similar manner with respect to Plaintiff and all the class members by sending Plaintiff and each class member the same Faxes, without prior express invitation or permission and/or which do not contain statutory and regulatory compliant opt-out notice.

38.     <u>Fair and Adequate Representation (Fed. R. Civ. P. 23(a)(4))</u>:   Plaintiff will fairly and adequately represent and protect the interests of the classes. Plaintiff is interested in this matter, has no conflicts, and has retained experienced class counsel to represent the class.

39.     <u>Predominance and Superiority (Fed. R. Civ. P. 23 (b)(3))</u>:   Common questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other methods for the fair and efficient adjudication of the controversy because:

(a)     Proof of the claims of Plaintiff will also prove the claims of the class without the need for separate or individualized proceedings;

(b)     Evidence regarding defenses or any exceptions to liability that Precision and Halo may assert and attempt to prove will come from their records and will not require individualized or separate inquiries or proceedings;

(c)     Precision and Halo have acted and are continuing to act pursuant to common policies or practices in the same or similar manner with respect to all class members;

(d)     The amount likely to be recovered by individual class members does not support individual litigation. A class action will permit a large number of relatively small claims involving virtually identical facts and legal issues to be resolved efficiently in one proceeding based upon common proofs; and

(e)     This case is inherently manageable as a class action in that:

(i)     Precision and Halo identified persons to receive the fax transmissions at issue and Precision and Halo and/or their agents' computers and business records will enable Plaintiff to readily identify class members and establish liability and damages;

(ii)     Liability and damages can be established for Plaintiff and the class with the same common proofs;

(iii)     Statutory damages are provided for in the statute and are the same for all class members and can be calculated in the same or a similar manner;

(iv)     A class action will result in an orderly and expeditious administration of claims and will foster economies of time, effort and expense;

(v)     A class action will contribute to uniformity of decisions concerning Defendants' actions; and

(vi)    As a practical matter, the claims of the class are likely to go unaddressed absent class certification.

## VIOLATIONS OF TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227

40.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

41.    The TCPA makes it unlawful for any person to "use any telephone facsimile machine, computer or other device to send, to a telephone facsimile machine, an unsolicited fax advertisement . . ." 47 U.S.C. § 227(b)(1)(C).  The TCPA defines "telephone facsimile machine" as "equipment which has the capacity (A) to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line, or (B) to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper." (47 U.S.C. § 227(a)(3)).

42.    The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227 (a) (5).

43.    In order to sustain the affirmative defense of EBR, a sender must establish that: (1) the sender in fact has an EBR with the recipient;[1] (2) the sender obtained the

---

[1] An "established business relationship" is defined as "a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a business or residential subscriber with or without an exchange of consideration, on the basis of an inquiry, application, purchase or transaction by the business or the residential subscriber regarding products or services offered by such person or entity, which relationship has not been terminated by either party." 47 C.F.R. § 64.1200(f)(6).

recipient's fax number through a voluntary communication between the two or through a

public source on which the recipient voluntarily made the number available; and (3) the

fax has an opt-out notice that complies with the requirements of the statute and the FCC

regulations. 47 U.S.C. § 227(b)(1)(C)(i)–(iii).

44.    The corresponding FCC regulations state that an opt-out notice must:

(1)    Be clear and conspicuous and on the first page of the advertisement;

(2)    State that the recipient may make a request to the sender not to send any future unsolicited advertisements and that failure to comply within 30 days is unlawful;

(3)    Set forth the requirements for a request under 47 U.S.C. § 227(b)(2)(E); [2]

(4)    Include a domestic contact telephone and facsimile number for the recipient, and a cost-free mechanism for a recipient to transmit a request; and

(5)    Permit the recipient to make such a request at any time on any day of the week.

47 C.F.R. § 64.1200(a)(4)(iii).

45.    The Faxes do not contain an opt-out notice, precluding as a matter of law

an EBR defense in this case. (*See* Exhibits A, B, and C)

46.    The Faxes are advertisements under the TCPA. 47 U.S.C. § 227(a)(5).

47.     Precision and Halo are the senders of the Faxes. 47 C.F.R. §

64.1200(f)(11).

---

[2] 47 U.S.C. § 227(b)(2)(E) states that a request not to send future unsolicited advertisements will be binding only if (1) it identifies the telephone number or numbers of the telephone facsimile machine to which the request relates; (2) the request is made to the telephone or facsimile number provided by the sender in the opt-out notice; and (3) the person making the request has not "subsequent to such request" provided express invitation or permission to the sender.

48.   Precision and Halo sent the Faxes from a telephone facsimile machine, computer, or other device to the telephone facsimile machines of Plaintiff and the classes.

49.   Precision and Halo did not have prior express invitation or permission to send the Faxes.

50.   The Faxes caused harm to Plaintiff and the proposed classes in that they: (i) occupied fax lines, prevented fax machines from receiving authorized faxes, prevented their use for authorized outgoing faxes, and caused undue wear and tear on telephone facsimile machines; (ii) caused Plaintiff and the classes to lose the use of their fax machines, lose paper, and lose ink toner; (iii) wasted the Plaintiff's and the proposed classes' valuable time that would have been spent on something else and required additional labor to attempt to discern the source and purpose of the unsolicited fax; (iv) intruded upon Plaintiff's and the class's interest in seclusion, violated their right to privacy, and were a nuisance; and (v) have caused direct injury and the very harm the TCPA was meant to prevent—being sent an unsolicited fax advertisement.

WHEREFORE, Plaintiff, MARC IRWIN SHARFMAN, M.D., P.A., individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendants, PRECISION IMAGING ST. AUGUSTINE LLC and HALO DX, INC., jointly and severally, as follows:

A.   That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of Class A (or alternative Class B), and appoint Plaintiff's counsel as counsel for the classes; and

B.   That the Court award actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation.

C.      That the Court award pre-judgment interest, costs, and such further relief

as the Court may deem just and proper.

Respectfully submitted,

MARC IRWIN SHARFMAN, M.D., P.A.,
individually, and as the representative of a
class of similarly-situated persons

By:     /s/ Ryan M. Kelly
Ryan M. Kelly – FL Bar No.: 90110
Wallace C. Solberg – *admitted pro hac vice*
ANDERSON + WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL  60008
Tele:  847/368-1500 / Fax:  847/368-1501
rkelly@andersonwanca.com
wsolberg@andersonwanca..com

15

**EXHIBIT A**



# PRECISION
## IMAGING CENTERS
POWERED BY HALŌ DIAGNOSTICS

# Heart Scans for Patients with Chest Pains Could Save Thousands of Lives

February is American Heart Month, and we are celebrating with reduced pricing for Coronary Computed Tomography Angiography (CCTA) studies.

The American College of Cardiology/American Heart Association recently published their <u>ACC/AHA Chest Pain Guidelines</u> in October 2021. This marks the first update to these official clinical practice guidelines in nearly a decade. **This guideline makes coronary computed tomography angiography (CCTA) one of the first-line noninvasive tests for chest pain.**

## Pricing and Reimbursement
- Special cash pay pricing at $495 for the month of February
- Favorable reimbursement by Medicare and Commercial payers with appropriate indications
- CPT Code: 75574

# Schedule Today (904) 996-8100



Jacksonville
7860 Gate Pkwy, Unit 123,
Jacksonville, FL 32256

Jacksonville Beach
14444 Beach Blvd, Ste 23
Jacksonville Beach, FL 32250

Fleming Island
1540 Business Center Dr B
Fleming Island, FL 32003

St Augustine
1000 Plantation Island Dr S, Ste 1
St Augustine, FL 32080

Central Scheduling 904.996.8100

**EXHIBIT B**

02-15-2022 16:43          7607798073          RECEIVED          1/1

USCA11 Case: 24-13315    Document: 16    Date Filed: 12/23/2024    Page: 35 of 81

# PRECISION
### IMAGING CENTERS
POWERED BY HALŎ DIAGNOSTICS

## JOIN US FOR MAMMOS AND MIMOSAS THIS WEEKEND!

## Cheers to Good Health!
### Get Screened, Save Lives

A day of pampering and prevention at Precision Imaging Centers!

**FEBRUARY 20, 2022 | 8AM-4PM**
7860 GATE PKWY #123 JACKSONVILLE 32256

**WALK-IN FOR FREE SNACKS, PAMPERING & REFRESHMENTS**

Beach Saturdays
8AM-4PM
BEGINNING 2/26, 3/5, 3/12, 3/19

Gate Sundays
8AM-4PM
BEGINNING 2/20, 2/27, 3/6, 3/13

## FOR DETAILS
### Call (904) 289-4370



| Jacksonville | Jacksonville Beach | Fleming Island | St Augustine |
|---|---|---|---|
| 7860 Gate Pkwy, Unit 123, | 14444 Beach Blvd, Ste 23 | 1540 Business Center Dr B | 1000 Plantation Island Dr S, Ste 1 |
| Jacksonville, FL 32256 | Jacksonville Beach, FL 32250 | Fleming Island, FL 32003 | St Augustine, FL 32080 |

Central Scheduling 904.996.8100

**EXHIBIT C**

02-17-2022 9:45    7607798073    RECEIVED 02/23/2022 9:56    1/1

USCA11 Case: 24-13315    Document: 16    Date Filed: 12/23/2024    Page: 37 of 81



# PRECISION
## IMAGING CENTERS
### POWERED BY HALÖ DIAGNOSTICS

# GREAT NEWS!

# PRECISION IMAGING CENTERS
is pleased to announce new team members for our
Beach Blvd location:

**Amy Lococo**- Center Manager
alococo@precisioncenters.com

**Brooke Benton**-Patient Ambassador
bbenton@precisioncenters.com



# BEACH BLVD
# NOW OPEN ON SATURDAYS
# FOR MRI EXAMS
# 8AM-4PM

## CALL TO SCHEDULE
## 904-996-8100
14444 Beach Blvd Suite 23
Jacksonville Beach, FL 32250



Jacksonville
7860 Gate Pkwy, Unit 123,
Jacksonville, FL 32256

Jacksonville Beach
14444 Beach Blvd, Ste 23
Jacksonville Beach, FL 32250

Fleming Island
1540 Business Center Dr B
Fleming Island, FL 32003

St Augustine
1000 Plantation Island Dr S, Ste I
St Augustine, FL 32080

Central Scheduling 904.996.8100

**EXHIBIT D**

Case 6:22-cv-00642-WWB-DCI   Document 87-2   Filed 02/23/24   Page 2 of 11 PageID 1952

**(877) 225-2831 (tel:1-877-225-2831)**

≡

(https://www.halodx.com/)

Home (https://www.halodx.com/) / Halo Blog (https://www.halodx.com/blog/) / News (https://www.halodx.com/blog/category/news/) / Precision Imaging Centers, HALO Diagnostics Partner to Meet Patient Demand for Personalized Healthcare in Northeast Florida

# Precision Imaging Centers, HALO Diagnostics Partner to Meet Patient Demand for Personalized Healthcare in Northeast Florida

March 10, 2022 | by HALO Precision Diagnostics

This content is solely for informational purposes and does not substitute for medical or diagnostic advice. Please contact us if you have questions or concerns. This site uses cookies to analyze traffic and user behavior, protect your privacy, and provide you with the best user experience.To find out more about the cookies we use, see our Privacy Policy. By clicking "Accept", you consent to the use of ALL the cookies. Do not sell my personal information (https://www.halodx.com/privacy/#ccpa).

Cookie Settings      Accept

Case 6:22-cv-00642-WWB-DCI   Document 87-2   Filed 02/23/24   Page 3 of 11 PageID 1953

USCA11 Case: 24-13315     Document: 16     Date Filed: 12/23/2024     Page: 40 of 81



## Article Contents

> A Pioneering Partnership

> Unparalleled Care to Patients

> One Patient

> Accepting Referrals

> About HALO Diagnostics

> About Precision Imaging

> Schedule a Consultation

This content is solely for informational purposes and does not substitute for medical or diagnostic advice. Please contact us if you have questions or concerns. This site uses cookies to analyze traffic and user behavior, protect your privacy, and provide you with the best user experience.To find out more about the cookies we use, see our Privacy Policy. By clicking "Accept", you consent to the use of ALL the cookies. Do not sell my personal information (https://www.halodx.com/privacy/#ccpa).

Cookie Settings        Accept

# A Pioneering Partnership

Patients in Northeast Florida are ready for a new kind of healthcare. By partnering with men's and women's health leader HALO Diagnostics, Precision Imaging Centers is ready to meet that need.

Precision Imaging Centers, a multi-specialty radiology practice, announces a pioneering partnership with HALO Diagnostics, a market leader in men's and women's health. Together, they answer a critical need in Northeast Florida: personalized, prompt, and patient-first care that makes earlier detection of top diseases and better treatment plans possible.

Florida's First Coast has long had few healthcare options. Patients face long screening times, unnecessary callbacks, and increased costs at area hospital systems. In the age of the Internet, patients are educating themselves and calling for better, more customized care.

# Unparalleled Care to Patients

For 15 years, Precision Imaging has provided a reliable alternative, with high-quality imaging and same-day diagnoses. Joining forces with HALO Diagnostics puts Precision Imaging on the path to becoming Northeast Florida's preferred healthcare provider, with services costing as little as half the price of area hospitals.

"We're building the leading outpatient healthcare facility in Northeast Florida," says Josh Hammond, CEO of Precision Imaging. "Patients here deserve a new kind of healthcare. By partnering with HALO, we can provide unparalleled care to patients when screening and diagnosing breast,

This content is solely for informational purposes and does not substitute for medical or diagnostic advice. Please contact us if you have questions or concerns. This site uses cookies to analyze traffic and user behavior, protect your privacy, and provide you with the best user experience.To find out more about the cookies we use, see our Privacy Policy. By clicking "Accept", you consent to the use of ALL the cookies. Do not sell my personal information (https://www.halodx.com/privacy/#ccpa).

Cookie Settings      Accept

"Each patient is unique – from their genes and environment to their conditions and treatments. Our team at Precision Imaging Centers powered by HALO Diagnostics truly understands the importance of precision-focused healthcare – and has the technology to make that happen.

Our state-of-the-art equipment ranks in the top 99th percentile and reduces scan times by five-fold in some cases. Very few providers offer this technology."

By joining forces, Precision Imaging and HALO Diagnostics are transforming healthcare in several ways, including:

- Pioneering prostate program: One of the fastest-growing programs at Precision, with an advanced diagnostic ensemble that detects prostate cancer at a 99.6% rate. The same technology will soon be available for breast, cardiovascular, and brain health.
- Advanced breast imaging: Early detection is the standard at Precision, with 3D mammography catching 41% more invasive breast cancers. Dr. Kathryn Pearson, an expert breast radiologist with 25 years of experience, leads this innovative program.

"We're saving patients' lives through precision diagnostics," Hammond explains. "At the same time, we truly understand the distress a possible cancer or cardiac diagnosis brings. We believe in making their experience as stress-free as possible. Patients have given Precision nearly 60 5-star reviews in the last month."

# One Patient

Marissa Trojnar, Director of Marketing at Precision Imaging, was one of those patients.

This content is solely for informational purposes and does not substitute for medical or diagnostic advice. Please contact us if you have questions or concerns. This site uses cookies to analyze traffic and user behavior, protect your privacy, and provide you with the best user experience.To find out more about the cookies we use, see our Privacy Policy. By clicking "Accept", you consent to the use of ALL the cookies. Do not sell my personal information (https://www.halodx.com/privacy/#ccpa).

Cookie Settings     Accept

Case 6:22-cv-00642-WWB-DCI   Document 87-2   Filed 02/23/24   Page 6 of 11 PageID 1956

# Accepting Referrals

Precision Imaging is accepting new referrals at its four First Coast locations. To learn more about Precision Imaging Centers powered by HALO Diagnostics, please visit https://www.precisionimagingcenters.com (https://www.precisionimagingcenters.com/) or call 904.996.8100.

# About HALO Diagnostics

At HALO Diagnostics (https://www.halodx.com) (HALO Dx), we recognize every patient is unique. Our focus is early detection and precision-focused healthcare, preventing and conquering the top health diseases that have a geometric impact on patient outcomes. We accomplish this with a personalized diagnostic ensemble including advanced imaging, genomics, non-invasive liquid biomarkers, and community-based data at scale combined with deep learning algorithms. By optimizing all these solutions under the HALO Dx platform, we provide rapid, precise, actionable results to enable life-changing treatments by physicians for their patients.

# About Precision Imaging

Precision Imaging Centers (https://www.precisionimagingcenters.com) powered by HALO Diagnostics is a precision-focused multi-specialty radiology practice with four offices conveniently located along Florida's First Coast in Jacksonville, Jacksonville Beach, Fleming Island, and St. Augustine. By using state-of-the-art advanced imaging modalities, biomarkers, genomics, and other tools, we capture the highest-quality images that lead to earlier detection and less invasive

This content is solely for informational purposes and does not substitute for medical or diagnostic advice. Please contact us if you have questions or concerns. This site uses cookies to analyze traffic and user behavior, protect your privacy, and provide you with the best user experience.To find out more about the cookies we use, see our Privacy Policy. By clicking "Accept", you consent to the use of ALL the cookies. Do not sell my personal information (https://www.halodx.com/privacy/#ccpa).

Cookie Settings        Accept

*Patient testimonial disclaimer: Each patient's experience and recovery are unique and individual results vary. All testimonials are from real patients and may not reflect every patient's experience. Testimonials are not intended to represent or guarantee that anyone will achieve the same or similar results.*

# Receive the Latest  News and Updates  from HALO Precision Diagnostics in Your Email

First Name *(Required)*

Last Name

Email *(Required)*

Your Interests *(Required)*

☐  Prostate / BPH Treatment

☐  Breast Screening / Diagnosis

This content is solely for informational purposes and does not substitute for medical or diagnostic advice. Please contact us if you have questions or concerns. This site uses cookies to analyze traffic and user behavior, protect your privacy, and provide you with the best user experience.To find out more about the cookies we use, see our Privacy Policy. By clicking "Accept", you consent to the use of ALL the cookies. Do not sell my personal information (https://www.halodx.com/privacy/#ccpa).

Cookie Settings       Accept

**Submit**

# Schedule a Consultation

Submit this form and we will contact you, usually within 24 hours, to answer your Prostate screening, diagnosis, and treatment questions.

First Name *(Required)*

Last Name *(Required)*

Email *(Required)*

Phone Number *(Required)*

This content is solely for informational purposes and does not substitute for medical or diagnostic advice. Please contact us if you have questions or concerns. This site uses cookies to analyze traffic and user behavior, protect your privacy, and provide you with the best user experience.To find out more about the cookies we use, see our Privacy Policy. By clicking "Accept", you consent to the use of ALL the cookies. Do not sell my personal information (https://www.halodx.com/privacy/#ccpa).

Cookie Settings     Accept

Case 6:22-cv-00642-WWB-DCI   Document 87-2   Filed 02/23/24   Page 9 of 11 PageID 1959

USCA11 Case: 24-13315    Document: 16    Date Filed: 12/23/2024    Page: 46 of 81

**Your Interest** *(Required)*

> Please Select ▼

**Additional Comments**

**Geographic Center Preference** *(Required)*

> Please Select ▼

**Do you agree to receive text messages from HALO Precision Diagnostics?** *(Required)*

☐ Yes

☐ No

☐ Receive news and updates from HALO Dx

We are committed to protecting and respecting your privacy. Review our Privacy Policy (https://www.halodx.com/privacy/).

**Submit**

This content is solely for informational purposes and does not substitute for medical or diagnostic advice. Please contact us if you have questions or concerns. This site uses cookies to analyze traffic and user behavior, protect your privacy, and provide you with the best user experience.To find out more about the cookies we use, see our Privacy Policy. By clicking "Accept", you consent to the use of ALL the cookies. Do not sell my personal information (https://www.halodx.com/privacy/#ccpa).

Cookie Settings        Accept

USCA11 Case: 24-13315 Document: 16 Date Filed: 12/23/2024 Page: 47 of 81

# Find a Location (https://www.halodx.com/locations/)



## Request a Consultation (https://www.halodx.com/contact/)



(https://www.halodx.com/provider-resources/#partner)

## Partner with Us (https://www.halodx.com/provider-resources/#partner)

(https://www.halodx.com/genetic-kits/)

## Learn About HALO PathWay™
## Genetic Health Kits (https://www.halodx.com/genetic-kits/)

## SPECIALTIES

Precision Diagnostics (https://www.halodx.com/precision-diagnostics/)

Prostate (https://www.halodx.com/prostate/)

Breast (https://www.halodx.com/breast/)

Lung (https://www.halodx.com/lung/)

This content is solely for informational purposes and does not substitute for medical or diagnostic advice. Please contact us if you have questions or concerns. This site uses cookies to analyze traffic and user behavior, protect your privacy, and provide you with the best user experience.To find out more about the cookies we use, see our Privacy Policy. By clicking "Accept", you consent to the use of ALL the cookies. Do not sell my personal information (https://www.halodx.com/privacy/#ccpa).

Cookie Settings        Accept

About (https://www.halodx.com/team/)

Careers (https://www.halodx.com/careers/)

Locations (https://www.halodx.com/locations/)

Contact (https://www.halodx.com/contact/)

News & Events (https://www.halodx.com/blog/category/news/)

## RESOURCES

Articles (https://www.halodx.com/knowledge-center/)

Provider Resources (https://www.halodx.com/provider-resources/)

Provider Portal (https://www.royalsolutionsgroup.com/router/dmi/md)

Image Upload (https://www.halodx.com/image-upload)



(https://www.halodx.com/)

(https://www.facebook.com/halodx/) (https://www.youtube.com/channel/UCQudju8UU6L9-Fz27A6bH5Q)

© 2023 HALO Precision Diagnostics  |  Privacy Policy (https://www.halodx.com/privacy/)  |  Website by Ali`i

This content is solely for informational purposes and does not substitute for medical or diagnostic advice. Please contact us if you have questions or concerns. This site uses cookies to analyze traffic and user behavior, protect your privacy, and provide you with the best user experience. To find out more about the cookies we use, see our Privacy Policy. By clicking "Accept", you consent to the use of ALL the cookies. Do not sell my personal information (https://www.halodx.com/privacy/#ccpa).

Cookie Settings      Accept

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**MARC IRWIN SHARFMAN M.D. P.A.,**

> **Plaintiff,**

**v.**                                              **Case No: 6:22-cv-642-WWB-DCI**

**PRECISION IMAGING ST.**
**AUGUSTINE LLC and HALO DX, INC.,**

> **Defendants.**

_____

**REPORT AND RECOMMENDATION**

This cause comes before the Court for consideration without oral argument on the following motion:

> **MOTION:**  **Plaintiff's Motion for Class Certification (Doc. 69)**
>
> **FILED:**  **January 5, 2024**
>
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

Marc Irwin Sharfman, M.D., P.A. (Plaintiff), individually and on behalf of others similarly situated, initiated this junk fax case against Precision Imaging St. Augustine LLC (Precision) and Halo DX, Inc. (Halo) (collectively, Defendants), alleging violations of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, *et. seq.* (TCPA). Pending before the undersigned is Plaintiff's Motion for Class Certification filed pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3). Doc. 69 (the Motion). Defendants have filed a Response in Opposition to the Motion. Doc. 75 (the Response). Plaintiff filed a Reply to the Response. Doc. 79 (the Reply). Thereafter, Defendant filed a sur-reply in opposition to the Motion. Doc. 82. The Motion has been referred to the undersigned for issuance of a Report and Recommendation and is ripe for review.

## I.      Background

On February 23, 2024, Plaintiff filed a one-count Amended Class Action Complaint alleging that Defendants violated the TCPA by sending four unsolicited fax advertisements to Plaintiff and other recipients without the required opt-out language and without first receiving the recipients' express invitation or permission.  Doc. 87 at 4-8.  According to the Motion, Defendants successfully sent 14,303 unsolicited fax advertisements (the Faxes) to 4,922 unique fax numbers in broadcasts conducted on February 9, 2022, February 15, 2022, and February 17, 2022, advertising the commercial availability and quality of their imaging services.  Doc. 69 at 2.  Precision is a Florida-based medical services provider that offers imaging and radiology services in Northeast Florida.  *Id.* at 3, citing Hammond Decl. I ¶ 3.  Halo is a Delaware corporation whose affiliates also offer imaging and radiology services at various locations, including Florida.  *Id.* at 4, citing Gerard Decl. I ¶ 3.  In December 2021, Defendants entered into a joint venture whereby Halo dedicated marketing resources to Precision.  *Id.*, citing Hammond Decl. I ¶¶ 9, 10.  In February 2022, Halo directed third-party fax broadcaster jBlast to send the Faxes to a list of Precision's referral sources.  *Id.*, citing Hammond Decl. I ¶¶ 11, 12; Gerard Decl. I ¶¶ 6, 7.

Plaintiff seeks an Order from the Court certifying the following class:

### Class A

All persons or entities who were successfully sent a Fax by Defendants (1) on or about February 9, 2022, offering reduced pricing for heart scans, (2) on or about February 15, 2022, that states "Join Us for Mammos and Mimosas this Weekend," or (iii) [sic] on or about February 17, 2022, that announces new members of Precision Imaging Centers, and which advises of Saturday hours.

Doc. 69 at 2.

Alternatively, Plaintiff seeks to certify the following alternative class in the event the Court finds there are individual issues as to 970 recipients[1] from whom Precision claims it obtained permission to send promotional/informational communications during "in person visits":

**Class B**

All persons or entities who were successfully sent a Fax (1) on or about February 9, 2022, offering reduced pricing for heart scans, (2) on or about February 15, 2022, that states "Join Us for Mammos and Mimosas this Weekend," or (iii) [sic] on or about February 17, 2022, that announces new members of Precision Imaging Centers, and which advises of Saturday hours. Excluded from Class B are the 970 "referral sources" listed in Exhibit A to Precision's Supplemental Interrogatory Responses whom Defendants claim provided permission to send "promotional and information communications" during "in person visits" by Precision.

Doc. 69 at 2-3. Plaintiff adds that the proposed classes exclude Defendants' employees and agents. *Id.* Plaintiff contends that its counsel should be appointed class counsel under Rule 23(g) and Plaintiff be appointed class representative. *Id.*

Defendants argue that online fax users—included within both proposed classes—do not have claims under the TCPA and lack Article III standing. Doc. 75. Defendants also argue that both proposed classes fail under Rule 23(a) and Rule 23(b)(3) and certification is not justified because Plaintiff has not demonstrated commonality, typicality, and adequacy of representation under Rule 23(a) or demonstrated that common issues predominate and a class action would be superior under Rule 23(b). *Id.* at 11-27.

---

[1] Plaintiff seeks to exclude 970 referral sources listed in a Spreadsheet provided by Defendants. However, Defendants contend that the Spreadsheet is not an exhaustive list. Doc. 75 at 6; Doc. 69-1, Ex. 2 ("Precision contends that it received prior express permission . . . in a variety of ways, including, but not necessarily limited to. . . .").

**II.      Legal Standard**

**A.  The TCPA**

Congress passed the TCPA in 1991 to balance "[i]ndividuals' privacy rights, public safety interests, and commercial freedoms of speech and trade."  Tel. Consumer Prot. Act of 1991, Pub. L. No.102-243 (1991).  It was later amended by the Junk Fax Prevention Act of 2005, Pub L. No. 109-21 (2005), codified at 47 U.S.C. § 227.  In relevant part, the TCPA prohibits the use of "any telephone facsimile machine, computer, or other devise to send, to a telephone fax machine, an unsolicited advertisement" unless:

(i)      The unsolicited advertisement is from a sender with an established business relationship with the recipient;

(ii)      The sender obtained the number of the telephone facsimile machine through-

    (I)      The voluntary communication of such number, within the context of such established business relationship, from the recipient of the unsolicited advertisement, or

    (II)      A directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution,

except that this clause shall not apply in the case of an unsolicited advertisement that is sent based on an established business relationship with the recipient that was in existence before the date of enactment of the Junk Fax Prevention Act of 2005 [enacted July 9, 2005] if the sender possessed the facsimile machine number of the recipient before such date of enactment; and

(iii)      The unsolicited advertisement contains a notice meeting the requirements under paragraph (2)(D). . ..

47 U.S.C. § 227(b)(1)(C).

The TCPA defines the term "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47

- 4 -

U.S.C. § 227(a)(5).  "So if a fax recipient provided 'prior express invitation or permission' to receive the fax, the fax was solicited and was not subject to the Act's prohibition on unsolicited faxes."  *Gorss Motels, Inc. v. Safemark Sys., LP*, 931 F.3d 1094, 1100 (11th Cir. 2019) (citing *BaisYaakov of Spring Valley v. Fed. Commc'ns Comm'n*, 852 F.3d 1078, 1082 (D.C. Cir. 2017)).  "Express permission to receive a faxed ad requires that the consumer understand that by providing a fax number, he or she is agreeing to receive faxed advertisements."  *Id.* (quoting *In re Rules & Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991*, 68 Fed. Reg. 44144, 44168 (FCC July 25, 2003)).  A person or entity may bring an action to enjoin a violation of the TCPA or to recover actual damages or statutory damages of $500 for each violation, whichever is greater.  47 U.S.C. § 227(b)(3)(B).

### B. Class Certification

The party seeking class certification must show that the proposed class meets Rule 23's requirements.  *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1233–34 (11th Cir. 2016).  A plaintiff must first establish that the proposed class is "adequately defined and clearly ascertainable."  *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012).  If that is met, then Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy of representation).  Fed. R. Civ. P. 23(a).

In addition to the Rule 23(a) requirements, the party seeking certification "must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)."  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).  Here, Plaintiff seeks certification under Rule 23(b)(3), which requires that

the Court find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### III. Discussion

In this Report, the undersigned recommends that the Court not certify Plaintiff's putative classes due to predominating individualized issues related to Rule 23(a)(3) typicality and Rule 23(b)(3) predominance. In doing so, the undesigned also finds that members of the putative classes—i.e., online fax users—do not have a claim under the TCPA and lack Article III standing.[2]

### A. Standing

The undersigned first considers standing for the members of the putative classes. Indeed, the Motion, the Response, the Reply, and the Sur-reply raise the issue of standing.

If the Court certifies either of Plaintiff's putative classes, the class will include both standalone fax machine users as well as online fax service users. Defendants, relying on this Court's holding in *Sharfman v. Infucare RX LLC*, 2023 WL 2624754 (M.D. Fla. Mar. 24, 2023), argue against certification because the latter group of users (online fax service users) lack Article III standing. Doc. 75 at 9. Plaintiff, in turn, argues that the Eleventh Circuit's *en banc* opinion in *Drazen v. Pinto*, 74 F.4th 1336 (11th Cir. 2023), necessitates a finding that online fax service users do indeed have Article III standing.

"For a district court to certify a class action, the named plaintiffs must have standing. . .." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009) (quotation omitted); *see also Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987) ("[A]ny analysis of class certification

---

[2] Plaintiff does delineate between putative class members who received the Faxes on a standalone fax machine versus an online fax service.

must begin with the issue of standing[.]"); *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000) ("[P]rior to the certification of a class, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that **at least one** named class representative has Article III standing to raise each class subclaim.") (emphasis added). Standing is also relevant to the requirements of Rule 23. As the Eleventh Circuit has explained, courts must "consider under Rule 23(b)(3) before certification whether the individualized issue of standing will predominate over the common issues in the case, when it appears that a large portion of the class does not have standing . . . and making that determination for these members of the class will require individualized inquiries." *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1277 (11th Cir. 2019).

To have Article III standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 339 (quotation omitted). "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Id.* (quotation omitted). For the injury to be "concrete," it must be "real," and not "abstract"; however, it need not be "tangible." *Id.* at 352.

"For a class action to be justiciable, 'all that the law requires' is that a <u>named</u> plaintiff have standing.'" *Cordoba*, at 1273 (emphasis in original). In Plaintiff's Third Amended Complaint Plaintiff alleges that the unwanted faxes were sent to "the telephone facsimile machines of Plaintiff." Doc. 87 at 7. Accordingly, as a preliminary matter, the undersigned recommends that the Court find Plaintiff has alleged sufficient facts to move past the threshold issue of standing.

The issue of whether either of the proposed classes can be certified despite the inclusion of members who lack standing is more appropriately resolved during the Rule 23 analysis. *Cordoba*, 942 F.3d at 1273 ("In some cases, whether absent class members can establish standing may be exceedingly relevant to the class certification analysis required by Federal Rule of Civil Procedure 23."). The undersigned will return to this issue *infra*.

### B. Ascertainability

Apart from standing, ascertainability is another threshold to class certification. *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302 (11th Cir. 2021). "Class representatives bear the burden of establishing that their proposed class is adequately defined and clearly ascertainable, and they must satisfy this requirement before the district court can consider whether the class satisfies the enumerated prerequisites of Rule 23(a)." *Id.* The Eleventh Circuit has traditionally collapsed class definition and ascertainability into one inquiry. *Id.* According to *Cherry*,

> We hold that administrative feasibility is not a requirement for certification under Rule 23. In doing so, we limit ascertainability to its traditional scope: a proposed class is ascertainable if it is adequately defined such that its membership is capable of determination. Our decision might render redundant the phrase in our precedent that a proposed class must be "adequately defined and clearly ascertainable." But "[d]oublets ... abound in legalese," and this one is required by Rule 23.

986 F.3d at 1304 (internal citations omitted).[3]

To that end, "a proposed class is ascertainable if it is adequately defined such that its membership is capable of determination." *Id.* And "membership can be capable of determination without being capable of *convenient* determination. Administrative feasibility is not an inherent aspect of ascertainability." *Id.* at 1303. (emphasis in original). *Id.* at 1303. On the other hand, "[a]

---

[3] The Eleventh Circuit in *Cherry* stated that "[a] plaintiff proves administrative feasibility by explaining how the district court can locate the remainder of the class *after* certification" and "[t]he plaintiff satisfies this requirement if the district court concludes that the proposed process will be manageable and successful." 986 F.3d at 1303 (internal citations omitted) (emphasis in original).

class is inadequately defined when it is defined through vague or subjective criteria." *Id.* at 1302 (citing *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970)).  When a proposed class lacks an adequate definition, the district court cannot ascertain who belongs in that proposed class. *Id.* at 1302.

Plaintiff argues that both proposed classes are ascertainable because each includes those particular faxes that Defendants "successfully sent" during a particular time—all "objective criteria." Doc. 69 at 11.  Defendants spend little time arguing against ascertainability but argue that the proposed classes should fail "for the same reasons that certification should be denied for lack of standing." Doc. 75 at 12.

The undersigned agrees with Plaintiff that both proposed classes are adequately defined such that membership is capable of determination.  The language describing the classes is described with objective criteria—not subjective or vague terms—and the identification of the members of each class does not take speculation or guesswork to determine.  While the undersigned is mindful of Defendants' argument that the common issue of standing may render it difficult to ascertain the members of the proposed class, at the very least, Plaintiff can use other methods if necessary, such as "self-identifying affidavits and subpoenas," to ascertain the members of each class. *See Scoma*, 2021 WL 6105590, at *11; *but see Cherry*, 986 F.3d at 1305 (noting that "[a]dministrative feasibility alone will rarely, if ever, be dispositive").  In any event, the Court retains the "discretion to decertify a certified class that turns out to be unmanageable." *Cherry*, 986 F.3d at 1304 (citation omitted).

Accordingly, the undersigned recommends that ascertainability is met for both proposed classes.

**C. Rule 23(a)**

The undersigned now turns to whether Plaintiff has met the requirements of Rule 23(a) with respect to both proposed classes.

a) Numerosity

Under Rule 23(a)(1), the party seeking class certification must show that the putative class is so numerous that joinder is impracticable. To establish numerosity, the party seeking class certification must either demonstrate some evidence in support of the number of purported class members or a reasonable estimate of the same. *Kuehn v. Cadle Co., Inc.*, 245 F.R.D. 545, 548 (M.D. Fla. 2007) (citation omitted). In support of Plaintiff's numerosity argument, Plaintiff states that Class A consists of 4,922 members and alternative Class B consists of 3,952 members. Doc. 69 at 7 (citing Biggerstaff Rpt. ¶¶ 16-17). With these figures, Plaintiff contends, without any apparent opposition, that numerosity is satisfied. *Id.*; *see* Doc. 75 at 13 ("Defendants concede that the numerosity requirement has been met.").

The undersigned agrees based on the record that the numerosity requirement under Rule 23(a)(1) is met.

b) Commonality

Rule 23(a)(2) requires the party seeking class certification to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury . . ..'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). The Supreme Court has found that, for the purposes of Rule 23(a)(2), a single common question of law or fact is sufficient. *Id.* at 359. There is a "low hurdle" to satisfy the commonality element. *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1356 (11th Cir. 2009).

With respect to the commonality section of the Motion, Plaintiff states simply that "there are six common questions, each of which can be resolved on a classwide basis." Doc. 69 at 8. The undersigned assumes that Plaintiff refers to its statement presented earlier in the Motion under the "Basis of the Relief Requested" section, that there are six class-wide questions to decide on the merits to include: (1) whether the Faxes were sent from a telephone facsimile machine, computer or other device to a "telephone facsimile machine," as that term is defined in the TCPA and interpreted in final FCC orders binding on this Court under the Hobbs Act; (2) whether the Faxes are "advertisements"; (3) whether the Defendants are the "senders"; (4) whether online fax service users to whom the Faxes were successfully sent suffered concrete injury; (5) whether the TCPA regulates unsolicited fax advertisements sent to online fax service subscribers; and (6) whether Defendants can meet their burden to demonstrate they had "prior express invitation or permission" to send fax advertisements to the proposed class members. *Id.* at 2.

As only a single common question of law or fact is sufficient to establish commonality, the undersigned recommends—and Defendants concede—that Plaintiff satisfies this requirement for class certification.[4] *See Sliwa v. Bright House Networks, LLC*, 2019 WL 4744938, at *14 (M.D. Fla. 2019) (finding the plaintiff in TCPA "wrong number" case satisfied low hurdle of commonality element with common question of whether the phone calls were placed with technology prohibited by the TCPA); *see also Cin-Q Automobiles, Inc. v. Buccaneers Ltd. P'ship*, 2022 WL 911388, at *19 (M.D. Fla. Mar. 29, 2022) (finding in a "junk fax" case that common questions of fact and law to include whether the faxes constitute advertisements, whether the faxes

---

[4] The undersigned notes that "[t]he predominance inquiry is far more demanding than the commonality requirement in Rule 23(a)." *Morgan v. Orlando Health, Inc.*, 2019 WL 7469797, at *7 (M.D. Fla. Oct. 23, 2019) (citing *Vega*, 564 F.3d at 1270).

were sent by or on behalf of the defendant, and whether the faxes complied with the opt-out notice, was enough to establish commonality).

Accordingly, the undersigned recommends that Plaintiff has established commonality under Rule 23(a).

c)  Typicality

Rule 23(a)(3) requires "the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Williams*, 568 F.3d at 1357 (quoting *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984)).  Stated another way, typicality requires that there be "a sufficient nexus. . . between the legal claims of the named class representatives and those of individual class members to warrant class certification." *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012) (quoting *Prado—Steiman*, 221 F.3d 1266, 1278-79 (11th Cir. 2000)).  "A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg*, 741 F.2d at 1337.  "A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3)." *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001) (internal quotation omitted).

Here, Plaintiff asserts that typicality is met as to Plaintiff and both proposed classes because (1) they were subjected to the same conduct, (2) all claims are based on the same legal theory, and (3) Plaintiff and all class members suffered the same alleged harm—having their right to privacy and interest in seclusion violated by Defendants' unsolicited fax advertisements.  Doc. 69 at 9.

Defendants refute Plaintiff's typicality argument from multiple angles.  First, Defendants argue that Plaintiff's claims are not typical of the purported claims of proposed class members who

had given their express permission to receive the Faxes. Doc. 75 at 14-15. In Plaintiff's Complaint, Plaintiff contends that "[n]either Plaintiff nor the class members gave prior express invitation or permission to Precision or Halo to send the Faxes." Doc. 87 at 7. However, Defendant argues that an individualized inquiry would be required to determine whether each putative class member gave express permission to receive the Faxes. Doc. 75 at 5. Defendants highlight that they have identified 3,926 recipients who provided prior express permission. *Id*. at 6-7.[5]

While typicality does not require that the class representatives' claims be identical to the other class members, if factual differences between the representative and the class predominate, the typicality requirement is defeated. *Grillasca v. Hess Corp.*, 2007 WL 2121726 (M.D. Fla. July 24, 2007) ("[I]f factual differences between the representative's class and class claims predominate, the typicality requirement may be defeated") (citing *Love v. Turlingon*, 733 F.2d 1562, 1564 (11th Cir. 1984)). "In other words, if courts must make highly fact-specific or individualized determination in order to establish a defendant's liability to class members, there is no typicality." *Love*, 733 F.2d at 1564.

Here, the undersigned agrees with Defendants that the highly individualized inquiries regarding prior express permission are not typical to Plaintiff's claim or Defendants' defense to Plaintiff's claim. The fact-specific determination on express invitation or permission and established relationships will predominate Defendants' liability to the class members when Plaintiff does not face the same significant hurdle. Defendant's discovery responses, and the 21

---

[5] Additionally, Defendants attach to their Response 21 declarations from medical practices that contend they provided prior express permission to receive the fax advertisements in question. Doc. 75-4. These declarations were the subject of the Court's May 20, 2024 Order denying Plaintiff's motion to bar consideration of the declarations. *See* Doc. 108. In light of that Order, the Court has taken the declarations into consideration in deciding this Motion.

declarations from medical practices (which Defendants allege only constitute a small number of the medical practices that actually provided prior express permission), provide that the practice groups have "always given [their] prior express invitation and permission for Precision to send communications to the Practice[s][.]" *See* Doc. 75-4. Plaintiff does not allege this same defense, and because prior express permission would need to be determined on a member-by-member basis, Plaintiff's claims are not typical of the rest of the proposed class. Typicality is not present if "the factual position of the representative markedly differs from that of other members of the class." *Kornberg*, 741 F.2d at 1337.

In addition, Defendants argue that Plaintiff fails on typicality because the TCPA does not apply to putative class members who only received the Faxes via an online fax service. Doc. 75 at 15. As another court in this District explained:

> "Congress has authorized the FCC to issue regulations to implement the [TCPA]." *Scoma Chiropractic, P.A. v. Dental Equities, LLC*, No. 2:16-CV-41-FTM-99MRM, 2018 WL 2455301, at *2 (M.D. Fla. June 1, 2018); *see also* 47 U.S.C. § 227(b)(2) ("The Commission shall prescribe regulations to implement the requirements of this subsection."). The FCC, in turn, has delegated "adjudication and rulemaking" functions to the Consumer and Governmental Affairs Bureau "in matters pertaining to consumers and governmental affairs." 47 C.F.R. § 0.141(a). Pursuant to that authority, in December 2019, the Bureau issued a declaratory ruling on the question of whether "an online fax service is a 'telephone facsimile machine'" under the TCPA. *In the Matter of Amerifactors Fin. Grp., LLC Petition for Expedited Declaratory Ruling*, No. 05-338, 2019 WL 6712128, at *3 (C.G.A.B. Dec. 9, 2019). The Bureau concluded that "an online fax service is not a 'telephone facsimile machine' and a fax sent to one is not 'an unsolicited facsimile advertisement' prohibited by the TCPA." *Id.*
>
> The Bureau explained that "a fax received by an online fax service as an electronic message is effectively an email." *Id.* That is because, according to the Bureau, a "consumer can delete without printing" any "faxes sent to online fax services via an attachment." *Id.* The Bureau noted that "[c]onsumers can manage those messages the same way they manage email by blocking senders or deleting incoming messages without printing them." *Id.* The Bureau also found that "an online fax service cannot itself print a fax—the user of an online fax service must connect his or her own equipment in order to do so." *Id.* Accordingly, because "online fax services differ in critical ways from the traditional faxes sent to

> telephone facsimile machines Congress addressed in the TCPA," the Bureau concluded that faxes received via an online fax service "are more accurately characterized as faxes sent to a 'computer' or 'other device,' and not a 'telephone facsimile machine.'" *Id.* at *4.
>
> The Bureau also reasoned that "faxes sent to online fax services do not cause the specific harms to consumers Congress sought to address in the TCPA." *Id.* at *3. Those harms included that (i) "[a fax advertisement] shifts some of the costs of advertising from the sender to the recipient" and (ii) such a fax "occupies the recipient's facsimile machine so that it is unavailable for legitimate business messages while processing and printing the junk fax." *Id.* (quoting H.R. Rep. No. 317, 102d Cong., 1st Sess. 11 (1991)). The Bureau explained that "faxes sent to online fax services do not pose these harms and, in fact give consumers tools such as blocking capabilities to control these costs." *Id.*

*Licari Family Chiropractic v. Works*, 2021 WL 4506405, at *4-5 (M.D. Fla. Jan. 11, 2021).

Accordingly, if the Bureau's *Amerifactors* decision is applied to the instant case, putative class members who received the Faxes via an online fax service would not have a claim under the TCPA.[6]  That factual difference—the mode of receipt of the commination—would become a dispositive issue not typical to the entire class.  And as the court in *Love* explained "if factual

---

[6] Plaintiff argues that the Bureau's decision in *Amerifactors* is not entitled to *Chevron* deference. Doc. 69 at 23-27.  However, the undersigned agrees with the line of cases in this district that have held *Amerifactors* is persuasive and, indeed, entitled to deference.  *See Scoma*, 2021 WL 6105590, at *7 (The Court agrees with the well-reasoned analysis of the Magistrate Judge and several other courts in finding that receipt of a fax via an online fax service does not support a TCPA claim . . . "[T]he Bureau's decision in *Amerifactors* is entitled to deference under the *Chevron* doctrine."); *Licari*, 2021 WL 4506405, at *7 ("[T]his Court . . . grants *Chevron* deference to the Bureau's position that online fax services are not covered by the TCPA.").  Additionally, the undersigned agrees with the determination in *Scoma* that even if *Chevron* deference does not apply, *Amerifactors* is still persuasive "based on a voluminous record, consistent with earlier and later pronouncements, and decided by the agency with the requisite expertise." 2021 WL 6105590, at *8 (citing *Martin v. Soc. Sec. Admin., Comm'r*, 903 F.3d 1154, 1159 (11th Cir. 2018)).

Plaintiff further argues that because the Bureau's decision in *Amerifactors* is currently on appeal to the full Commission, the decision is not a "final order" of the FCC subject to the jurisdictional limitations of the Hobbs Act, 28 U.S.C. § 2342(1).  Doc. 69 at 23.  However, orders issued on delegated authority are "effective upon release." 47 C.F.R. § 1.102(b)(1).  Therefore, unless the full Commission issues a stay pending review, *Amerifactors* remains in effect.  *See id.* §§ 1.102(b)(2), 1.115(h)(2); *see also True Health Chiropractic, Inc. v. McKesson Corp.*, 2023 WL 7015279, at *2 & n.1 (9th Cir. Oct. 25, 2023).

differences between the representative's class and class claims predominate, the typicality requirement may be defeated."   733 F.2d at 1564.   Here, the proposed classes include both standalone fax users and online fax service users—these key factual differences would necessitate individualized findings as to each class member that would predominate, and, as such, typicality is not met.

Finally, Defendants argue that despite Plaintiff's contentions, Plaintiff and the putative class members did not suffer the same harm.   Doc. 75 at 15-16.   As discussed earlier, the receipt of an unsolicited fax via an online fax service is not akin to the harm suffered by receipt of an unsolicited fax via a standalone fax machine.   *See Scoma*, 2021 WL 6105590, at \*4; *Daisy*, *Inc. v. Mobile Mini, Inc.*, 489 F. Supp. 3d 1287, 1295-96 (M.D. Fla. 2020) ("Yet even if this demonstrated judgment on junk faxes sent to a traditional machine, it does not show Congress sought to protect against wasted time spent reviewing faxes received over e-mail.").   Therefore, Plaintiff's alleged harm cannot be typical of all putative class members.

Due to the foregoing issues, the undersigned recommends that Plaintiff has not satisfied its burden as to typicality.

d)   Adequacy of Representation

The fourth and final requirement Plaintiff must satisfy under Rule 23(a) is that "the representative part[y] will fairly and adequately protect the interests of the class."   Fed. R. Civ. P. 23(a)(4).   This requirement involves two inquiries: first, whether there are substantial conflicts of interest between the representative and the potential class members, and second, whether the representative will adequately prosecute the class action.   *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1329, 1323 (11th Cir. 2008).   A fundamental conflict going to the specific issues in controversy warrants denying class certification.   *Valley Drug Pharm. v. Geneva Pharms., Inc.*, 350 F.3d 1181,

1189 (11th Cir. 2003).  Also, Rule 23(g)(1)(A) states that the Court must consider the following in determining the appointment of class counsel:

> (i)  the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii)  counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii)  counsel's knowledge of the applicable law; and
>
> (iv)  the resources that counsel will commit to representing the class.

*Id.*  A court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).

As an initial matter, it does not appear that Defendants oppose Plaintiff's contention that Plaintiff's counsel would adequately represent the class pursuant to Rule 23(g).  *See* Doc. 75. Indeed, it seems Plaintiff's counsel has expended substantial effort in litigating this case, and Plaintiff represents that counsel is an experienced class action and TCPA practitioner and has knowledge of TCPA law.  Doc. 69 at 10-11.  There is nothing before the undersigned to show otherwise.  Even if Defendants oppose adequacy of this factor, the undersigned recommends that counsel is adequate under Rule 23(g).

With respect to Plaintiff's role as class representative, Plaintiff asserts that it will continue to adequately prosecute the case, understands the responsibility of representation, and has been substantially involved in the litigation of this case including discovery.  Doc. 69 at 9-10. Defendants argue, however, that adequacy is not established because while Plaintiff did not give express permission to receive the Faxes, numerous putative class members did.  Doc. 75 at 17.

 Minor conflicts will not defeat class certification; the conflict must be fundamental. *Valley Drug*, 350 F.3d at 1189. "A fundamental conflict exists where some party members claim to have

been harmed by the same conduct that benefitted other members of the class*." Nguyen v. Raymond James & Assocs.*, 2022 WL 4553068, at *11 (M.D. Fla. Aug. 12, 2022) (quoting *Valley Drug*, 350 F.3d at 1189).

Here, the undersigned finds it problematic that Plaintiff does not adequately and sufficiently address the conflict of interest that Plaintiff may have with putative class members that welcomed the Faxes and gave their express permission to receive them.   Instead, Plaintiff summarily states in the Motion that its claims are identical and "Plaintiff has no conflicts whatsoever with the proposed classes." Doc. 69 at 9.  In Plaintiff's Reply, Plaintiff argues at length that the Motion should be granted because Defendants have failed to prove prior express permission from the recipients of the Faxes. *See* Doc. 79 at 5-10.  However, Defendants do not need to prove their affirmative defenses at class certification; indeed, "[t]he party seeking class certification has the burden of proof." *Electrolux*, 817 F.3d at 1233 (internal citations omitted). "[O]nce the defendant has 'presented sufficient, non-speculative evidence that a bona fide issue of consent exists as to all other faxes, [the plaintiff] [i]s required to come up with something (whether argument or evidence) to persuade the Court that those individualized consent issues would not drive this litigation, making a class action untenable." *Licari*, 2019 WL 7423551, at *7 (quoting *Sawyer v. KRS Biotechnology, Inc.*, 2018 WL 2425780, at *9 (S.D. Ohio May 30, 2018)).  Here, the undersigned finds that the record is voluminous as to "non-speculative evidence that a bona fide issue of consent exists." *Id.*  Plaintiff's failure to adequately address the conflicting interests of members of the class is fatal to Plaintiff's claim that it is an adequate representative. *See Nguyen*, 2022 WL 4553068, at *11 (finding that the plaintiff did not carry her burden because she did not address the potential fundamental conflict of interests with the members of the class who

were not dissatisfied with their account).  In short, the undersigned finds that Plaintiff has not met its burden of establishing adequacy of representation.[7]

**D. Rule 23(b)**

To obtain class certification pursuant to Rule 23(b)(3), Plaintiff must establish that "questions of law or fact common to class members predominate over any questions affecting only individual members."  When determining predominance, the Court must scrutinize the relationship between common and individual questions in the case.  *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016).   An individual question requires evidence that is different from one class member to another, but a common question can be resolved by the same evidence for each class member, or the issue can be proven by generalized, class-wide proof.  *Id.*   In reviewing predominance, the court determines whether the common issues are more prevalent or important than the individual issues.  *Id.*

The other Rule 23(b)(3) requirement is that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).   The superiority inquiry requires the court to determine whether a class action is an efficient and manageable method of dispensing with the issues to be litigated.  *Mills v. Foremost Ins. Co.*, 269 F.R.D. 663, 678 (M.D. Fla. Sept. 29, 2010).

---

[7] Even if the Court were to construe Plaintiff's filings as adequately addressing conflict of interest pursuant to Rule 23(a)(4), the undersigned still recommends that Plaintiff has not established it would be an adequate representative for either proposed class.  Plaintiff is attempting to represent purported class members that face a substantial barrier to their claims (i.e., online fax service users), while Plaintiff does not have the same barrier since it is a standalone fax user.  Likewise, Plaintiff also appears to be in fundamental conflict with members that may encounter a prior express permission defense that Plaintiff will not need to defend against.  Accordingly, the undersigned recommends that Plaintiff has not established adequacy of representation.

a)  Predominance

The predominance inquiry is far more demanding than the commonality requirement in Rule 23(a). *Vega*, 564 F.3d at 1270.  "To determine whether the requirement of predominance is satisfied, a district court must first identify the parties' claims and defenses and their elements." *Electrolux*, 817 F.3d at 1235 (citing *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004). After that, the issues should be classified as either common or individual questions "by predicting how the parties will prove them at trial." *Id.*  Where the evidence varies among members, those are individual questions. *Id.*  Where the same evidence is sufficient for each member, those are common questions. *Id.*  "After identifying the common and individual questions, the district court should determine whether the common questions predominate over the individual ones." *Id.* at 1234-35.  Predominance should be evaluated by considering its purpose: guaranteeing that the class action is efficient in terms of time, effort, and expense and promotes uniformity of decisions regarding similarly situated people, "'without sacrificing procedural fairness or bringing about other undesirable results.'" *Id.* at 1235 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997)).

Here, the Court would need to decide whether a concrete injury exists—a critical component to standing—on an individualized basis.[8]  As such, individual questions on standing will predominate over the common issues in the case with respect to each putative class and, therefore, the undersigned recommends that Plaintiff has not satisfied the predominance requirement pursuant to Rule 23(b). *See Cordoba*, 942 F.3d at 1277 (stating that "the district court

---

[8] *Supra*, the undersigned recommended that the TCPA does not apply to online faxes based on the reasoning and decision in *Amerifactors*.  Here, the undersigned is making a related but distinct recommendation that members of the putative class who received online faxes lack Article III standing due to a lack of concrete injury.

must consider under Rule 23(b)(3) before certification whether the individualized issue of standing will predominate over the common issues in the case, when it appears that a large portion of the class does not have standing[.]").

Plaintiff argues that the Eleventh Circuit's *en banc* opinion in *Drazen* should be extended to find that online fax service users suffer a concrete injury when they receive an unwanted online fax—the undersigned is not persuaded by Plaintiff's argument.

In *Drazen*, the Eleventh Circuit clarified the issue of standing in TCPA cases, finding that the harm associated with receiving an unwanted text message was sufficient to confer standing. 74 F.4th at 1345. *Drazen*'s analysis focused on the concreteness of the injury, with the court reiterating that "intangible harms can satisfy Article III's concreteness requirement." *Id.* at 1342 (citing *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1243 (11th Cir. 2022) (*en banc*)). And "Congress is 'well positioned to identify' those intangible harms." *Id.* (quoting *Spokeo*, 578 U.S. at 341). "[O]nce Congress has identified an intangible harm, the question becomes whether that 'harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts.'" *Id.* at 1343 (quoting *Hunstein*, 48 F.4th at 1243) (quoting *Spokeo*, 578 U.S. at 341)). The *Drazen* court held that "the harm associated with an unwanted text message shares a close relationship with the harm underlying the tort of intrusion upon seclusion. Both harms represent 'an intrusion into peace and quiet in a realm that is private and personal.'" *Id.* at 1345 (citation omitted).

Critically, however, the common law tort of intrusion upon seclusion cannot extend to the business entities that are the members of the putative classes in this case. *See FCC v. AT&T Inc.*, 562 U.S. 397, 406 (2011) ("It seems to be generally agreed that the right of privacy is one pertaining only to individuals, and that a corporation or a partnership cannot claim it as such.")

- 21 -

(internal quotations and citations omitted); *see also Daisy*, 489 F. Supp. 3d at 1294 ("Daisy is a corporation. In tort, those entities have never been understood to have privacy rights beyond their publicity." (citing *AT&T*, 562 U.S. at 406); *Restatement (Second) of Torts §652I* Comment c ("A corporation, partnership or unincorporated association has no personal right of privacy. And in any event, unlike an unwanted phone call or text message, the comparable common law tort for a junk fax case is akin to trespass or conversion, not intrusion upon seclusion. *See Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1252 (11th Cir. 2015) (noting that "the TCPA's prohibition against sending unsolicited fax advertisements was intended to protect citizens from the loss of the use of their fax machines during the transmission of fax data."). Accordingly, the undersigned is not persuaded by Plaintiff's argument that *Drazen*, which involved sending unsolicited text messages to individuals, should be extended for the proposition that business entities receiving unwanted faxes is akin to a private individual receiving an unwanted text message to their personal phone.[9]

---

[9] The undersigned also notes Plaintiff's reliance on multiple out-of-circuit cases (and cases from the Northern District of Illinois) that seemingly support the proposition that the TCPA created by statute a right to privacy for businesses. *See* Doc. 90 at 2 (citing *Maxum Indem. Co. v. Eclipse Mfg. Co.*, 2013 WL 5993389, at *7 (N.D. Ill. Nov. 12, 2013); *Chapman v. Wagener*, 2014 WL 540250, at *5 (N.D. Ill. Feb. 11, 2014); *Abante Rooter v. Plumbing, Inc. v. Oh. Ins. Agency*, 2018 WL 993883, at *3 (N.D. Ill. Feb. 20, 2018)).

The undersigned is not persuaded by these cases. In *Maxum*, the court concedes that its conclusion that "the TCPA created by statute a right of privacy," is inapposite to Seventh Circuit case law. *See Maxum*, 2013 WL 5993389, at *7 ("Although this court's conclusion that advertising injury covers a business entity's interest in seclusion is inconsistent with *American States*…."; *see also American States Ins. Co. v. Capital Assoc's. of Jackson Cnty, Inc.*, 392 F.3d 939, 943 (7th Cir. 2004) ("JC Hauling is a corporation, and businesses lack interests in seclusion… corporations are not alive. Where does a corporation go when it just wants to be left alone? Most states hold that business entities lack privacy interests.") (citing *Restatement (Second) of Torts* § 6521 Comment c)). Further, the *Maxum* court seemingly relies upon Illinois law in reaching its decision. *See Maxum*, 2013 WL 5993389, at *7 (discussing the application of Illinois law to the case).

- 22 -

The undersigned agrees with the line of cases in this district holding that the mere receipt of a fax through an online fax service does not cause an injury in fact. *See Scoma*, 2021 WL 6105590, at *4 (M.D. Fla. Dec. 23, 2021) (citing *Muransky v. Godiva Choclatier, Inc.*, 979 F.3d 917, 929-30 (11th Cir. 2020) (noting that a statutory violation does not necessarily result in an injury in fact); *Daisy*, 489 F. Supp. 3d at 1295-96 (finding that receipt of a fax via an online fax service would not occupy a fax machine or its line or impose printing costs, and "Congress did not view one wasted minute spent reviewing a junk fax received through e-mail as a concrete injury.").[10] The undersigned finds *Scoma* and *Daisy* persuasive. The court in *Daisy* provided that "[w]hile Congress could have extended the prohibition to faxes no matter how they are received, it did not. So there is no indication from the statutory text that Congress sought to protect against the harm of wasted time spent reviewing faxes received by e-mail." 489 F. Supp. 3d at 1295. The

---

Next, the court in *Chapman*, relying in part upon *Maxum*, held that a corporate plaintiff could permissibly be added as a named plaintiff in the class action. 2014 WL 540250, at *5. Again, to the extent this decision has any influence on the undersigned, it is limited because Eleventh Circuit case law holds that the comparable common law tort for a junk fax case is akin to trespass or conversion, not intrusion upon seclusion. *See Palm Beach Golf*, 781 F.3d at 1252. Accordingly, the Seventh Circuit's reliance on comparisons to the tort of intrusion upon seclusion does not align with binding precedent in this circuit.

Finally, *Abante* is not a junk fax case—it involves unsolicited phone calls which is a different legal and factual issue. 2018 WL 993883, at *1. Thus, it is inapplicable to the present case, and again, holds no precedential value in this circuit. Additionally, the *Abante* court summarily states that corporations can sustain common law actions for invasion of privacy but cite no cases in support of that proposition. *Id.* at *3.

Accordingly, the undersigned finds the Northern District of Illinois cases that Plaintiff relies upon unpersuasive.

[10] In the Motion and Reply, Plaintiff argues that *Drazen* abrogated *Salcedo v. Hanna*, 936 F.3d 1162 (11th Cir. 2019), a case that *Daisy, Scoma,* and *Infucare* all rely upon in part. Doc. 69 at 14-16; Doc. 79 at 2-3. While true that the *Drazen* court seemingly receded *sub silentio* from its prior holding in *Salcedo* and held that a single unsolicited text message was sufficient to constitute a concrete injury for standing purposes, the undersigned is not inclined to extend the narrow holding of *Drazen* to this junk fax case. Accordingly, *Daisy, Scoma,* and *Infucare* remain persuasive.

statute specifically prohibits unwanted advertisements sent from a fax machine, computer, or other device to a fax machine.  47 U.S.C. § 227(b)(1)(C).  Plaintiff's argument to the contrary does not convince the undersigned that Article III standing exists with respect to the users who received unwanted faxes via an online service.

Likewise, the individualized inquiries surrounding prior express permission also preclude class certification.  *See Infucare*, 2023 WL 2624754, at * 2 ("Here, even with Plaintiff's exclusions, it is clear that the issue of prior express permission will predominate over common issues to the class, such that individualized inquiries will be required as to each putative class member."); *Licari*, 2021 WL 7423551, at *11 (finding that individualized issues concerning whether putative class members of each of the proposed classes provided prior express permission precludes class certification in that matter); *see also Electrolux*, 817 F.3d at 1241 ("Individual affirmative defenses can defeat predominance in some circumstances. For example, the affirmative defenses could apply to the vast majority of class members and raise complex, individual questions.") (citing *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1177-83 (11th Cir. 2010)).

Accordingly, the undersigned recommends that class certification is not appropriate under Rule 23(b).

b)  Superiority

The last requirement for class certification under Rule 23(b)(3) is that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  "[T]he superiority requirement of Rule 23(b)(3) turns on whether a class action is better than other available methods of adjudication . . . ."  *Cherry*, 986 F.3d at 1304.  The Court looks to the non-exclusive factors listed in Rule 23(b)(3):

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).

Plaintiff contends that "judicial efficiency is best served by adjudicating all claims in one proceeding" because class members have little incentive to sue individually for a $500 violation. Doc. 69 at 32 (citing *Scoma*, 2021 WL 6105590, at *12).  Defendants argue that Plaintiff's failure at the predominance stage renders the class action an inferior means to adjudicate these claims. Doc. 75 at 27.

The undersigned agrees that the issues of standing, TCPA applicability, and prior express permission described in this Report predominate and necessitate a finding that a class action would not be the superior method to litigate this matter.  "[T]he predominance analysis has a tremendous impact on the superiority analysis . . . for the simple reason that, the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims . . . ." *Sacred Heart Health*, 601 F.3d at 1184.  Accordingly, the undersigned recommends that Plaintiff has not established superiority under Rule 23(b).

**III.    Conclusion**

Based on the foregoing, the undersigned respectfully recommends that Plaintiff's Motion for Class Certification (Doc. 69) be **DENIED**.

**NOTICE TO PARTIES**

The party has fourteen days from the date the party is served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to serve and file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Recommended in Orlando, Florida on May 23, 2024.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy

- 26 -

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

MARC IRWIN SHARFMAN M.D. P.A.,

      Plaintiff,

v.                                     Case No.: 6:22-cv-642-WWB-DCI

PRECISION IMAGING ST.
AUGUSTINE LLC and HALO DX, INC.,

      Defendants.

_____/

**<u>ORDER</u>**

THIS CAUSE is before the Court on Plaintiff's Motion for Class Certification (Doc. 69). United States Magistrate Judge Daniel C. Irick issued a Report and Recommendation ("**R&R**," Doc. 109), in which he recommends that the Motion be denied. Plaintiff filed Objections (Doc. 113), to which Defendants filed a Memorandum in Opposition (Doc. 115).

**I.     BACKGROUND**

Plaintiff has not objected to the relevant factual background as set forth in the R&R. (Doc. 109 at 2–3). It is hereby adopted and made a part of this Order accordingly.

**II.    LEGAL STANDARD**

When a party objects to a magistrate judge's findings, the district court must "make a de novo determination of those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1). The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* The district court must consider the record and factual issues independent of the magistrate judge's

report, as de novo review is "essential to the constitutionality of [§] 636." *Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 512 (11th Cir. 1990).  The objecting party must state with particularity findings with which it disagrees, along with its basis for the disagreement. *Kohser v. Protective Life Corp.*, 649 F. App'x 774, 777 (11th Cir. 2016) (citing *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989)).  The court will not consider "[f]rivolous, conclusive, or general objections." *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988) (citation omitted).

## III.   DISCUSSION

Plaintiff asserts several objections to the R&R.  Specifically, Plaintiff objects to the R&R insofar as it finds that Plaintiff has failed to establish typicality, predominance, and superiority as to both putative classes because online fax service recipients lack Article III standing under the TCPA, the TCPA does not regulate faxes received through online fax services, and because of individual issues regarding prior express permission.

Plaintiff first objects to the R&R's determination that Plaintiff has failed to establish typicality, predominance, and superiority as to both putative classes because online fax service recipients lack Article III standing under the TCPA and the TCPA does not regulate faxes received through online fax services.  The Eleventh Circuit has instructed courts to "consider under Rule 23(b)(3) before certification whether the individualized issue of standing will predominate over the common issues in the case, when it appears that a large portion of the class does not have standing . . . and making that determination for these members of the class will require individualized inquiries."  *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1277 (11th Cir. 2019).  In *Spokeo*, the Supreme Court made clear that "Article III standing requires a concrete injury even in the context of a

2

statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). While "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact," this is not one of those instances. *Id.* at 342. On review, the Court agrees with the R&R and authority cited therein that the mere receipt of a fax through an online fax service, even if a violation of the TCPA, does not—on its own— cause an injury in fact. *Scoma Chiropractic, P.A. v. Dental Equities, LLC*, No. 2:16-cv-41, 2021 WL 6105590, at *4 (M.D. Fla. Dec. 23, 2021); *see also Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 929–30 (11th Cir. 2020); *Daisy, Inc. v. Mobile Mini, Inc.*, 489 F. Supp. 3d 1287, 1292 (M.D. Fla. 2020).

Further, the Court agrees entirely with Magistrate Judge Irick's conclusion that the Eleventh Circuit's recent holding in *Drazen* does not disturb this conclusion. In *Drazen*, the Eleventh Circuit concluded that receiving a single unwanted text message or more than one telemarketing call in violation of the TCPA bears "a close relationship to the kind of harm that intrusion upon seclusion inflicts" and therefore is a cognizable injury for the purposes of standing. *Drazen v. Pinto*, 74 F.4th 1336, 1344 (11th Cir. 2023) (quotation omitted). In doing so, the Eleventh Circuit stressed that for a violation of a statutory procedural right to constitute injury in fact, it must share "a close relationship" with a "common-law comparator," but need not be a "carbon cop[y]" thereof. *Id.* at 1343 (quotations omitted). So long as the statutory violation resembles the *kind* of harm found at common law, it will be sufficient to show injury in fact. *See id.* at 1343–44. ("To be sure, the relationship between the harms we compare is too attenuated when a plaintiff 'completely fails to allege an element essential to the harm set out as a common-law comparator.' . . . We think that asking whether the harms are similar in kind but not degree

3

makes sense." (quoting *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1249 (11th Cir. 2022))).

As the R&R notes, however, the common law tort of intrusion upon seclusion cannot extend to the business entity members of the putative classes in this case. Contrary to Plaintiff's argument, this conclusion would not improperly require a party to prove that receipt of an unwanted online fax is similar in degree to a common law tort. *Drazen*, 74 F.4th at 1343. Rather, the R&R correctly recognizes that business entities do not enjoy a right to privacy. *See Fed. Commc'ns Comm'n v. AT&T Inc.*, 562 U.S. 397, 406–07 (2011) ("It seems to be generally agreed that the right of privacy is one pertaining only to individuals, and that a corporation or a partnership cannot claim it as such." (quotation omitted)); *see also Daisy*, 489 F. Supp. 3d at 1294 ("Daisy is a corporation. In tort, those entities have never been understood to have privacy rights beyond their publicity." (citing *AT&T*, 562 U.S. at 406)). Without a cognizable right to privacy, business entities cannot suffer the kind of harm contemplated in *Drazen* as a matter of law.

As a result, Plaintiff cannot carry his burden as to typicality under Rule 23(a)(3) and predominance under Rule 23(b)(3). Certification of both putative classes is improper, and the Court need not address Plaintiff's additional objections as to the remaining Rule 23(a) and 23(b)(3) factors. *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1188 (11th Cir. 2003) ("Failure to establish any one of [the Rule 23(a)] factors and at least one of the alternative requirements of Rule 23(b) precludes class certification."); *see also Licari Fam. Chiropractic Inc. v. eClinical Works, LLC*, No. 8:16-cv-3461, 2019 WL 7423551, at *5 (M.D. Fla. Sept. 16, 2019) (declining to address the remaining class certification requirements upon finding predominance was not satisfied).

**IV.      CONCLUSION**

For the reasons stated herein, it is **ORDERED** and **ADJUDGED** that Plaintiff's

Objections (Doc. 113) are **OVERRULED**.  The Report and Recommendation (Doc. 109)

is **ADOPTED** and **CONFIRMED** and made a part of this Order as set forth herein and

Plaintiff's Motion for Class Certification (Doc. 69) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on August 2, 2024.

WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

5

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 24-90023

————————————

MARC IRWIN SHARFMAN M.D. P.A.,

Petitioner,

*versus*

PRECISION IMAGING ST. AUGUSTINE LLC,
HALO DX, INC.,

Respondents.

————————————

Petition for Permission to Appeal from the
United States District Court for the
Middle District of Florida
D.C. Docket No. 6:22-cv-00642-WWB-DCI

————————————

2                         Order of the Court                    24-90023

Before WILLIAM PRYOR, Chief Judge, and NEWSOM, and ABUDU, Circuit Judges.

BY THE COURT:

We conclude that the Article III standing issue identified in the Petition for Permission to Appeal under Fed. R. Civ. P. 23(f) warrants interlocutory review. *See Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1274-76 (11th Cir. 2000). Accordingly, the Petition is **GRANTED**.