CASE NO. 24-90023

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---

MARC IRWIN PLAINTIFF, M.D. P.A.,

*Plaintiff-Appellant*,

v.

PRECISION IMAGING OF ST. AUGUSTINE, LLC, AND HALO DX, INC.,

*Defendants-Appellees*.

---

On Interlocutory Appeal from the United States District Court
for the Middle District of Florida, Orlando Division

No. 6:22-cv-00642

---

BRIEF OF APPELLEES, PRECISION IMAGING OF ST. AUGUSTINE, LLC
AND HALO DX, INC.

---

Joshua R. La Bouef
Darren C. Jones
BRENNAN MANNA DIAMOND
5210 Belfort Road, Suite 400
Jacksonville, Florida 32256
Telephone: (904) 366-1500
Facsimile: (904) 366-1510
Primary: jrlabouef@bmdpl.com
Primary: dcjones@bmdpl.com
Secondary: jlbunnell@bmdpl.com

*Attorneys for Defendants-Appellees*

## CERTIFICATE OF INTEREST PERSONS

Appellees, Precision Imaging St. Augustine LLC and Halo DX, Inc., pursuant to 11th Cir. R. 26.1-2(c), by and through their undersigned counsel, certify that that Certificate of Interested Persons filed by Appellant Marc Irwin Sharfman, M.D., P.A., contains a complete accounting of the relevant parties, persons, corporations, or other identifiable legal entities related to the parties.

## CORPORATE DISCLOSURE STATEMENT

Appellees, Precision Imaging of St. Augustine, LLC and Halo DX, Inc., have no parent corporation, and that no publicly held corporation owns 10% or more of either of Appellees' stock.

BRENNAN MANNA DIAMOND
5210 Belfort Road
Jacksonville, Florida 32256
Telephone: (904) 366-1500
Facsimile: (904) 366-1501


*/s/ Joshua R. La Bouef*
Joshua R. La Bouef, Esq.
Florida Bar No. 044400
Darren C. Jones, Esq.
Florida Bar No. 99478
Primary: dcjones@bmdpl.com
Primary: jrlabouef@bmdpl.com
Secondary: jlbunnell@bmdpl.com

*Counsel for Appellees*

ii

## **STATEMENT IN SUPPORT OF ORAL ARGUMENT**

Appellees agree with Appellant that oral argument would be useful in assisting this Court in its determination of the issues presented in the parties' respective briefing.

## TABLE OF CONTENTS

CERTIFICATE OF INTEREST PERSONS ......................................................... ii

TABLE OF CONTENTS ................................................................................... iv

TABLE OF AUTHORITIES ............................................................................... v

STATEMENT OF ISSUES ................................................................................. 1

STATEMENT OF THE CASE ............................................................................ 1

SUMMARY OF ARGUMENT ............................................................................ 3

ARGUMENT ..................................................................................................... 5

I.      Standard of Review .............................................................................. 5

II.     The *Spokeo* close relationship test applies regardless of whether a statutory violation is characterized as a "procedural violation" versus a violation of a substantive right created by Congress. ................. 6

III.    The OFS Recipients did not suffer a concrete harm sufficient to confer Article III standing to sue under the TCPA .................................. 8

        A.      Article III standing requires an injury in fact regardless of Congressional intent in enacting a statutory scheme. ...................... 8

        B.      The business entity members of the proposed putative classes who received the Faxes via an OFS cannot establish concrete harm sufficient to confer Article III standing. ................. 11

        C.      The cases cited by Appellant for proposition that the receipt of unwanted faxes via online fax services is sufficient to confer Article III are not persuasive. ............................................ 16

CONCLUSION .................................................................................................. 18

CERTIFICATE OF COMPLIANCE ................................................................. 20

# TABLE OF AUTHORITIES

**Cases**

*Am. States Ins. Co. v. Capital Assocs. Of Jackson Cty., Inc.*,
   392 F.3d 939 (7th Cir. 2004)................................................................14

*Bassett v. ABM Parking Servs., Inc.*,
   883 F.3d 776 (9th Cir. 2018) ..................................................................7

*Casillas v. Madison Ave. Assocs., Inc.*,
   926 F.3d 329 (7th Cir. 2019)..................................................................9

*Cordoba v. DIRECTV, LLC*,
   942 F.3d 1259 (11th Cir. 2019)..............................................................6

*Daisy, Inc. v. Mobile Mini, Inc.*,
   489 F. Supp. 3d 1287 (M.D. Fla. 2020)................................................14

*Drazen v. Pinto*,
   74 F.4th 1336 (11th Cir. 2023) .......................................................passim

*FCC v. AT&T Inc.*,
   562 U.S. 397 (2011)...................................................................... 14, 15

*Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*,
   48 F.4th 1236 (11th Cir. 2022) ........................................... 4, 5, 10

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)................................................................................9

*Marc Irwin Sharfman M.D. P.A. v. Precision Imaging St. Augustine LLC et al.*,
   No. 24-90023 (11th Cir., October 21, 2024) ....................................3

*Meyers v. Nicolet Rest. of De Pere, LLC*,
   843 F.3d 724 (7th Cir. 2016) ..................................................................7

*Muransky v. Godiva Chocolatier, Inc.*,
   979 F.3d 917 (11th Cir. 2020) ........................................... 4, 5, 7

*Nicklaw v. Citimortgage, Inc.*,
   839 F.3d 998 (11th Cir. 2016) ................................................................7

*Spokeo Inc. v. Robbins*,
    578 U.S. 330 (2016)......................................................................................4, 8, 9, 11

*TransUnion LLC v. Ramirez*,
    594 U.S. 413, 433-35 (2021) ............................................................. passim

*Urgent One Med. Care, PC v. Co-Options, Inc.*,
    No. 2 -CV-4180, 2022 WL 16755154 (E.D.N.Y. June 1, 2022) ...................17

**Statutes**

47 U.S.C. §227, et. seq.........................................................................................1

**Rules**

Fed. R. Civ. P. 23 ..................................................................................... 1, 3, 19

**Treatises**

Restatement (Second) of Torts, § 652B (1977) ......................................................14

Restatement (Second) of Torts, §652I cmt. c (1977)........................................ 14, 15

## STATEMENT OF ISSUES

Whether the district court correctly determined that Appellant failed to establish typicality and predominance under Rule 23(a) and 23(b)(3), respectively, because the business entity members of the proposed putative classes who received the Faxes via an online fax service ("OFS") lack Article III standing to assert a claim for violation of 47 U.S.C. §227, et. seq. (2019) (the "TCPA").

## STATEMENT OF THE CASE

This is a putative class-action lawsuit brought under the TCPA arising out of the receipt of three allegedly "unsolicited fax advertisements" (the "Faxes") in February of 2022. (*See* Dkt. 16 at 33-37) (hereinafter "Appx.").[1] Specifically, Marc Irwin Sharfman, M.D., P.A.'s ("Appellant") Third Amended Complaint alleges that Precision Imaging of St. Augustine, LLC ("Precision") and Halo DX, Inc. ("Halo") (collectively, "Appellees") violated the TCPA by transmitting the Faxes to Appellant and the putative class members. (Appx. at 17-33). The Faxes, which contained information concerning diagnostic imaging services provided by Precision, were sent exclusively to Precision's referral sources, which were comprised exclusively of medical practices with whom Precision had directly interacted, and by whom Precision had been provided a fax number during the

---

[1] Unless otherwise noted, all citations to "Doc" shall refer to the docket in the underlying action pending before the United States District Court in the Middle District of Florida, and all citations to "Dkt" shall refer to the docket in this Appeal.

regular course of business.  (*See* Appx. at 50) (citing Doc. 32-1 at ¶¶ 11-12).[2]

Following the close of discovery, Appellant filed its motion for class certification seeking to certify two alternative classes. (Doc. 69) (the "Motion for Class Certification").  Plaintiff's proposed Class A was comprised of all 4,922 recipients that were successfully sent at least one of the Faxes, and Class B was made up of the same "all recipients" group as Class A excluding 970 of the recipients Appellees claimed had given prior express permission to receive the Faxes during in-person office visits.  (Doc. 69 at 2-3). Importantly, neither of the proposed classes differentiated between recipients who received the Faxes on traditional standalone fax machines and those who received the Faxes via an OFS (*hereinafter* the "OFS Recipients").  *See id.* [3]

On May 23, 2024, Magistrate Judge Daniel C. Irick issued a Report and Recommendation outlining the multiple reasons why Appellant's Motion for Class Certification should be denied for failing to satisfy Rule 23(a) typicality and adequacy, and Rule 23(b)(3) predominance and superiority.  (Appx. at 49-74) (the "R&R").  Appellant filed an objection to the R&R, claiming all of Judge Irick's

---

[2] As noted by the district court in its Order Denying Class Certification "Plaintiff has not objected to the relevant factual background as set forth in the R&R. (Appx. at 50-51). It is hereby adopted and made part of this Order accordingly." (Appx. at 75, Sec. I).

[3] While Appellant initially sought to identify which putative class members were OFS users (*see* Doc. 21), Appellant ultimately abandoned its efforts and is now taking the position the TCPA's prohibitions apply regardless of how a recipient receives the purportedly offending fax.  *See* Appellant's Brief at n. 2 (Dkt. 15).

recommendations were incorrect. (Doc. 113).  Thereafter, the district court issued its Order on the Motion for Class Certification which adopted the R&R, in part, and denied the Motion for Class Certification.  (Appx. at 75-79) (the "Order"). Specifically, the district court adopted the finding that the OFS Recipients lacked Article III standing, and, as a result, Appellant failed to carry its burden of showing Rule 23(a)(3) typicality and Rule 23(b)(3) predominance. (Appx. at 79). And, because failure to establish any one of the factors under Rule 23(a) and Rule 23(b)(3) precludes class certification, the district court did not address Plaintiff's objections to the remaining Rule 23(a) and 23(b)(3) factors.  *Id.*

Appellant filed a timely petition for interlocutory review of the district court's Order which this Court granted on the grounds "the Article III standing issue identified in the Petition for Permission to Appeal under Fed. R. Civ. P. 23(f) warrants interlocutory review."  *Marc Irwin Sharfman M.D. P.A. v. Precision Imaging St. Augustine LLC et al.*, No. 24-90023 (11th Cir., October 21, 2024) (*See* Appx. at 81).

## SUMMARY OF ARGUMENT

This Court should affirm the district court's Order Denying Class Certification on the grounds that Appellant failed to carry its burden of showing typicality under Rule 23(a)(3) and predominance under Rule 23(b)(3) because the OFS Recipients did not suffer a concrete harm sufficient to confer Article III

standing to bring a claim under the TCPA.

Specifically, the district court correctly determined the receipt of a fax via an OFS is—at best—a bare procedural violation of the TCPA that is insufficient to confer standing in the absence of an accompanying concrete harm.[4]  Under the test adopted by the Supreme Court in *Spokeo Inc. v. Robbins*, 578 U.S. 330, 339 (2016), in order to establish standing "a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." (internal quotations and citation omitted).  The *Spokeo* Court further explained that "Article III standing requires a concrete injury even in the context of a statutory violation" and that "a bare procedural violation, divorced from any concrete harm [will not] satisfy the injury-in-fact requirement of Article III." *Id.* at 341.

In applying *Spokeo* and its progeny, this Court uses the comparator tort analysis to determine whether the type of harm alleged has been historically recognized as actionable.  *See Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1243-44 (11th Cir. 2022); *Muransky v. Godiva Chocolatier,*

---

[4] The Order assumed, for the sake of argument, that an OFS constitutes a "telephone facsimile machine" for purposes of the TCPA.  (*See* Appx. at 78).  However, for the reasons explained more fully in the R&R, the TCPA does not apply to faxes received via an online fax service. (*See* Appx. at 60-65).  Therefore, it bears mentioning that Appellees maintain Judge Irick correctly determined that, as a threshold matter, the TCPA does not apply to faxes received via an email through an OFS.  *See id.*

*Inc.*, 979 F.3d 917, 926 (11th Cir. 2020).  The analysis is one of kind, rather than degree, and even a perceivably slight violation of a historically recognized right may be sufficient to confer standing.  *See Drazen v. Pinto*, 74 F.4th 1336, 1345 (11th Cir. 2023).  However, if the alleged harm resulting from a statutory violation is not closely related to a harm historically recognized at law, the aggrieved party cannot have standing to sue.  *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 433-35 (2021); *Hunstein*, 48 F.4th at 1244; *Muransky*, 979 F.3d at 932.

Here, Appellant's argument that the alleged harm suffered by the OFS Recipients is analogous to the common law tort of intrusion upon seclusion is unavailing.  As the district court correctly noted, business entities do not have the same privacy rights and interest in seclusion that individuals have.  (*See* Appx. at 78).  Indeed, because businesses lack a legally cognizable interest in seclusion, the district court properly rejected Appellant's argument that intrusion upon seclusion establishes concrete harm for the OFS Recipients sufficient to confer Article III standing. *See id.* Therefore, as explained more fully below, the district court did not abuse its discretion in denying Appellant's Motion for Class Certification, and, accordingly, this Court should affirm the Order in its entirety.

## **ARGUMENT**

### I.    **Standard of Review**

As noted by Appellant, orders denying a motion for class certification are

reviewed for an abuse of discretion. *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1275 (11th Cir. 2000). "A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous." *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1267 (11th Cir. 2019). Therefore, findings of fact are reviewed for clear error, and issues of law are reviewed de novo. *Id.*

## II. The *Spokeo* close relationship test applies regardless of whether a statutory violation is characterized as a "procedural violation" versus a violation of a substantive right created by Congress.

As its first point of error, Appellant claims the district court misapplied controlling authority in holding that the receipt of an unsolicited fax advertisement via an online fax service is merely a "procedural violation" that does not, standing alone, cause a sufficient injury in fact to confer Article III standing. (*See* Dkt. 15 at 16). Appellant seemingly takes issue with describing the purported violation as a "procedural violation" versus (as it contends) a direct violation of the TCPA. (Dkt. 15 at 19). However, Appellant's fixation on the district court's characterization of the alleged violation as "procedural" is puzzling in light of this Court's discussion of this very issue in *Muransky*. In particular, as this Court explained:

> [W]hile some statutory violations, by their very nature, will be coextensive with the harm that Congress was trying to prevent, labels do not control our analysis. We are not the first court to recognize that arguments

6

> grounded in a distinction between substantive and procedural rights miss the point and are "unconvincing" because they depend "entirely on the framing of the right." *Bassett v. ABM Parking Servs., Inc.*, 883 F.3d 776, 782 (9th Cir. 2018); *see also Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 727 n.2 (7th Cir. 2016). The question, always, is whether an injury in fact accompanies a statutory violation.
>
> Confronting this argument again also feels a little like Groundhog Day, because we already rejected it in *Nicklaw*. There, the plaintiff claimed that, because "the New York legislature intended to create a *substantive right* to have the certificate of discharge timely recorded," the plaintiff automatically suffered a concrete injury when the discharge was untimely filed. 839 F.3d at 1002 (emphasis added). There too, we held that the "relevant question" was "whether Nicklaw was harmed when this statutory right was violated." *Id.* The point is that for standing purposes, no matter what label you hang on a statutory violation, it must be accompanied by a concrete injury.

*Muransky*, 979 F.3d at 930 (citing *Nicklaw v. Citimortgage, Inc.*, 839 F.3d 998, 1001 (11th Cir. 2016)).

Therefore, just as in *Muransky* and *Nicklaw*, the Court should properly disregard Appellant's attempt to conflate the district court's characterization of the statutory violation as somehow determinative of the *Spokeo* analysis. Rather, as explained in *Muransky* the crux of the Article III standing analysis is whether the OFS Recipients suffered any concrete harm when they received one of the Faxes. *See Muransky*, 979 F.3d at 930. And, as explained in further detail below, the district court correctly answered that question in the negative.

7

### III. The OFS Recipients did not suffer a concrete harm sufficient to confer Article III standing to sue under the TCPA.

As its second point of error, Appellant asserts the district court misapplied the "close relationship" test announced in *Spokeo* by purportedly requiring the OFS Recipients prove a claim for intrusion upon seclusion to establish Article III standing. (*See* Dtk. 15 at Sec. III, p. 21). Appellant claims that, because Congress created a right for "persons" and "entities" to seek redress for being sent an unsolicited fax advertisement, all that is left for the court to determine is whether receiving a fax via an OFS has a close relationship with the common law tort of intrusion upon seclusion. (*See* Dkt. 15 at 24). According to Appellant, *how* the business members of the classes received the Faxes is irrelevant because while the alleged harm to these businesses is not an exact analog, it nonetheless bears a close enough relationship to intrusion upon seclusion to establish Article III standing. *Id.* at 24-25. However, Appellant's arguments on this point fail for multiple reasons.

### A. Article III standing requires an injury in fact regardless of Congressional intent in enacting a statutory scheme.

To establish Article III standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338. Here, as is often the case, the analysis turns on the injury in fact

8

element because "injury in fact [is] the '[f]irst and foremost' of standing's three elements." *Id.*

"To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical."  *Id.* at 339 (quotation omitted). Thus, while it is true that "Congress may "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 578 (1992)).  It is also true that "Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III." *TransUnion*, 594 U.S. at 426.[5]

Therefore, as explained by the Supreme Court in *TransUnion*, while "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact," that is only the case where the statutory violation results in harm that bears a "'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *TransUnion*,

---

[5] As noted by the Court, "Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." *Id.* at 427 (quoting *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 332 (7th Cir. 2019) (Cir. J. Barrett).

9

594 U.S. at 424 (quoting *Spokeo*, 578 U.S. at 341).  Of particular importance to the

instant action, the *TransUnion* Court expanded on the comparator tort analysis

used to address the "close relationship" test adopted in *Spokeo*.  *See TransUnion*,

594 U.S. at 433-35.  As succinctly explained by this Court:

> [T]he [*TransUnion*] Court doubled down on its decision in *Spokeo*, again stressing that harms must be concrete— "real"—to give rise to Article III standing. It reemphasized that, for intangible harms, analogizing to longstanding torts is an important way to determine whether an alleged intangible injury meets the concreteness requirement. Particularly relevant here, it put more meat on the bones of that approach, adding that when an element "essential to liability" at common law is missing from an alleged harm, the common-law comparator is not closely related to that harm. As the Court explained, a theory that "circumvents a fundamental requirement" of an analogous common-law tort "does not bear a sufficiently 'close relationship' " to establish standing.

*Hunstein*, 48 F.4th at 1243 (internal citations omitted).  Therefore, while a plaintiff

is not necessarily required to prove it could recover on a cause of action for the

comparator tort to establish concrete harm,[6] *TransUnion* made clear that if an

essential element to the comparator tort is completely lacking, then so too is Article

---

[6] For example, in *TransUnion* the Court explained how labeling someone a "potential terrorist"—as opposed to simply calling them a "terrorist"—might not be technically false (and thus not capable of establishing liability for defamation for publishing a *false* statement) the harm inflicted by calling someone a "potential terrorist" is similar enough in kind to the harm caused by a false and defamatory statement to satisfy the injury in fact requirement for standing.  *See TransUnion*, 594 U.S. at 433-39.

III standing. *See TransUnion*, 594 U.S. at 434-37 (holding that because "publication is 'essential to liability' in a suit for defamation" in the absence of publication there was no concrete harm sufficient to confer Article III standing.).

With this background and understanding of the controlling authority on the issue, we turn to the question of whether the district court erred in finding the OFS Recipients lack Article III standing under the TCPA.

**B. The business entity members of the proposed putative classes who received the Faxes via an OFS cannot establish concrete harm sufficient to confer Article III standing.**

Appellant's standing argument focuses on its claim that "[i]n enacting the TCPA, Congress elevated the invasion of privacy, the invasion of interest in seclusion, and the nuisance that results from being sent an unsolicited fax advertisement 'to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate at law.'" (Dkt. 15 at 17 (quoting *Spokeo*, 578 U.S. at 341)). Thus, according to Appellant, because the OFS Recipients were sent unsolicited fax ads, they suffered "the very harm the TCPA was designed to prevent, and that harm occurs when the fax ad is successfully sent" regardless of whether the fax was received via an email or a traditional fax machine. *Id.* at 19. However, Appellant's argument fails as both a matter of fact and a matter of law.

As noted above, the threshold issue under the "close relationship" test is whether the harm Congress sought to redress was "'traditionally' recognized as

11

providing a basis for a lawsuit in American courts." *TransUnion*, 594 U.S. at 424 (quoting *Spokeo*, 578 U.S. at 341). As such, the first step in the analysis is identifying the relevant common law comparator tort. *See Drazen*, 74 F.4th at 1339. On this point, it is important to note that the common law comparator tort for "traditional" TCPA junk fax cases is conversion (i.e., tying up the fax line and using its toner/paper to print the advertisement). *See e.g.*, *Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1252 (11th Cir. 2015) ("[T]he TCPA's prohibition against sending unsolicited fax advertisements was intended to protect citizens from the loss of the use of their fax machines during the transmission of fax data," as such "the occupation of Plaintiff's fax machine is among the injuries intended to be prevented . . . and is sufficient[] . . . to provide standing." (citing H.R. REP. NO. 102-37 at 10 (1991)).

Here, however, the harms associated with occupying the OFS Recipients' fax lines and utilizing their paper/toner are entirely absent. (*See* Appx. at 62-64). Indeed, as explained in the R&R, the Faxes sent to the OFS Recipients were received by an OFS's fax server that converted the messages into an email and transmitted them to the OFS Recipient. *Id.* Accordingly, despite Appellant's attempt to conflate Congress' intent, the OFS Recipients have not actually suffered the same kind of harm the TCPA was originally enacted to prevent. *See In the Matter of Americators*, 34 F.C.C. Rcd. 11950, 11953 (2019) (discussing the fact

that the TCPA was not enacted to regulate the purported harm associated with receiving faxes via email).[7]

Given the OFS Recipients did not suffer the tangible harm associated with receiving a traditional fax, Appellant seeks to establish "concrete harm" by analogizing the receipt the Faxes via email to the receipt of unwanted text messages, which this Court has determined is sufficient to confer individual consumers Article III standing to sue under the TCPA. (*See* Dtk. 15 at 21 (citing *Drazen*, 74 F.4th at 1343)). Specifically, Appellant claims that, just as this Court determined the receipt of a single unwanted text message was sufficient to confer Article III standing in *Drazen*, it should find the OFS Recipients' receipt of an unwanted fax ad via email suffices for purposes of standing. *Id.* at 22-23.

However, Appellant fails to address the critical distinction between an *individual* receiving an unwanted text message, and a *business entity* receiving an unwanted fax advertisement via an OFS. (*See* Appx. at 62-64 (discussing the distinction between faxes received via an online fax service from faxes received via a standalone fax machine); Appx. at 78 (adopting findings of R&R)).

Here, just as in *Drazen*, the Appellant's arguments rely upon the comparator

---

[7] The TCPA was enacted before the internet (and email) became widely available to the public. *See* Wendy Grossman, *Net.wars*, at 10-12 (New York: New York University Press, 1997) (discussing the history of the internet and public email service providers).

tort of intrusion upon seclusion. (*See* Appx. at 77; Dkt. 15 at 23).[8]   However, unlike in *Drazen* where the putative class was comprised of individuals with specific privacy rights, the Faxes at issue in this case were sent exclusively to Precision's referral sources that were comprised entirely of business entities. (Appx. at 50).  This distinction is determinative to the analysis because unlike the individual consumers in *Drazen*, "business entities do not enjoy a right to privacy." (*See* Appx. at 78 (citing *FCC v. AT&T Inc.*, 562 U.S. 397, 406–07 (2011) ("It seems to be generally agreed that the right of privacy is one pertaining only to individuals, and that a corporation or a partnership cannot claim it as such." (quotation omitted)); *see also*, *Daisy, Inc. v. Mobile Mini, Inc.,* 489 F. Supp. 3d 1287, 1294 (M.D. Fla. 2020) (citing *AT&T*, 562 U.S. at 406) ("Daisy is a corporation. In tort, those entities have never been understood to have privacy rights beyond their publicity."); Restatement (Second) of Torts, §652I cmt. c (1977).[9]

---

[8] The elements of "intrusion upon seclusion consists of an (i) intentional intrusion (ii) into another's solitude or seclusion, (iii) which would be highly offensive to a reasonable person. *Drazen*, 74 F.4th at 1345 (citing Restatement (Second) of Torts, § 652B).  Therefore, the critical element of an intrusion upon seclusion claim is a protectable interest in privacy, because one cannot have their privacy invaded if no such interest exists.

[9] As noted by the Seventh Circuit, "businesses lack interests in seclusion.  It is not just to say that they are 'open for business' and thus welcome phone calls and other means to alert them of profitable opportunities.  It is that corporations are not alive.  Where does a corporation go when it wants to be left alone?" *Am. States Ins. Co. v. Capital Assocs. Of Jackson Cty., Inc.*, 392 F.3d 939, 942 (7th Cir. 2004).

14

Therefore, notwithstanding Appellant's arguments to the contrary, this Court's holding in *Drazen* is simply inapposite to the present case. To be sure, in *Drazen* this Court held that the individuals who received an unwanted text message had standing because "none of the elements for the common-law comparator tort are *completely missing*." *Drazen*, 74 F.4th at 1345 (emphasis added). Here, however, the critical element to a claim for intrusion upon seclusion—the right to privacy—is entirely missing for the OFS Recipients. Because, as recognized by the Supreme Court in *FCC v. AT&T*, 562 U.S. 397 (2011), under the common law businesses have never been understood to enjoy an actionable right to privacy beyond their publicity. *See AT&T*, 562 U.S. at 406-07 (citing with approval Restatement (Second) of Torts, §652I cmt. c) ("A corporation, partnership or unincorporated association has no personal right of privacy. *It has therefore no cause of action for any of the four forms of invasion covered by §§ 652B to 652E"*) (emphasis added).[10]

---

[10] Appellant's attempts to distinguish *AT&T* on the grounds that the Court's statement concerning business entities not enjoying a right to privacy was merely dicta is unavailing. (*See* Dkt. 15 at 25). To be sure, while the Court in *AT&T* was not specifically asked to address whether businesses enjoyed a right to privacy at common law, the Court nonetheless cited the Restatement (Second) of Torts §652I cmt. c, with approval in noting that businesses have not historically been recognized as having actionable privacy rights (in the context of interpreting the ambiguous text of a statute). In turn, §652I cmt. c. of the Restatement could not be any clearer that business cannot bring a claim for intrusion upon seclusion. Therefore, the "referenced statements" in *AT&T* are not dicta, they are a statement of the law concerning what has 'traditionally' [been] recognized as providing a

Therefore, because the common law tort of intrusion upon seclusion is specifically predicated on the invasion of privacy, lacking a protectable interest in privacy is fatal to the OFS Recipients' standing. *See TransUnion*, 594 U.S. at 434. Accordingly, based on the foregoing authority and analysis, this Court should affirm the district court's Order in its entirety.

**C. The cases cited by Appellant for proposition that the receipt of unwanted faxes via online fax services is sufficient to confer Article III are not persuasive.**

In an effort to support its argument that the OFS Recipients have suffered a concrete harm sufficient to confer Article III standing—despite the fact businesses lack a protectable interest in seclusion—Appellant cites to several district court orders from outside the Eleventh Circuit that have found OFS users have standing under the TCPA. (Dkt. 15 at 19-20).

For example, Appellant cites *Douglas Phillip Brust, D.C., P.C. v. Opensided MRI of St. Louis LLC*, 343 F.R.D. 581, 591 (E.D. Mo. 2023) for the proposition that "the receipt of unwanted faxes via online fax services is sufficient to confer Article III standing to bring a claim under the TCPA." (Dkt. 15 at 20). However, while court in *Douglas* found that businesses who receive a fax advertisement via an OFS suffer a concrete injury sufficient to confer Article III standing, it arrived at its conclusion without addressing the fact that businesses lack an interest in

---

basis for a lawsuit in American courts." *TransUnion*, 594 U.S. 413, 424 (quoting *Spokeo* 578 U.S. at 341).

16

privacy. *See Douglas*, 343 F.R.D. at 591.[11]  Rather, the decision was based on the

Eighth Circuit's holding in *Golan v. FreeEats.com., Inc.*, 930 F.3d 950 (8th Cir.

2019), that held the harm suffered by *individuals* who received unsolicited

telemarketing phone calls "bear a close relationship to the types of harms

traditionally remedied by tort law, particularly the law of nuisance." *Golan,* 930

F.3d at 959.  However, as discussed above, the relevant common law comparator

in this matter is intrusion upon seclusion, not nuisance. *See supra*, Sec. III.B.[12]

Further, given the court in *Douglas* failed to address the comparator tort analysis,

and, instead, relied upon *Golan* despite the fact it dealt with individuals' standing

to sue (and not businesses) this Court should reject Appellant's reliance on

*Douglas* as it is of no precedential value.

Similarly, Appellant cites *Urgent One Med. Care, PC v. Co-Options, Inc.,*

No. 2 -CV-4180 (JS)(SIL), 2022 WL 16755154, at *5 (E.D.N.Y. June 1, 2022),

*adopted by* 2022 WL 4596754 (E.D.N.Y. Sept. 30, 2022), for the proposition that

businesses suffer nuisance and privacy invasion via the receipt of unwanted fax

advertisements.  (Doc. 15 at 20).  However, Appellant fails to acknowledge that the

---

[11] While it is not entirely clear from the order, it does not appear the defendants in *Douglas* argued that the business entity members of the class lacked a protectable interest in seclusion.  *See id.*

[12] Appellant fails to cite any authority to suggest that the nuisance of receiving an unwanted email is sufficient to satisfy the "concrete harm" requirement imposed by *Spokeo*.  Rather, the "nuisance" involved in receiving unwanted calls, texts, or faxes, is the associated invasion of a legally protected right, such as the right to privacy that the message imposes upon.  *See e.g.*, *Drazen*, 74 F.4th at 1343-45.

17

relevant comparator tort at issue in *Urgent One* court was conversion. *Id.* (noting that "occupation of a plaintiff's fax machine, as well as use of its paper and ink, are among the injuries to be prevented by the TCPA") (internal quotations and citation omitted). More importantly, in *Urgent One* whether the subject faxes were received by any of the putative class members via an online fax service was disputed. *Id.* In fact, the court excluded any evidence concerning whether the faxes were received via an OFS. *Id.* Therefore, because the court in *Urgent One* predicated its order on the fact there was no evidence the subject faxes were received via an OFS, there was no determination as to whether such recipients had Article III standing. *Id.* Here, it is undisputed both of the proposed classes contain OFS Recipients; therefore, the holding in *Urgent One* is simply inapposite to the facts in this case. (*See* Appx. 75, Sec. I).

Accordingly, Appellant has failed to demonstrate the district court misapplied the law or otherwise abused its discretion in holding that "[w]ithout a cognizable right to privacy, business entities cannot suffer the kind of harm contemplated in *Drazen* as a matter of law." (Appx. at 78). As such, the Order should be affirmed in its entirety.

## CONCLUSION

Based on the foregoing authority and analysis, Appellees respectfully request that the Court affirm the Order or, in the alternative, remand this case for

the district court to conduct the remainder of the Rule 23 analysis set forth within

the R&R.

Appellees Brief is respectfully submitted this 13th day of February, 2025.

BRENNAN MANNA DIAMOND
5210 Belfort Road
Jacksonville, Florida 32256
Telephone: (904) 366-1500
Facsimile: (904) 366-1501

*/s/ Joshua R. La Bouef*
Joshua R. La Bouef, Esq.
Florida Bar No. 044400
Darren C. Jones, Esq.
Florida Bar No. 99478
Primary: dcjones@bmdpl.com
Primary: jrlabouef@bmdpl.com
Secondary: jlbunnell@bmdpl.com

*Counsel for Defendants-Appellees*

19

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT,
TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS**

*Check the appropriate box in section 1, and check the box in section 2.*

1.    **Type-Volume**

☑    This document complies with the word limit of FRAP        32(a)(7)(B)(i)
because, excluding the parts of the document exempted by FRAP 32(f) and
            [insert applicable Rule citation, if any]                , this document contains
      4844              words.

      **or**

☐    This brief complies with the line limit of FRAP    [insert Rule citation]    because,
excluding the parts of the brief exempted by FRAP 32(f) and
            [insert applicable Rule citation, if any]              , this brief uses a monospaced
typeface and  contains        [state the number of]        lines of text.

2.    **Typeface and Type-Style**

☑    This document complies with the typeface requirements of FRAP 32(a)(5) and the
type-style requirements of FRAP 32(a)(6).

(s)Joshua R. La Bouef

Attorney for Appellees

Dated: 02/13/2025