No. 24-13315

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

---

MARC IRWIN SHARFMAN, M.D., P.A.,

*Plaintiff-Appellant,*

v.

PRECISION IMAGING OF ST. AUGUSTINE, HALO DX,

*Defendants-Appellees.*

---

Appeal from the United States District Court
for the Middle District of Florida
No. 6:22-cv-00642

---

## REPLY BRIEF OF APPELLANT

---

Glenn L. Hara
Anderson + Wanca
3701 Algonquin Road, Suite 500
Rolling Meadows, Illinois 60008
Telephone: 847-368-1500

---

*Attorneys for Plaintiff-Appellant, Marc Irwin Sharfman, M.D., P.A.*

# CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

Pursuant to 11th Cir. R. 26.1-1(a), Plaintiff-Appellant Marc Irwin Sharfman M.D., P.A., certifies that to the best of its counsel's knowledge, the following is the list of persons or entities that may have an interest in the outcome of this appeal:

- Anderson + Wanca – Counsel for Plaintiff-Appellant

- Berger, Wendy W. – United States District Court Judge

- Brennan, Manna & Diamond – Counsel for Defendants-Appellees

- Halo Dx, Inc. - Appellee

- Hara, Glenn – Counsel for Plaintiff-Appellant

- Irick, Daniel C. – United States Magistrate Judge

- Jones, Darren C. – Counsel for Defendants-Appellees

- Kelly, Ryan – Counsel for Plaintiff-Appellant

- La Bouef , Joshua R. – Counsel for Defendants-Appellees

- Marc Irwin Sharfman, M.D., P.A. - Appellant

- Precision Imaging of St. Augustine LLC – Appellee

- Solberg, Wallace C.  – Counsel for Plaintiff-Appellant

i

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Plaintiff-Appellant Marc Irwin Sharfman M.D., P.A., Inc. states that it has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

Respectfully submitted,

*s/ Glenn L. Hara*
Glenn L. Hara
ANDERSON+ WANCA
3701 Algonquin Rd., Suite 500
Rolling Meadows, IL 60008
Telephone:  847-368-1500

# **TABLE OF CONTENTS**

**Page(s)**

CERTIFICATE OF INTERESTED PERSONS ..................................................... i

TABLE OF CONTENTS ............................................................................... iii

TABLE OF AUTHORITIES .......................................................................... iv

I.    Precision concedes that the statutory violations at
      issue are not "procedural" ................................................................. 1

II.   Congress extended the right of seclusion to businesses
      in the TCPA's private right of action ................................................ 3

CONCLUSION .......................................................................................... 8

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**CASES**                                                          **Pages(s)**

*Am. States Ins. Co. v. Capital Assocs. Of Jackson Cty., Inc.,*
    392 F.3d 939 (7th Cir. 2004) ................................................................... 5

*Aranda v. Caribbean Cruise Line, Inc.,*
    202 F. Supp. 3d 850 (N.D. Ill. 2016) ........................................................ 2

*Bostock v. Clayton Cnty., Ga.,*
    140 S. Ct. 1731 (2020) .............................................................................. 7

*Daisy, Inc. v. Mobile Mini, Inc.,*
    489 F. Supp. 3d 1287 (M.D. Fla. 2020) .................................................... 4

*Douglas Phillip Brust, D.C., P.C. v. Opensided MRI of St. Louis LLC,*
    343 F.R.D. 581 (E.D. Mo. 2023) ............................................................... 4

*Eichenberger v. ESPN, Inc.,*
    876 F.3d 979 (9th Cir. 2017) ..................................................................... 4

*Maxum Indem. Co. v. Eclipse Mfg. Co.,*
    No. 06 C 4946, 2013 WL 5993389 (N.D. Ill. Nov. 12, 2013) .................. 5

*Muransky v. Godiva Chocolatier, Inc.,*
    979 F.3d 917 (11th Cir. 2020) ................................................................... 2

*Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.,*
    781 F.3d 1245 (11th Cir. 2015) ................................................................. 6

*Park Univ. Enterprises, Inc. v. Am. Cas. Co. Of Reading, PA,*
    442 F.3d 1239 (10th Cir. 2006) ................................................................. 6

# TABLE OF AUTHORITIES

**CASES**                                                                 **Pages(s)**

*Perez v. McCreary, Veselka, Bragg & Allen, P.C.,*
   45 F.4th 816 (5th Cir. 2022) ........................................................ 4

*Resource Bankshares Corp. v. St. Paul Mercury Ins.,*
   407 F.3d 631 (4th Cir. 2005) ....................................................... 6

*Spokeo, Inc. v. Robins,*
   578 U.S. 330 (2016) ............................................................... 1, 5, 8

*Toste v. Beach Club at Fontainebleau Park Condo. Ass'n, Inc.,*
   No. 21-14348, 2022 WL 4091738 (11th Cir. Sept. 7, 2022) ................... 2

*TransUnion LLC v. Ramirez,*
   594 U.S. 413 (2021) ............................................................... 3, 5, 8

*Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc.,*
   401 F.3d 876 (8th Cir. 2005) ....................................................... 6

*Valley Forge Ins. Co. v. Swiderski Elecs., Inc.,*
   860 N.E.2d 307 (Ill. 2006) .......................................................... 5

*Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens,*
   529 U.S. 765 (2000) .................................................................. 5

*W. Rim Inv. Advisors, Inc. v. Gulf Ins. Co.,*
   269 F. Supp. 2d 836 (N.D. Tex. 2003) ........................................... 6

v

# TABLE OF AUTHORITIES

**STATUTES**                                                    **Page(s)**

15 U.S.C. § 1681e(b) ....................................................................... 1

47 U.S.C. § 153(39) ......................................................................... 5

47 U.S.C. § 227(b)(1)(C) ............................................................. 1, 8

47 U.S.C. § 227(b)(3)......................................................................5

**Rules & Regulations**

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,*

18 FCC Rcd. 14014 (FCC July 3, 2003)............................................ 7

**Other Authorities**

Pub. L. 102-243, § 2 (1991) .............................................................. 3

H.R. Rep. No. 102-317 (1991)...........................................................7

Appellant, Marc Irwin Sharfman, M.D., P.A. ("Sharfman") states as follows for its Reply Brief in response to the Brief of Appellees, Precision Imaging St. Augustine LLC, and Halo DX, Inc. (collectively, "Precision"). As argued below, Precision's brief fails to overcome Sharfman's showing that the district court's denial of class certification in this case was based on the erroneous legal premise that users of "online fax services" lack Article III standing to sue under the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227(b)(1)(C). Because the district court's denial of class certification was based entirely on this erroneous premise, the district court abused its discretion, and this Court should reverse.

## I.    Precision concedes that the statutory violations at issue are not "procedural."

The district court reasoned that "[w]hile 'the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact,' this is not one of those instances," quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). (Doc. 119 at 3). In its Brief (at 6–12), Sharfman demonstrated that the violation at issue here—the sending of "unsolicited advertisements" in violation of the TCPA, 47 U.S.C. § 227(b)(1)(C)—is no sense "procedural," unlike the *Spokeo* defendant's alleged failure to "follow reasonable procedures to assure maximum possible accuracy of" consumer reports in violation of FCRA. *See* 15 U.S.C. § 1681e(b).

Precision's Brief does not defend the district court's conclusion that the violations at issue here were "procedural." (Precision Br. at 6–7). Instead, Precision asks the Court to ignore this "characterization" of the violations as irrelevant. (*Id.* at 7). The Court should decline that invitation because, as it explained in *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 930 (11th Cir. 2020) (en banc), a procedural violation, such as a merchant's failure to truncate credit card numbers on a receipt in alleged violation of FACTA, requires the court to determine "whether the violation posed a material risk of harm to the plaintiff."

In contrast, where "the violation itself caused harm, whether tangible or intangible, to the plaintiff, *that's enough*." *Id.* Here, online-fax-service class members were sent unsolicited fax ads, which is a "direct injury" that occurs when the fax ad is successfully sent. *Toste v. Beach Club at Fontainebleau Park Condo. Ass'n, Inc.*, No. 21-14348, 2022 WL 4091738, at *4 (11th Cir. Sept. 7, 2022). Unlike FCRA or FACTA, the TCPA "does not require the adoption of procedures to decrease congressionally identified risks," and "there is no gap—there are not some kinds of violations of section 227 that do not result in the harm Congress intended to curb, namely, the receipt of unsolicited telemarketing calls that by their nature invade the privacy and disturb the solitude of their recipients." *Aranda v. Caribbean Cruise Line, Inc.*, 202 F. Supp. 3d 850, 857 (N.D. Ill. 2016).

2

In sum, the Court should reject Precision's invitation to ignore the district court's mischaracterization of the alleged TCPA violations as "procedural" and reverse that holding.

## II.　Congress extended the right of seclusion to businesses in the TCPA's private right of action.

Precision concedes that "a plaintiff is not necessarily required to prove it could recover on a cause of action for the comparator tort to establish concrete harm" under the close-relationship test. (Precision Br. at 10). In the same breath, however, Precision reasons that, because a business does not have a right to privacy at common law, Sharfman "*has therefore no cause of action*" for intrusion upon seclusion and *therefore* lacks Article III standing. (*Id.* at 15 (emphasis in original)). Precision is asking the Court to require a plaintiff to "exact[ly] duplicate" the elements of a common-law cause of action, rather than allege the same type of harm "*associated with*" the common-law cause of action, as the Supreme Court instructed in *TransUnion LLC v. Ramirez*, 594 U.S. 413, 432 (2021) (emphasis added).

Precision's argument also reflects the "overthinking" the Court warned against in *Muransky*, 979 F.3d at 931. The close-relationship test is "really a simple instruction: see if a new harm is similar to an old harm." *Id.* Here, the "new harm"— the receipt of unsolicited fax advertisements, which Congress found causes "[b]usinesses" *in particular* to suffer "a nuisance . . . [and] an invasion of privacy" in enacting the TCPA, Pub. L. 102-243, § 2, ¶¶ 1, 14 (1991)—is "similar" to the "old harm" of intrusion upon seclusion. "Congress may 'elevate to the status of legally

3

cognizable injuries concrete, *de facto* injuries that were previously inadequate in law,'" and "the level of harm required at common law 'does not stake out the limits of [its] power to identify harms deserving a remedy.'" *Drazen v. Pinto*, 74 F.4th 1336, 1343 (11th Cir. 2023) (en banc) (quoting *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 822 (5th Cir. 2022)).

This Court held that a single unwanted text message is a "concrete" injury in *Drazen*, 74 F.4th at 1345. For purposes of Article III standing, "there is no *qualitative* difference in harm between reading then answering an unwanted text and reviewing then deleting a junk fax sent by e-mail." *Daisy, Inc. v. Mobile Mini, Inc.*, 489 F. Supp. 3d 1287, 1292 (M.D. Fla. 2020) (emphasis in original). Thus, "the receipt of unwanted faxes via online fax services is sufficient to confer Article III standing to bring a claim under the TCPA." *Douglas Phillip Brust, D.C., P.C. v. Opensided MRI of St. Louis LLC*, 343 F.R.D. 581, 591 (E.D. Mo. 2023).

Precision does not attempt to explain what "qualitative difference" in harm there is between a text message and a junk fax viewed on a computer because what it is really arguing is not that online fax users suffer the wrong type of *harm*, but that Congress lacks the power to authorize this type of *person* to sue for that harm. But just as Congress has the power to create an "*extension* of the substantive right to privacy," *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017), it also has the power to extend rights to a new class of persons.

The TCPA does that by authorizing a "person *or entity*" that receives an unsolicited advertisement to sue. 47 U.S.C. § 227(b)(3) (emphasis added). The chapter of the Code in which the TCPA is codified defines the term "person" to include "an individual, partnership, association, joint-stock company, trust, or corporation." 47 U.S.C. § 153(39). The TCPA "makes no distinction among individuals, corporations, and other business entities," and "it follows that the TCPA created by statute a right of privacy for all three: a right not to be intruded upon by unwanted faxes." *Maxum Indem. Co. v. Eclipse Mfg. Co.*, No. 06 C 4946, 2013 WL 5993389, at *7 (N.D. Ill. Nov. 12, 2013).[1] Congress may extend a common-law right held by one group of persons at common law (here, individuals) to a new class of persons (here, corporations).

For example, *TransUnion* cites *Spokeo*, which in turn cites *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 777 (2000), as an example of looking to traditionally recognized harms. *See TransUnion*, 594 U.S. at 425 (citing *Spokeo*, 578 U.S. at 340–41). In *Vermont Agency*, the Court looked to "the long tradition of *qui tam* actions in England and the American Colonies" and the

---

[1] As the court in *Maxum Indem.* pointed out, the Seventh Circuit in *Am. States Ins. Co. v. Capital Assocs. Of Jackson Cty., Inc.*, 392 F.3d 939, 942 (7th Cir. 2004), which Precision relies on in its Brief at 14, n.9, "was predicting Illinois law and predicted wrongly." 2013 WL 5993389, at *7. As *Maxum Indem.* observed, the Illinois Supreme Court later held that an unsolicited fax does, in fact, violate the "'slight' interest in seclusion" that the TCPA creates for corporations. *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 860 N.E.2d 307, 320 (Ill. 2006).

judgment of Congress to empower private persons to sue for an injury-in-fact suffered by the United States. 529 U.S. at 774–75.

Similarly, "the TCPA protects a species of privacy interest in the sense of seclusion," specifically *for businesses*. *Park Univ. Enterprises, Inc. v. Am. Cas. Co. Of Reading, PA*, 442 F.3d 1239, 1249 (10th Cir. 2006); *id.*, n.5 (collecting insurance coverage cases recognizing TCPA invasion of privacy claims where named plaintiffs were corporate or business entities rather than natural persons (citing *Resource Bankshares Corp. v. St. Paul Mercury Ins.*, 407 F.3d 631 (4th Cir. 2005) (complaining plaintiff in underlying class action was law firm); *Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc.*, 401 F.3d 876 (8th Cir. 2005) (plaintiff was computer business); *W. Rim Inv. Advisors, Inc. v. Gulf Ins. Co.*, 269 F. Supp. 2d 836 (N.D. Tex. 2003) (plaintiff was group of businesses), *aff'd*, 96 Fed. Appx. 960 (5th Cir. 2004)).

Precision recognizes that a business that received Precision's faxes via a stand-alone fax machine has concrete injury. (Precision Br. at 12 (citing *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1253 (11th Cir. 2015)). Precision contends, however, that the *only* reason Article III standing exists in that context is due to the loss of paper and toner and the occupation of the fax line, which Precision asserts is the *only* "kind of harm the TCPA was originally enacted to prevent." (*Id.*) That is flatly incorrect.

While Congress was surely concerned with the costs businesses suffer from the loss of "paper and ink" and "tied up" fax lines, it was also concerned with the "interference, interruptions, and expense" resulting from junk faxes. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14134 ¶ 201 (FCC July 3, 2003) ("2003 Order") (quoting H.R. Rep. No. 102-317 at 25 (1991)). The full quote from the House Report on the TCPA cited in the 2003 Order is that "[s]ince businesses have begun to express concern about the interference, interruptions and expense that junk fax[es] have placed upon them, states are taking action to eliminate these telemarketing practices," thus motivating Congress to take action. H.R. Rep. 102-317 at 25.

Precision argues that the judgment of Congress cannot support Article III standing for users of online fax services because "[t]he TCPA was enacted before the internet (and email) became widely available to the public." (Precision Br. at 13, n.7 (citing Wendy Grossman, Net.wars, at 10-12 (New York: New York University Press, 1997)). That is irrelevant. Even if one assumes that Congress was *solely* concerned with stand-alone fax machines in 1991 and did not anticipate the development of online fax services, "the limits of the drafters' imagination supply no reason to ignore the law's demands," and "[w]hen the express terms of a statute give us one answer and extratextual considerations suggest another, it's no contest. Only the written word is the law, and all persons are entitled to its benefit." *Bostock v. Clayton Cnty., Ga.*, 140 S. Ct. 1731, 1737 (2020). What ultimately matters is not

7

what was in the mind of any member of Congress, but how the Act was written, and the TCPA is not concerned with how the recipient receives the fax. It focuses solely on what the fax sender is prohibited from doing. *See* 47 U.S.C. § 227(b)(1)(C).

In sum, in enacting the TCPA, Congress elevated the invasion of privacy, the invasion of interest in seclusion, and the nuisance that results from a person or entity being sent an unsolicited fax advertisement "to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate at law." That harm, intrusion upon seclusion, has been "traditionally recognized as providing a basis for lawsuits in American courts," *Drazen*, 74 F.4th at 1343 (citing *TransUnion*, 594 U.S. at 425), thus satisfying the *Spokeo* close-relationship test. Accordingly the harms suffered by businesses that use online fax services are "similar" to those suffered by individuals, regardless of whether a business could successfully sue for the tort of intrusion upon seclusion. The close-relationship test is satisfied, and all members of Sharfman's proposed classes have Article III standing. Since the district court's erroneous conclusion to the contrary was its only basis for denying class certification, this Court should reverse as an abuse of discretion.

**<u>Conclusion</u>**

For the foregoing reasons, the Court should reverse the district court's denial of class certification.

8

March 14, 2025                          Respectfully submitted,


                                        */s/ Glenn L. Hara*
                                        Glenn L. Hara
                                        **ANDERSON + WANCA**
                                        3701 Algonquin Road, Suite 500
                                        Rolling Meadows, IL 60008
                                        Telephone: 847-368-1500
                                        Fax: 847-368-1501
                                        ghara@andersonwanca.com

9

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT,
TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS**

*Check the appropriate box in section 1, and check the box in section 2.*

**1.    Type-Volume**

✓    This document complies with the word limit of FRAP           29(a)(5)
because, excluding the parts of the document exempted by FRAP 32(f) and
            [insert applicable Rule citation, if any]                       , this document contains
      2,059                    words.

**or**

☐    This brief complies with the line limit of FRAP     [insert Rule citation]     because,
excluding the parts of the brief exempted by FRAP 32(f) and
            [insert applicable Rule citation, if any]                   , this brief uses a monospaced
typeface and  contains          [state the number of]          lines of text.

**2.    Typeface and Type-Style**

✓    This document complies with the typeface requirements of FRAP 32(a)(5) and the
type-style requirements of FRAP 32(a)(6).

(s)Glenn L. Hara
_____

                    Marc Irwin Sharfman, M.D., P.A.
Attorney for _____

Dated: 3/14/2025
_____

Rev.: 12/16

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of Appellant's Reply Brief is being

served via e-mail transmission to the following counsel of record on March 14, 2025.

Joshua R. La Bouef
Darren C. Jones
BRENNAN MANNA DIAMOND
5210 Belfort Road, Ste. 400
Jacksonville, FL  32256
jrlabouef@bmdpl.com
dcjones@bmdpl.com

*/s/ Glenn L. Hara*
Glenn L. Hara